## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

|  |  |
|---|---|
| DOUGLAS FELLER; JEFFRY HEISE; and JOSEPH MULL, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 0:24-cv-61444 |
| v. | Hon. Rodolfo A. Ruiz II |
| ALLIANCE ENTERTAINMENT, LLC; AND DIRECTTOU, LLC D/B/A COLLECTORS' CHOICE MUSIC, CRITICS' CHOICE VIDEO, MOVIES UNLIMITED, DEEPDISCOUNT, AND WOW HD, | |
| Defendants. | |

## PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiffs Douglas Feller, Jeffry Heise, and Joseph Mull respectfully submit this motion for appointment of their counsel at Hedin LLP as interim counsel on behalf of the putative classes in this action.

### INTRODUCTION

Appointment of interim class counsel is necessary at this juncture to protect the interests of members of the putative classes. Following Plaintiffs' filing of this putative class action for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 – the product of years of investigatory work by Plaintiffs' counsel – Plaintiffs and their counsel expended considerable time and resources litigating this case and exploring settlement with Defendants. A mediation was held on October 10, 2024 before a well-respected JAMS mediator (and former federal district court judge) but the parties were unable to reach a settlement.

Approximately a week ago, Defendants decided that they were unwilling to settle the case on the fair, reasonable, and adequate terms set forth in Plaintiffs' settlement demands (the latest of which was made on October 18, 2024), and so they instead orchestrated a reverse-auction sale of the classes' claims to the plaintiff's counsel in a duplicative, copy-cat case filed in the Northern District of California (on behalf of putative classes that are much narrower than, and totally subsumed by, the proposed classes here). Plaintiffs' counsel first learned of this on a call with Defendants' counsel on October 24, 2024 – two weeks after the mediation between the parties in

this first-filed action, a week after Defendants had made their most recent post-mediation settlement offer to Plaintiffs, and just as Plaintiffs' counsel was on the verge of filing the instant motion for interim appointment of class counsel. On that call, Defendants' counsel advised Plaintiffs' counsel that a class-wide settlement agreement had been signed the day before by the parties to the second-filed case, and that the settlement agreement purports to release the claims of all members of the far-more-expansive classes in this case.

Plaintiff's counsel in the second-filed case has conducted no discovery, engaged in no meaningful litigation, and does not appear to have participated in a mediation or engaged in any other arm's-length settlement negotiations with the Defendants. Rather, based on how quickly this reverse auction transpired, it appears the plaintiff and his counsel in the second-filed case simply signed on the dotted lines of whatever settlement agreement was presented to them.

Under the circumstances – which bear all the hallmarks of a collusive, reverse auction – the Court should appoint Hedin LPP as interim class counsel to protect the classes' interests pursuant to Rule 23(g).

## BACKGROUND

Beginning in 2019, Plaintiffs' counsel began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which included names, addresses, titles of videos purchased by, and various demographic and other personal information about each of their customers who made purchases on their websites. (*See* Declaration of Frank S. Hedin in Support of Motion to Appoint Interim Class Counsel (the "Hedin Declaration" or "Hedin Decl.") ¶ 10). Part of this investigation included reviewing, saving, and consulting with industry experts about the "data cards" posted by Defendants on Nextmark.com, data-axle.com, and other data-brokerage websites where consumers' personal information is advertised for sale. *Id.* Over the course of this extensive investigation, Plaintiffs' counsel also studied Defendants' practices of transmitting personally identifying information and video-purchase information to Facebook, now known as Meta, via "Meta Pixel" technology installed on their websites. *Id.* Although their pre-filing investigatory work dated back to 2019, Plaintiffs' counsel were not retained by clients to prosecute claims against Defendants until late July of this year. *Id.*

On August 8, 2024, Plaintiffs initiated this action by filing the Class Action Complaint against Defendants in this judicial district, where Defendants maintain their corporate headquarters. ECF No. 1 (the "Complaint" or "Compl."). The Complaint alleges that Defendants

disclosed to third parties, without consent, Plaintiffs' and their other customers' personally identifiable information, including information revealing the particular prerecorded video materials they purchased on any of the numerous direct-to-consumer websites operated by Defendants[1], in violation of the VPPA, and seeks statutory damages on behalf of Plaintiffs and the members of the proposed classes.

The Complaint alleges that Defendants violated the VPPA in two ways: (1) by using the Meta Pixel technology, a snippet of programming code embedded on each of Defendants' direct-to-consumer websites, to systematically send their customers' personally identifiable information and information revealing the prerecorded video materials they purchased to Meta; and (2) by renting, selling, exchanging, or otherwise disclosing customer lists and purchase records containing this same type of personally identifying video-purchase information, pertaining to all of the purchases made by their customers on all of their websites, to data aggregators, data miners, data brokers, data appenders, aggressive marketing companies, and others. *See* Compl. ¶¶ 3–4, 67, 74–80. Thus, in the Complaint, Plaintiffs seek to represent the following two classes:

> **The Data Brokerage Class:** All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

> **The Meta Pixel Class:** All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' website[s] while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

Compl. ¶ 85.

On August 12, 2024, a putative class action entitled *Hoang To*[2] *v. Directtou, LLC* was filed in state court in California, alleging a VPPA claim and two California state-law claims against DirectToU, LLC (but not Alliance Entertainment, LLC) on behalf of a putative class

---

[1]    Defendant Alliance Entertainment, LLC ("Alliance") sells DVDs and Blu-Ray discs to consumers via a network of websites operated by its affiliate DirectToU, LLC ("DirectToU"). These websites include Collectors' Choice, Critics' Choice, Movies Unlimited, DeepDiscount, and WowHD. ECF No. 1, ¶ 39.

[2]    The Plaintiff in the *Hoang To* action is listed in the caption as Jonathan Hoang To but is referred to within the body of the operative first amended complaint as Jonathan Huang To (*compare Hoang To*, ECF No. 10 at 1 (case caption) *with id.*, ECF No. 10 at 3 (paragraph 6)), and it remains unclear which version is correct.

comprised of all <u>Californians</u> who purchased videos on deepdiscount.com – one of many of the direct-to-consumer websites operated by Defendants – based upon DirectToU's alleged disclosure of information pertaining to its customers' purchases on that website to Meta by way of the Meta Pixel technology. *See Hoang To v. Directtou, LLC*, 24-cv-06447, ECF No. 1 (N.D. Cal.) (the "*Hoang To* action").[3]  The defendant in the second-filed *Hoang To* action, DirectToU, LLC, subsequently removed the action to the Northern District of California pursuant to the Class Action Fairness Act.  The defendant did not disclose the existence of the instant, earlier-filed related action in the notice of removal (*Hoang To*, ECF No. 1), and neither of the parties in the *Hoang To* action disclosed the existence of this earlier-filed related action in either of the two civil cover sheets filed in that action (*Hoang To*, ECF Nos. 2, 6).  Additionally, despite both parties being aware of this case and the overlapping claims, at no time since the removal of the *Hoang To* action has either party filed a Notice of Pendency of Other Action or Proceeding to put the court on notice of the existence of this first-filed case, as N.D. Cal. Local Rule 3-13 has plainly required.

On August 30, 2024, the parties in this case held a Rule 26(f) conference and, on September 9, 2024, they filed their report.  ECF No. 26.  On September 10, 2024, the Court issued a scheduling order.  ECF No. 27. On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendant, seeking razor-focused categories of information, documents, communications, and electronically stored information concerning each of the factual and legal issues relevant to their claim for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23. Hedin Decl. ¶ 13.

On September 13, 2024, Plaintiffs' counsel served notices of deposition of Defendants' corporate representatives for November 15, 2024.  Hedin Decl. ¶ 13.

On October 1, 2024, the plaintiff in the *Hoang To* action filed a first amended complaint[4], alleging a VPPA claim on behalf of a proposed nationwide class of persons who purchased videos on deepdiscount.com, and two state-law claims for violation of California law on behalf of a

---

[3]     A copy of the complaint in the *Hoang To* action is attached hereto as **Exhibit A.**

[4]     A copy of the operative first amended complaint in the *Hoang To* action is attached hereto as **Exhibit B**.

subclass of California residents.  *See Hoang To*, ECF No. 10.[5]  Notably, because both of the

classes proposed in the operative complaint in *Hoang To* are defined to only include persons who,

---

[5]        Although the *Hoang To* action purports to allege two California state-law claims – for violation of California Civil Code § 1799.3 and California Business and Professions Code § 17200 – these claims are barred by the applicable limitation period and are otherwise duplicative and unnecessary (given that they are both predicated on the same factual allegations giving rise to the plaintiff's federal VPPA claim).  First, the *Hoang To* plaintiff's claim for violation of § 1799.3 – filed in August 2024, and purportedly arising from video purchases made in May 2023 (*see Hoang To*, First Amended Complaint, ECF No. 10 at ¶ 6) – is barred by the one-year limitation period applicable to a § 1799.3 claim for statutory penalties. *See* Cal. Civ. Code § 340(a) (specifying one-year limitation period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation."); *id.* § 1799.3(c) ("Any willful violation of this section shall be subject to a civil penalty not to exceed five hundred dollars ($500) for each violation, which may be recovered in a civil action brought by the person who is the subject of the records.").  And his § 17200 claim likewise fails because it is predicated on violations of § 1799.3. *See Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022).  Having failed to allege cognizable claims for violations of these state statutes on his own behalf, the plaintiff in *Hoang To* cannot prosecute such claims on behalf of unnamed members of his proposed California subclass.

Second, even if these claims were not time barred, the California state-law claims alleged by the plaintiff in *Hoang To* would still be duplicative and unnecessary because a federal VPPA claim is capable of redressing all disclosures of video purchase-related information of all class members nationwide. *See Belmonte v. Creative Properties, Inc.*, No. 19-61438-CIV, 2019 WL 5063832, at *1–2 (S.D. Fla. Oct. 8, 2019) (Moreno, J.) (dismissing with prejudice state-law claim "premised on the exact same factual allegations as [plaintiff's] federal claim"); *J & J Sports Prods., Inc. v. Bou*, No. 15-CV-30004-MGM, 2015 WL 8022009, at *3 (D. Mass. Oct. 1, 2015), *report and recommendation adopted sub nom. J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*, No. CV 15-30004-MGM, 2015 WL 8082433 (D. Mass. Dec. 7, 2015) (declining to award damages to a plaintiff who prevailed on state claims predicated on the same underlying facts as the plaintiff's federal claims, explaining that damages for the overlapping state claims would be duplicative of the damages the plaintiff was awarded for prevailing on the federal claims); *Syntex (U.S.A.), Inc. v. Interpharm, Inc.,* No. CIV.A.1:92-CV-03HTW, 1993 WL 643372, at *13 (N.D. Ga. Mar. 19, 1993) ("The court notes . . . plaintiffs are seeking redress for unfair competition and trademark infringement under applicable federal and state law, and these remaining state law claims, while perhaps actionable, are superfluous.").  This is especially true because § 1799.3's provisions prohibiting disclosures of video-purchase information are far narrower in scope than those found in the federal VPPA, *see Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023), *appeal withdrawn,* No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) ("The language of § 1799.3 is similar to that of the VPPA, but notably narrower in certain respects."), because the *Hoang To* plaintiff has not alleged facts plausibly establishing any economic injury as required to state a claim for violation of § 17200, *see id*. at 287, and in any event because the injunctive relief sought by the *Hoang To* plaintiff's § 17200 claim can be obtained nationwide with a VPPA claim. *See* 18 U.S.C. § 2710(c)(2)(B) (providing that a court may award any "preliminary and equitable relief as the court determines to be appropriate").

while enrolled in Facebook, purchased videos on deepdiscount.com while Meta Pixel technology was operational on the site, both putative classes are subsumed by the Meta Pixel Class in this earlier-filed action, as reflected in the table below:

| The "Meta Pixel Class" Proposed by Plaintiffs in This First-Filed Matter | The Classes Proposed by the Plaintiff in the Second-Filed *Hoang* Matter |
|---|---|
| All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants' website[s] while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.[6] | All natural persons residing in the United States who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com; and<br><br>All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com. |

Meanwhile, on September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore early class-wide resolution of this action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago), formerly a district judge in the Northern District of Illinois, on the condition (negotiated by Plaintiffs' counsel) that Defendants would agree to provide various information and materials to them in advance of the mediation that were necessary for counsel and the Plaintiffs to intelligently negotiate on behalf of members of the putative classes. Hedin Decl. ¶ 14. This information and material included the precise sizes of the two classes, the form and

---

[6] As explained above, Plaintiffs' counsel performed an exhaustive, years-long investigation into Defendants' disclosure practices prior to filing this case, and those investigative efforts revealed that, during the two-year period preceding the filing of this case, the Meta Pixel technology was operational on each website maintained by Defendants on which prerecorded video materials were sold to consumers, and that Defendants systematically transmitted to Meta the Facebook ID along with the titles of the video materials purchased by each of its customers on each of those websites over that two-year period of time. Thus, the Meta Pixel-related criterion for membership in the classes proposed in the *Hoang To* action – i.e., that a would-be class member's purchase was made "during the time the Meta Pixel was active" – is unnecessary and, for that reason, is not included as a criterion for membership in the Meta Pixel Class proposed in Plaintiffs' complaint in this case.

contents of the personally identifying and video purchase-related information pertaining to Plaintiffs and class members that Defendants transmitted to the various third-party recipients of the information during the applicable statutory period, and all applicable or potentially applicable policies of insurance. *Id.*

On September 18, 2024, the defendant's counsel first apprised the court in *Hoang To* of the existence of this action, in an administrative motion to enlarge time to respond to the *Hoang To* complaint; in that filing, defendant's counsel advised the court that it had asked the plaintiff's counsel in *Hoang To* to voluntarily dismiss the *Hoang To* action because of the pendency of the instant earlier-filed action, brought on behalf of classes that entirely overlap the putative classes proposed in *Hoang To*, but that the plaintiff's counsel had refused. *Hoang To*, ECF No. 8.

Ahead of the parties' mediation scheduled for October 10, 2024 before Judge Holderman, Plaintiffs' counsel prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on various legal and factual issues relevant to the merits of the claims and defenses and issues of class certification. Hedin Decl. ¶ 15. Plaintiffs' counsel and Defendant's counsel also participated in a lengthy pre-mediation conference with Judge Holderman. *Id.* During that conference, Defendants' counsel informed Plaintiffs' counsel that no settlement discussions had occurred between Defendants and the plaintiff in *Hoang To*. *Id.*

On October 10, 2024, following Plaintiffs' counsels' receipt of information and materials from Defendants bearing on, *inter alia*, issues of class size and insurance, the parties participated in nearly a full day of mediation before Judge Holderman. Hedin Decl. ¶ 16. The parties were unable to reach a proposed class-wide settlement at the mediation, and Judge Holderman declared an impasse. *Id.*

For over more than a week following the mediation, Plaintiffs' counsel and Defendants' counsel, with the continued assistance of Judge Holderman, continued to engage in what Plaintiffs' counsel (and Judge Holderman) believed at the time to be good-faith negotiations. Hedin Decl. ¶ 17. Specifically, on October 16, 2024, Plaintiffs' counsel exchanged e-mail correspondence and then spoke by telephone with Judge Holderman, during which Plaintiffs' counsel asked Judge Holderman to convey a settlement demand to Defendants' counsel, which Plaintiffs' counsel believed would meaningfully advance the parties' progress towards a proposed resolution on behalf of the classes. *Id.* Later that same day, after presenting Plaintiffs' demand

to Defendants' counsel by phone, Judge Holderman telephoned Plaintiffs' counsel to convey a counter settlement offer that Defendants had authorized him to convey to Plaintiffs' counsel. *Id*. Over the next two days, Plaintiffs' counsel spoke by phone and exchanged e-mail correspondence with Judge Holderman on multiple occasions concerning Defendants' latest settlement offer, and on October 18, 2024, Plaintiffs' counsel conveyed another counter settlement demand to Judge Holderman and asked that he present it to the Defendants' counsel. Later that same day, Judge Holderman sent Plaintiffs' counsel an e-mail confirming that he had presented Plaintiffs' latest demand to Defendants' counsel by phone. *Id*. Plaintiffs' counsel followed up with Judge Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had received any response from Defendants' counsel, and on both occasions Judge Holderman advised Plaintiffs' counsel that he had telephoned Defendants' counsel but had received no answer, that he had left voicemails for them but had still not heard back from them, and that he would try to contact Defendants' counsel yet again on October 24, 2024. *Id*.

At the same time as these settlement discussions overseen by Judge Holderman were occurring, Plaintiffs' counsel also continued to push this case forward on multiple fronts. Immediately following the conclusion of the mediation on October 10, 2024, Plaintiffs' counsel confirmed with Defendant that the agreed-upon discovery stay (which had been in effect since the date the parties agreed to mediate) had ended. Hedin Decl. ¶ 18. On October 14, 2024, Plaintiffs' counsel served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. *Id*. On October 16, 2024, Meta served Plaintiffs with its initial responses and objections to the subpoena and, later that same day, Plaintiffs' counsel initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. *Id*. On October 19, 2024, Plaintiffs' counsel conferred further with Meta's counsel concerning the timing of its deposition in this matter. *Id*. On October 17, 2024, Plaintiffs' counsel served a third-party subpoena for documents to Data-Axle Inc., a data company that, as Plaintiffs' ongoing investigation had revealed, served as one of Defendant's list managers and/or brokers during the relevant statutory period, on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. *Id*. On October 25, 2024, Plaintiffs' counsel exchanged correspondence

with counsel for Data Axle regarding Data Axle's response to the subpoena and production of documents. *Id.*

Additionally, over the course of ten days from October 14, 2024 through October 24, 2024, Plaintiffs' counsel repeatedly attempted to schedule meet and confer conferences with Defendants' counsel concerning deposition scheduling as well as: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised Defendants' counsel it intended to file; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in that case and whether it would seek to dismiss, stay, or transfer the case on the grounds that Defendants had previously articulated (namely, that *Hoang To* was duplicative of this earlier-filed case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in that case, did not intend to seek such relief in response to the plaintiff's complaint. Hedin Decl. ¶ 19.

On October 14, 2024, Plaintiffs **made the first of several requests to confer** on Defendants' position regarding the *Hoang To* case. Hedin Decl. ¶ 20. Having received no response, on October 15, 2024, Plaintiffs' counsel **again requested** to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions with respect to the duplicative *Hoang-To* matter and on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel in this case. *Id*. Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by asking for "a description of the substance" of the conference being requested. *Id*. Plaintiffs' counsel immediately responded, stating:

1. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.

2. Defendants' intent with respect to the *Hoang* matter. Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL. Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

*Id*. On October 16, 2024, Defendants' counsel responded by stating that she would confer with her client. Hedin Decl. ¶ 21. Later that day, Plaintiffs' counsel followed up with Defendants'

counsel once more – again, simply to propose a date to have a meet and confer conference on these matters. *Id.*   Again, Defendants' counsel refused to provide her clients' position.  *Id.*

On October 21, 2024, having still not received Defendants' positions on these issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants' counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion to intervene in the *Hoang To* matter and move to dismiss that case under the first filed doctrine.  Hedin Decl. ¶ 22.  Defendants' counsel did not respond to that communication and, later that day, Plaintiffs' counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial disclosures, and **again sought to confer telephonically on October 22, 2024**.  Hedin Decl. ¶ 23. Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they would need to discuss with their clients.  *Id*.

On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email, and then placed telephone calls and left voicemails to each of Defendants' counsel of record, all of which went unreturned. Hedin Decl. ¶ 24. The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you." Hedin Decl. ¶ 25. Contemporaneously, Plaintiffs' counsel advised as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion, we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

*Id*. Finally, after 10 days of ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each of these important issues, and after five days of also ignoring Judge Holderman's repeated efforts to communicate with them as well (as recounted above), Defendants' counsel agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon.  Hedin Decl. ¶ 26.

During this October 24, 2024 phone call, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the counsel for the *Hoang To* plaintiff the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the instant

action (even though only the proposed classes in the *Hoang To* action are only a small subset of the proposed classes here), that those releases will cover both of the Defendants in this action (even though only one of the Defendants here is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about Monday, October 28, 2024, and that Defendants would be filing a motion to stay the instant action pending resolution of the motion for preliminary approval in the *Hoang To* action.  Hedin Decl. ¶ 26.  At no time on the call or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay this action. *Id.* And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the signed class-wide settlement agreement – information obviously necessary for Plaintiffs and their counsel to assess whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay this matter or not – Defendants' counsel flatly refused without explanation.  *Id.* Plaintiffs' counsel also indicated that they would be filing the instant motion for appointment of interim counsel as well as a motion to intervene and to stay or dismiss the *Hoang To* action on first-filed doctrine grounds, and Defendants' counsel stated that Defendants would oppose both motions. *Id.*

Almost immediately after counsel for the parties spoke by telephone on October 24, 2024, Defendants filed their motion to stay this action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiffs would be filing in the *Hoang To* action.  Hedin Decl. ¶ 26. The motion to stay states, in pertinent part, that the parties in the *Hoang To* action signed a class-wide settlement agreement "on October 23, 2024" (ECF No. 36 at 2), that the "[t]he settlement reached in the *Hoang To* action would, if approved by the Court, cover all claims asserted in this [*Feller*] case" (*id.* at 1), that "the *Hoang To* settlement is expected to release the claims of all putative class members in this [*Feller*] case" (*id.* at 4), and that "a motion for preliminary approval of the proposed settlement will be filed early next week" in the *Hoang To* case (*id.* at 2). Plaintiffs will file a response in opposition to Defendants' motion to stay by the deadline set by the Court of October 28, 2024.

Later on October 24, 2024, shortly after Defendants filed their motion to stay, Plaintiffs' counsel spoke with Judge Holderman by phone, who indicated that he had just finally gotten

ahold of Defendants' counsel and that Defendants' counsel had just then advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel. Hedin Decl. ¶ 26.

The reverse auction that Defendants orchestrated of the classes' claims, and the willingness with which the plaintiff's counsel in *Hoang To* appears to have gone along with it, as described above, is the most underhanded conduct that Plaintiffs' counsel has experienced in his 10-year career as a lawyer practicing in this area of law.  Hedin Decl. ¶ 27. The post-mediation chain of events speaks for itself: as Plaintiffs' counsel was repeatedly attempting to meet and confer in good faith with Defendants' counsel on the instant interim appointment motion and on a motion to intervene and to dismiss the *Hoang To* matter (only to be ignored), as Judge Holderman was also repeatedly attempting to reach Defendants' counsel to continue facilitating the ongoing post-mediation settlement negotiations between the parties (only to be ignored as well), and as Defendants and multiple third parties were set to provide important testimony and documents to Plaintiffs, Defendants' counsel was busy conducting a reverse auction of the classes' claims to the plaintiff's counsel in the *Hoang To* matter.  In other words, Defendants set out to get a deal done on the terms of their liking with the plaintiff's counsel in the *Hoang To* matter (who as it turned out was more than happy to oblige) before Plaintiffs could move for interim appointment in this case or move to dismiss the *Hoang To* action on first-filed grounds, for the transparent purpose of avoiding an arm's-length negotiation with experienced plaintiffs' counsel intent on negotiating a good deal for class members – which is what they had already come to expect from Plaintiffs' counsel – and to prevent Plaintiffs from uncovering the depth of Defendants' wrongdoing in discovery.  When the settlement agreement signed by the *Hoang To* plaintiff and Defendants is eventually submitted for approval, Plaintiffs and their counsel fully expect that its terms will be the same (or worse) than the terms of one of Defendant's prior settlement offers that Plaintiffs in this case had previously rejected.

After the filing of this motion, Plaintiffs intend to file a motion in the Northern District of California to intervene and to dismiss, or alternative stay or transfer, the *Hoang To* action.

## ARGUMENT

What transpired here is offensive to the adversarial system and threatens to prejudice hundreds of thousands of affected class members. This Court need not go along. The Court should appoint Hedin LLP as interim counsel to protect the interests of the classes in this litigation.

Federal Rule of Civil Procedure 23(g)(3) provides: "The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." In cases where multiple overlapping and duplicative cases have been filed, "designation of interim class counsel is encouraged, and indeed is essential for efficient case management." *Morrison v. Fam. Dollar Stores, Inc.*, No. 24-cv-60294, 2024 WL 3312055, at *1 (S.D. Fla. June 11, 2024) (citing MANUAL FOR COMPLEX LITIGATION §21.11 (4th ed. 2004)). Federal Rule of Civil Procedure 23(g)(1)(A) provides criteria for courts to consider in deciding whether to appoint interim class counsel:

> (a)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (b)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (c)    counsel's knowledge of the applicable law; and
>
> (d)    the resources that counsel will commit to representing the class.

*Id*. The Court may also "consider other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Each of these factors weighs in favor of appointing Hedin LLP to represent the proposed classes on an interim basis in this matter.

## I.    Hedin LLP Has Thoroughly Identified and Investigated the Claims in This Litigation.

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

MOORE'S FEDERAL PRACTICE §23.120(3)(a) (3d. Ed. 2007).

Prior to filing suit, Hedin LLP performed an extensive and time-consuming investigation into the conduct underlying Plaintiffs' claims over a period of several years (dating back to 2019), demonstrating the firm's commitment to fairly and adequately representing the proposed classes.

Hedin Decl. ¶ 12.   Specifically, the attorneys at Hedin LLP (i) thoroughly investigated and reviewed current and historical versions of Defendants' data cards publicly accessible on Nextmark.com and other data-brokerage websites, over a period of several years dating back to 2019; (ii) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (iii) consulted with a digital forensics expert to investigate Defendants' numerous websites and their use of tracking technologies on those website, including parsing through Defendants' websites' source code; (iv) researched whether Defendants' use of tracking pixels violated the VPPA; (v) communicated with and reviewed materials provided by numerous potential clients who interacted with and made purchases on Defendants' websites, in order to determine whether they were capable of adequately representing the interests of the proposed classes; (vi) investigated the adequacy of the named Plaintiffs to represent the putative classes and executed engagement agreements to represent them in this matter; and (vii) prepared the Class Action Complaint on behalf of the proposed classes. Hedin Decl. ¶ 12. These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state the courts should consider in appointing interim class counsel.

Moreover, since the filing of this action, Plaintiffs' counsel at Hedin LLP have vigorously litigated this action on behalf of the proposed classes, including by serving comprehensive written discovery requests to Defendants, serving notices of deposition on each of Defendants' corporate representatives, serving third-party subpoenas for documents and deposition testimony to relevant third parties, consulting with potential experts, and preparing motions and other filings on behalf of the proposed classes.  Hedin Decl. ¶ 13.  At the same time, Plaintiffs' counsel engaged in extensive settlement discussions with Defendants' counsel, including at an all-day mediation before Judge Holderman of JAMS. Hedin Decl. ¶¶ 15–17.  Prior to the mediation, Plaintiffs' counsel obtained and thoroughly reviewed materials provided by Defendants' counsel concerning the size of the putative classes and any applicable policies of insurance.  Hedin Decl. ¶ 14. Plaintiffs' counsel prepared and exchanged with Judge Holderman and Defendants' counsel a comprehensive mediation statement in advance of the mediation. Hedin Decl. ¶ 15.  Although a settlement was not reached at the mediation, negotiations overseen by Judge Holderman continued after the mediation, right up until the point when Defendants decided to find a negotiating partner more to their liking. Hedin Decl. ¶ 17.  Appointing Hedin LLP as interim

class counsel at this juncture will put counsel experienced in prosecuting data privacy class actions at the helm of this litigation, and will enable any future settlement negotiations to proceed in an arm's-length, non-collusive manner going forward. Hedin Decl. ¶ 30.

The Advisory Committee Notes also contemplate that an appointment of interim class counsel may be necessary to conduct discovery prior to a determination on class certification pursuant to Rule 23(c)(1). *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003). The Advisory Committee Notes further state, "[o]rdinarily such work is handled by the lawyer who filed the action." *Id*. Here, a significant amount of discovery ***must*** occur (and related motion practice will likely be necessary) prior to class certification and trial. *See id.* Discovery in this matter will be complex, nuanced, and require substantial specialized knowledge and experience to perform effectively and efficiently. Hedin Decl. ¶ 30. Hedin LLP's thorough investigation into the claims, as well as the firm's experience prosecuting prior similar matters (discussed further below), will enable it to effectively build and prosecute this case on behalf of the Classes, including in discovery and related motion practice. *Id*.

Accordingly, the first Rule 23(g) factor weighs heavily in favor of appointing Hedin LLP as interim class counsel on behalf of the putative Classes in this matter.

## II.     Hedin LLP's Has a Proven Track Record and Substantial Knowledge of the Applicable Law.

Hedin LLP has significant experience successfully prosecuting complex class actions, including for violation of similar data privacy statutes, and brings substantial knowledge of the relevant legal and factual issues to bear for the classes' benefit in this action.

Since the firm's founding in 2018, courts have recognized Hedin LLP's "extensive experience in class actions," *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) (Moore, J.), and have regularly noted the quality of the firm's work on behalf of its clients. *See, e.g.*, *Groover v. Prisoner Transp. Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) (Bloom, J.) (noting that the firm "provided excellent and thorough representation in a case that was exceptionally time-consuming").[7] Hedin LLP's firm resume is attached as Exhibit 1 to the Hedin Declaration.

---

[7]     The firm's representation in this matter was *pro bono* and counsel was appointed by the Court pursuant to the Southern District of Florida's Pro Bono Assistance Program.

Hedin LLP focuses on consumer and data privacy class actions and its lawyers have successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y.) (same, $50 million non-reversionary class settlement); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc*., No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc*., No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million non-reversionary class settlement); *Farnham v. Caribou Coffee Co., Inc*., No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc*., No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America,*

*N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class settlement). Hedin Decl. ¶¶ 4-6.[8]

Notably, Hedin LLP has significant experience litigating data-privacy class actions arising from the same sort of conduct at issue here: the rental, sale, and exchange of consumers' private information in the data-brokerage marketplace, as evidenced by "data cards" (posted publicly on Nextmark and other such websites) in which companies advertise the availability of such data about their customers. Hedin Decl. ¶ 9; *see e.g.*, *Horton*, 380 F. Supp. 3d 679; *Lin*, No. 19-11889; *Schreiber*, No. 22-cv-00188; *Pratt et al. v. KSE Sportsman Media, Inc*., No. 21-cv-11404 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class); *Kain v. The Economist Newspaper NA, Inc.,* No. 21-cv-11807 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class*); Strano v. Kiplinger Washington Editors, Inc.,* No. 21-cv-12987 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $6.8 million all-cash non-reversionary settlement for class).

Hedin LLP is well-suited to continue representing the affected members of the putative classes in this matter given the significant amount of work the firm has performed on this matter to date, as well as the firm's extensive experience prosecuting the other similar consumer data-privacy matters outlined above. *See* Hedin Decl. ¶¶ 4-7, ¶¶ 10-26.

---

[8] The firm has also served as class counsel in securities class actions in state and federal courts throughout the country, as well as regularly represented indigent litigants on a *pro bono* basis. Hedin Decl. ¶¶ 7-8.

Accordingly, the second and third Rule 23(g) factors weigh heavily in favor of appointing Hedin LLP as interim class counsel on behalf of the putative classes in this matter.

### III.    Hedin LLP Has Committed and Will Continue to Commit all Resources Necessary to Effectively Prosecute this Action on Behalf of the Classes.

Hedin LLP is a well-established and successful firm and has the resources and personnel necessary to pursue a case of this magnitude, as it has demonstrated in numerous similar class actions. As a result, the firm can fully utilize its resources and knowledge of local practice. *See* Hedin Decl. ¶¶ 4-9, 32-33. The firm has already demonstrated the will and ability to commit all resources necessary (monetary and otherwise) to investigate, develop, and prosecute a strong and well-supported case on behalf of members of the proposed classes, and to begin responsibly exploring potential resolutions on their behalf. *See* Hedin Decl. ¶¶ 13-18. The firm's resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will allow it to streamline and effectively prosecute the litigation and thus, be of great value to the putative classes. Hedin Decl. ¶¶ 32-33.

Hedin LLP draws from a team of highly experienced attorneys, including those with the trial experience necessary to present this case to a jury at trial, who are dedicated to representing the classes' interest in this litigation, as well as supporting non-lawyer professionals and staff. *Id.* As such, courts and mediators have lauded the resources and commitment of the firm in representing clients in class action cases. For instance, United States District Judge Beth Bloom of the Southern District of Florida, has recognized the "excellent and thorough representation" provided by Hedin LLP, including in "exceptionally time-consuming" cases. *Groover*, 2019 WL 3974143, at *2. The same is true with respect to this action. If appointed to represent the classes, Hedin LLP will continue to commit the same resources and effort to this case as it has committed to its other, successful class action matters. Hedin Decl. ¶¶ 32-33.

Accordingly, the fourth and final Rule 23(g) factor weighs heavily in favor of appointing Hedin LLP as interim class counsel on behalf of the putative classes in this matter.

### IV.    Additional Factors Favor Appointing Hedin LLP.

In addition to the Rule 23(g)(1)(A) factors, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Several additional factors support appointment of Hedin LLP as interim class counsel. First, appointing the firm as interim class counsel would give members of the

proposed classes the benefit of sophisticated and experienced counsel who, as discussed above, has a track record of achieving landmark results in data privacy class actions. Second, through its significant experience prosecuting complex class actions, Hedin LLP has developed significant relationships with industry experts, regulatory personnel, and settlement administration experts. Hedin Decl. ¶ 32. Third, Hedin LLP employs attorneys with extensive trial experience, and thus has the ability to take this case to trial on behalf of the classes if necessary. *Id.*

Additionally, a significant amount of the discovery critical to the classes' claims in this case is in the possession of third parties, including Meta and Data Axle, both of which Plaintiffs' counsel recently subpoenaed. Hedin Decl. ¶ 31. As Plaintiffs' counsel is keenly aware from prior experience in similar data-privacy matters, it is critically important that these third parties, and any others with materials relevant to this litigation, continue to preserve all such materials in their possession, custody, or control, and that Defendants' filing of the motion to stay in this action and the *Hoang To* plaintiff's filing of motions in support of approval of his proposed class-wide settlement in the Northern District of California do not result in these third parties disregarding their preservation obligations with respect to such materials. *Id.* If appointed interim counsel, Hedin LLP will ensure such materials are fully preserved and promptly produced. *Id.*

Finally, the bench and bar have recognized the importance of considering diversity as a relevant factor in selecting interim class counsel. *See e.g., In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2024 WL 2959279, at *5 (D. Nev. June 12, 2024) ("A proposed team's diversity is a factor the Court can consider in appointing interim class counsel."); *see also In re Stubhub Refund Litig.*, No. 20-MD-02951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020) (appointing as co-lead interim counsel applicants who "demonstrated careful attention to creating a diverse team"); *In re Robinhood Outage Litigation*, No. 20-CV-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) (noting the need for diversity and how "the attorneys running this litigation should reflect the diversity of the proposed national class"); *City of Providence, R.I. v. AbbVie Inc.*, 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020). Several of the attorneys at Hedin LLP are members of underrepresented groups, and the firm is committed to ensuring that a diverse set of attorneys work on each of the firm's matters, including this matter. *See* Hedin Decl. ¶ 32 & *id.,* Ex. 1 (firm resume, biographies of each of the firm's attorneys).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court appoint Hedin LLP to serve as interim class counsel on behalf of the putative classes in this matter pursuant to Rule 23(g).

As noted above, pursuant to Local Rule 7.1(a)(3), undersigned counsel conferred on October 24, 2024 with Defendants' counsel, who indicated that Defendants oppose this motion. Also on October 24, 2024, Plaintiffs' counsel attempted to contact by telephone, and then emailed, counsel of record for the plaintiff in the *Hoang To* action to ascertain their client's position on this motion. One of the plaintiff's counsel of record in that matter, Adrian Barnes, responded by stating that he could not provide a position on the motion because he was not sufficiently familiar with the litigation and that all of the other counsel of record for his client were unavailable until October 28, 2024, the day Defendants' counsel has indicated that the plaintiff in *Hoang To* intends to move for preliminary approval of the proposed settlement that threatens to prejudice members of the classes.[9]  Hedin Decl. ¶ 28.

Date: October 27, 2024                                   Respectfully submitted,

                                                                    **HEDIN LLP**

                                                                    */s/ Frank S. Hedin*

                                                                    Frank S. Hedin (FBN: 109698)
                                                                    Arun G. Ravindran (FBN: 66247)
                                                                    Julie Holt (FBN: 95997)
                                                                    1395 Brickell Ave, Suite 610
                                                                    Miami, Florida 33131
                                                                    Telephone: (305) 357-2107
                                                                    Facsimile: (305) 200-8801
                                                                    E-Mail: fhedin@hedinllp.com
                                                                         aravindran@hedinllp.com
                                                                         jholt@hedinllp.com

---

[9]      Upon the filing of this motion, undersigned counsel will immediately serve counsel in the *Hoang To* action with a copy of the motion, its exhibits, and the accompanying Hedin Declaration and exhibits thereto.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

*/s/ Frank S. Hedin*
