# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

| | |
|---|---|
| DOUGLAS FELLER; JEFFRY HEISE; JOSEPH MULL, individually and on behalf of all others similarly situated, <br><br>                        Plaintiffs, <br><br>       v. <br><br> ALLIANCE ENTERTAINMENT, LLC; AND DIRECTTOU, LLC D/B/A COLLECTORS' CHOICE MUSIC, CRITICS' CHOICE VIDEO, MOVIES UNLIMITED, DEEPDISCOUNT, AND WOW HD, <br><br>                   Defendants. | Case No. 0:24-cv-61444 |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' EXPEDITED MOTION TO STAY PENDING PRELIMINARY APPROVAL

Plaintiffs Douglas Feller, Jeffry Heise, and Joseph Mull hereby file their response in opposition to Defendants' Expedited Motion to Stay Pending Preliminary Approval (ECF No. 36 (the "Motion" or "Mot.")) and would respectfully show the Court as follows.

### INTRODUCTION

Following Plaintiffs' filing of this putative class action for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 – the product of years of investigatory work by Plaintiffs' counsel – Plaintiffs and their counsel expended considerable time and resources litigating this case and exploring settlement with Defendants over a period of several months. A mediation was held on October 10, 2024, before a well-respected JAMS mediator (and former federal district court judge) but no settlement was reached.

As detailed below, Defendants recently decided that they were unwilling to settle the case on the fair, reasonable, and adequate terms set forth in Plaintiffs' settlement demands (the latest of which was made on October 18, 2024), and so they instead orchestrated a reverse-auction sale of the classes' claims to the plaintiff's counsel in a duplicative, copy-cat case in the Northern

District of California entitled *Hoang To v. DirectToU, LLC*[1] (which alleges claims on behalf of a putative class that is much narrower than, and totally subsumed by, the proposed classes here). Plaintiffs' counsel first learned of this on a call with Defendants' counsel on October 24, 2024 – two weeks after the mediation between the parties in this first-filed action, a week after Defendants had made their most recent post-mediation settlement offer to Plaintiffs, and just as Plaintiffs' counsel was on the verge of filing a motion for interim appointment of class counsel and a motion to intervene and dismiss the second-filed *Hoang To* case. On that call, Defendants' counsel advised Plaintiffs' counsel that a class-wide settlement agreement had been signed the day before by the parties to the second-filed case, and that the agreement purports to release the claims of all members of the far-more-expansive classes in this case.

Plaintiff's counsel in the second-filed case has conducted no discovery, engaged in no meaningful litigation, and does not appear to have participated in a mediation or engaged in any other formal, arm's-length settlement negotiations with the Defendants. Rather, in light of how quickly this reverse auction transpired, it appears that the plaintiff and his counsel in the second-filed *Hoang To* case simply signed on the dotted line of whatever settlement agreement was presented to them. Simply put: this chain of events bears all the hallmarks of a collusive, reverse auction, and it undoubtedly produced a settlement on the same or similar terms as were previously offered by Defendants but rejected by Plaintiffs during the parties' settlement negotiations in this case. Thus, earlier today Plaintiffs filed a motion to intervene in and to dismiss (or alternatively stay or transfer) the *Hoang To* action on first-to-file grounds[2], and last night filed a motion in this Court for their counsel to be appointed interim counsel on behalf of the classes (ECF Nos. 38-39).

Now, Defendants have filed the Motion seeking a stay of this first-filed action to clear the path for them to move for approval of their collusive, reverse auction-produced settlement in the

---

[1] *Hoang To v. DirectToU, LLC*, 24-cv-06447, ECF No. 1 (N.D. Cal.) (the "*Hoang To* action"). A copy of the operative First Amended Complaint in the *Hoang To* action is attached here as **Exhibit A.**

[2] A copy of the motion to intervene and to dismiss on first-to-file grounds filed in *Hoang To*, and the supporting declaration are attached here as **Composite Exhibit B**. Plaintiffs have omitted exhibits from the as-filed motion and declaration as these same materials have either already been included in support of the instant opposition or are docket entries from this case.

second-filed action in the Northern District of California. If granted, the requested stay would threaten irreparable harm to hundreds of thousands of members of the classes in this action.

As a threshold matter, the Motion should be denied because Defendants failed to adequately meet and confer on the Motion prior to its filing. When Defendants' counsel disclosed the existence of the *Hoang To* settlement to Plaintiffs' counsel on a phone call on October 24, 2024, Defendants' counsel never asked for Plaintiffs' position on the relief requested in this Motion. And when Plaintiffs' counsel asked for a copy of the signed settlement agreement to review, Defendants' counsel refused to produce it. When Plaintiffs' counsel asked Defendants' counsel to summarize the material terms of the settlement agreement over the phone, Defendants' counsel would not provide that basic information either. Nothing explains why Defendants' counsel would not provide this information given that this agreement, like all class action settlement agreements, will need to be filed on the public docket when it is presented to the court for approval, so that class members can assess whether to object to or opt out of the proposed settlement. Plaintiffs' counsel is thus left (as is the Court) without the basic information needed to determine whether the settlement is fair, adequate, and reasonable – and, in turn, whether this action should be stayed to make way for the settlement approval process in the *Hoang To* action, as Defendants have requested. Consequently, Defendants have failed to satisfy their obligations under Local Rule 7.3 to adequately meet and confer about the basis for the relief sought in the Motion. The Motion should be denied on this basis alone.

The Motion should also be denied on the merits because if the requested stay is granted, the putative classes risk suffering significant prejudice in multiple ways. First, and most obviously, class members face the risk of releasing claims through an unfair and inadequate settlement produced through the collusion of Defendants and the plaintiff in *Hoang To*. Second, a stay will only needlessly delay this action from continuing forward, especially because the court presiding over the *Hoang To* action is likely to grant Plaintiffs' motion for intervention and dismiss the *Hoang To* action in deference to the instant first-filed action. Indeed, the Hon. William H. Orrick, the district judge presiding over the *Hoang To* matter, has rejected nearly identical attempts by defendants in prior matters to use reverse auctions to sell class members' claims to the lowest-bidding plaintiff's counsel. Third, there is a real risk that if this Court were to stay this action, the multiple third parties from whom Plaintiffs' counsel are actively pursuing key evidence would not honor their preservation obligations and instead spoliate evidence of critical

importance to the case. This action should not be stayed. Rather, the Court should allow the court presiding over the second-filed *Hoang To* action to grant Plaintiffs' motion (filed earlier today) to intervene in and dismiss (or alternatively to stay or transfer) that action pursuant to the first-to-file doctrine, and should appoint Plaintiffs' counsel as interim counsel to represent and protect the interests of the classes in this litigation going forward.

## BACKGROUND

In 2019, Plaintiffs' counsel began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which included names, addresses, titles of videos purchased by, and various demographic and other personal information about each of their customers who made purchases on their websites. *See* Declaration of Frank S. Hedin in Support of Motion to Appoint Interim Class Counsel (the "Hedin Declaration" or "Hedin Decl.") ¶ 3. Part of this investigation included reviewing, saving, and consulting with industry experts about the "data cards" posted by Defendants on Nextmark.com, data-axle.com, and other data-brokerage websites where consumers' personal information is advertised for sale. *Id.* Over the course of this extensive investigation, Plaintiffs' counsel also studied Defendants' practices of transmitting personally identifying information and video-purchase information to Facebook, now known as Meta, via "Meta Pixel" technology installed on their websites. *Id.* Although their pre-filing investigatory work dated back to 2019, Plaintiffs' counsel were not retained by clients to prosecute claims against Defendants until late July of this year. Hedin Decl. ¶ 4.

On August 8, 2024, Plaintiffs initiated this action by filing the Class Action Complaint against Defendants in this judicial district, where Defendants maintain their corporate headquarters. ECF No. 1 (the "Complaint" or "Compl."). The Complaint alleges that Defendants disclosed to third parties, without consent, Plaintiffs' and their other customers' personally identifiable information, including information revealing the particular prerecorded video materials they purchased on any of the numerous direct-to-consumer websites operated by Defendants,[3] in violation of the VPPA, and seeks statutory damages on behalf of Plaintiffs and the members of the proposed classes.

---

[3] Alliance sells DVDs and Blu-Ray discs to consumers via a network of websites operated by its affiliate DirectToU. These websites include Collectors' Choice, Critics' Choice, Movies Unlimited, DeepDiscount, and WowHD. ECF No. 1, ¶ 39.

The Complaint alleges that Defendants violated the VPPA in two ways: (1) by renting, selling, exchanging, or otherwise disclosing customer lists and purchase records containing this same type of personally identifying video-purchase information, pertaining to all of the purchases made by their customers on all of their websites, to data aggregators, data miners, data brokers, data appenders, aggressive marketing companies, and others; and (2) by using the Meta Pixel technology, a snippet of programming code embedded on each of Defendants' direct-to-consumer websites, to systematically send their customers' personally identifiable information and information revealing the prerecorded video materials they purchased to Meta. *See* Compl. ¶¶ 3–4, 67, 74–80. Thus, in the Complaint, Plaintiffs seek to represent the following two classes:

> **The Data Brokerage Class:** All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

> **The Meta Pixel Class:** All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' website[s] while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

Compl. ¶ 85.

On August 12, 2024, the *Hoang To* plaintiff filed a putative class action in state court in California (*Hoang To,* ECF No. 1) alleging a VPPA claim and two California state-law claims against DirectToU (but not Alliance) on behalf of a putative class comprised of all Californians who purchased videos on deepdiscount.com – one of many of the direct-to-consumer websites operated by Defendants – based upon DirectToU's alleged disclosure of information pertaining to its customers' purchases on that website to Meta by way of the Meta Pixel technology. The defendant in the second-filed *Hoang To* action, DirectToU, subsequently removed the action to the Northern District of California pursuant to the Class Action Fairness Act. The defendant did not disclose the existence of the instant, earlier-filed related action in the notice of removal (*Hoang To*, ECF No. 1), and neither of the parties in the *Hoang To* action disclosed the existence of this earlier-filed related action in the two civil cover sheets filed in that action (*Hoang To*, ECF Nos. 2, 6). Additionally, despite both parties being aware of this case and the overlapping claims, at no time since the removal of the *Hoang To* action has either party to that action filed a Notice of Pendency of Other Action or Proceeding, to put the court on notice of the existence of this first filed case as Northern District of California Local Rule 3-13 plainly requires.

On August 30, 2024, the parties in this case held a Rule 26(f) conference and, on September 9, 2024, they filed their report. ECF No. 26. On September 10, 2024, the Court issued a scheduling order. ECF No. 27. On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendants, seeking razor-focused categories of information, documents, communications, and electronically-stored information concerning each of the factual and legal issues relevant to their claim for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23. Hedin Decl. ¶ 5.

On September 13, 2024, Plaintiffs' counsel served notices of deposition of Defendants' corporate representatives for November 15, 2024. *Id.*

On October 1, 2024, the plaintiff in the *Hoang To* action filed an amended complaint, alleging a VPPA claim on behalf of a proposed nationwide class of persons who purchased videos on deepdiscount.com, and two state-law claims for violation of California law on behalf of a subclass of California residents. *See* Ex. A.[4] Notably, because both of the classes proposed in

---

[4] Although the *Hoang To* action purports to allege two California state-law claims – one each for violations of California Civil Code § 1799.3 and California Business and Professions Code § 17200 – these claims are barred by the applicable limitation period and are otherwise duplicative and unnecessary (given that they are both predicated on the same factual allegations giving rise to the plaintiff's federal VPPA claim).

First, the *Hoang To* plaintiff's claim for violation of § 1799.3 – filed in August 2024, and purportedly arising from video purchases made in May 2023 (*see Hoang To*, First Amended Complaint, ECF No. 10 at ¶ 6) – is barred by the one-year limitation period applicable to a § 1799.3 claim for statutory penalties. *See* Cal. Civ. Code § 340(a) (specifying one-year limitation period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation."); *id.* § 1799.3(c) ("Any willful violation of this section shall be subject to a civil penalty not to exceed five hundred dollars ($500) for each violation, which may be recovered in a civil action brought by the person who is the subject of the records."). His § 17200 claim likewise fails because it is predicated on violations of § 1799.3. *See Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022). Having failed to allege cognizable claims for violations of these state statutes on his own behalf, the plaintiff in *Hoang To* cannot prosecute such claims on behalf of unnamed members of his proposed California subclass.

Second, even if these claims were not time barred, the California state-law claims alleged by the plaintiff in *Hoang To* would still be duplicative and unnecessary because a federal VPPA claim is capable of redressing all disclosures of video purchase-related information of all class members nationwide. *See Belmonte v. Creative Properties, Inc.*, No. 19-61438-CIV, 2019 WL 5063832, at

the operative complaint in *Hoang To* are defined to only include persons who, while enrolled in Facebook, purchased videos on deepdiscount.com while Meta Pixel technology was operational on the site, both putative classes are subsumed by the Meta Pixel Class in this earlier-filed action, as reflected in the table below:

| The "Meta Pixel Class" Proposed by Plaintiffs in This First-Filed Matter | The Classes Proposed by the Plaintiff in the Second-Filed *Hoang* Matter |
|---|---|
| All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants' website[s] while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.[5] | All natural persons residing in the United States who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com; and |

---

*1–2 (S.D. Fla. Oct. 8, 2019) (Moreno, J.) (dismissing with prejudice state-law claim "premised on the exact same factual allegations as [plaintiff's] federal claim"); *J & J Sports Prods., Inc. v. Bou*, No. 15-CV-30004-MGM, 2015 WL 8022009, at *3 (D. Mass. Oct. 1, 2015), *report and recommendation adopted sub nom. J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*, No. 15-CV-30004-MGM, 2015 WL 8082433 (D. Mass. Dec. 7, 2015) (declining to award damages to a plaintiff who prevailed on state claims predicated on the same underlying facts as the plaintiff's federal claims, explaining that damages for the overlapping state claims would be duplicative of the damages the plaintiff was awarded for prevailing on the federal claims); *Syntex (U.S.A.), Inc. v. Interpharm, Inc.,* No. CIV.A.1:92-CV-03HTW, 1993 WL 643372, at *13 (N.D. Ga. Mar. 19, 1993) ("The court notes . . . plaintiffs are seeking redress for unfair competition and trademark infringement under applicable federal and state law, and these remaining state law claims, while perhaps actionable, are superfluous.").  This is especially true because § 1799.3's provisions prohibiting disclosures of video-purchase information are far narrower in scope than those found in the federal VPPA, *see Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023), *appeal withdrawn,* No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) ("The language of § 1799.3 is similar to that of the VPPA, but notably narrower in certain respects."), because the *Hoang To* plaintiff has not alleged facts plausibly establishing any economic injury as required to state a claim for violation of § 17200, *see id.* at 287, and in any event because the injunctive relief sought by the *Hoang To* plaintiff's § 17200 claim can be obtained nationwide with a VPPA claim. *See* 18 U.S.C. § 2710(c)(2)(B) (providing that a court may award any "preliminary and equitable relief as the court determines to be appropriate").

[5] As explained above, Plaintiffs' counsel performed an exhaustive, several-years-long investigation into Defendants' disclosure practices prior to filing this case, and those investigative efforts revealed that, for the entire duration of the two-year period preceding the filing of this case, the Meta Pixel technology was operational on each website maintained by Defendants on which prerecorded video materials were sold to consumers, and that Defendants systematically transmitted to Meta the Facebook ID along with the titles of the video materials purchased by each of its customers on each of those websites throughout that two-year period of time. Thus, the Meta

| | All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com. |
| --- | --- |

Meanwhile, on September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore early class-wide resolution of this action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago), formerly a district judge in the Northern District of Illinois, on the condition (negotiated by Plaintiffs' counsel) that Defendants would agree to provide various information and materials to them in advance of the mediation that were necessary for counsel and the Plaintiffs to intelligently negotiate on behalf of members of the putative classes.  Hedin Decl. ¶ 6.  This information and material included the precise sizes of the two classes, the form and contents of the personally identifying and video purchase-related information pertaining to Plaintiffs and class members that Defendants transmitted to the various third-party recipients of the information during the applicable statutory period, and all applicable or potentially applicable policies of insurance. *Id.*

On September 18, 2024, the defendant's counsel first apprised the court in *Hoang To* of the existence of this action, in an administrative motion to enlarge time to respond to the *Hoang To* complaint; in that filing, defendant's counsel advised the court that it had asked the plaintiff's counsel in *Hoang To* to voluntarily dismiss the *Hoang To* action because of the pendency of the instant earlier-filed action, brought on behalf of classes that entirely overlap the putative classes proposed in *Hoang To*, but that the plaintiff's counsel had refused.  *Hoang To*, ECF No. 8.

Ahead of the parties' mediation scheduled for October 10, 2024, before Judge Holderman, Plaintiffs' counsel prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on various legal and factual issues relevant to the merits of the claims and defenses and issues of class certification.  Hedin Decl. ¶ 7. Plaintiffs' counsel and Defendant's counsel also participated in a lengthy pre-mediation

---

Pixel-related criterion for membership in the classes proposed in the *Hoang To* action – i.e., that a would-be class member's purchase was made "during the time the Meta Pixel was active" – is unnecessary.  For this reason, Plaintiffs in this case properly omitted such a criterion for membership in the Meta Pixel Class proposed in their complaint.

conference with Judge Holderman. *Id*.  During that conference, Defendants' counsel informed Plaintiffs' counsel that no settlement discussions had occurred between Defendants and the plaintiff in *Hoang To*. *Id*.

On October 10, 2024, following Plaintiffs' counsels' receipt of information and materials from Defendants bearing on, *inter alia*, issues of class size and insurance, the parties participated in nearly a full day of mediation before Judge Holderman.  Hedin Decl. ¶ 8. The parties were unable to reach a proposed class-wide settlement at the mediation, and Judge Holderman declared an impasse. *Id*.

For over more than a week following the mediation, Plaintiffs' counsel and Defendants' counsel, with the continued assistance of Judge Holderman, continued to engage in what Plaintiffs' counsel (and Judge Holderman) believed at the time to be good-faith negotiations. Hedin Decl. ¶ 9. Specifically, on October 16, 2024, Plaintiffs' counsel exchanged e-mail correspondence and then spoke by telephone with Judge Holderman, during which Plaintiffs' counsel asked Judge Holderman to convey a settlement demand to Defendants' counsel, which Plaintiffs' counsel believed would meaningfully advance the parties' progress towards a proposed resolution on behalf of the classes. *Id*.  Later that same day, after presenting Plaintiffs' demand to Defendants' counsel by phone, Judge Holderman telephoned Plaintiffs' counsel to convey a counter settlement offer that Defendants had authorized him to convey to Plaintiffs' counsel. *Id*. Over the next two days, Plaintiffs' counsel spoke by phone and exchanged e-mail correspondence with Judge Holderman on multiple occasions concerning Defendants' latest settlement offer, and on October 18, 2024, Plaintiffs' counsel conveyed another counter settlement demand to Judge Holderman and asked that he present it to the Defendants' counsel. Later that same day, Judge Holderman sent Plaintiffs' counsel an e-mail confirming that he had presented Plaintiffs' latest demand to Defendants' counsel by phone. *Id*.  Plaintiffs' counsel followed up with Judge Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had received any response from Defendants' counsel, and on both occasions Judge Holderman advised Plaintiffs' counsel that he had telephoned Defendants' counsel but had received no answer, that he had left voicemails for them but had still not heard back from them, and that he would try to contact Defendants' counsel yet again on October 24, 2024. *Id*.

At the same time as these settlement discussions overseen by Judge Holderman were occurring, Plaintiffs' counsel also continued to push this case forward on multiple fronts.

Immediately following the conclusion of the mediation on October 10, 2024, Plaintiffs' counsel confirmed with Defendant that the agreed-upon discovery stay (which had been in effect since the date the parties agreed to mediate) had ended. Hedin Decl. ¶ 10. On October 14, 2024, Plaintiffs' counsel served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. *Id*. On October 16, 2024, Meta served Plaintiffs with its initial responses and objections to the subpoena and, later that same day, Plaintiffs' counsel initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. *Id*. On October 19, 2024, Plaintiffs' counsel conferred further with Meta's counsel concerning the timing of its deposition in this matter. *Id*. On October 17, 2024, Plaintiffs' counsel served a third-party subpoena for documents to Data-Axle Inc., a data company that, as Plaintiffs' ongoing investigation had revealed, served as one of Defendant's list managers and/or brokers during the relevant statutory period, on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. *Id*. On October 25, 2024, Plaintiffs' counsel exchanged correspondence with counsel for Data-Axle regarding Data-Axle's response to the subpoena and production of documents. *Id.* By correspondence on October 28, 2024, counsel for Data-Axle advised they would serve objections to the subpoena. *Id.*

Additionally, over the course of ten days from October 14, 2024 through October 24, 2024, Plaintiffs' counsel repeatedly attempted to schedule meet and confer conferences with Defendants' counsel concerning deposition scheduling as well as: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised Defendants' counsel it intended to file; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in that case and whether it would seek to dismiss, stay, or transfer the case on the grounds that Defendants had previously articulated (namely, that *Hoang To* was duplicative of this earlier-filed case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in that case, did not intend to seek such relief in response to the plaintiff's complaint.  Hedin Decl. ¶ 11.

On October 14, 2024, Plaintiffs **made the first of several requests to confer** on Defendants' position regarding the *Hoang To* case. Hedin Decl. ¶ 12. Having received no response, on October 15, 2024, Plaintiffs' counsel **again requested** to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions with respect to the duplicative *Hoang-To* matter and on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel in this case. *Id*. Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by asking for "a description of the substance" of the conference being requested. *Id*. Plaintiffs' counsel immediately responded, stating:

1. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.

2. Defendants' intent with respect to the *Hoang* matter. Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL. Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

*Id*. On October 16, 2024, Defendants' counsel responded by stating that she would confer with her clients. Hedin Decl. ¶ 13. Later that day, Plaintiffs' counsel followed up with Defendants' counsel once more – again, simply to propose a date to have a meet and confer conference on these matters. *Id*. Again, Defendants' counsel refused to provide her clients' position. *Id.*

On October 21, 2024, having still not received Defendants' positions on these issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants' counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion to intervene in the *Hoang To* matter and move to dismiss that case under the first filed doctrine. Hedin Decl. ¶ 14. Defendants' counsel did not respond to that communication and, later that day, Plaintiffs' counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial disclosures, and **again sought to confer telephonically on October 22, 2024**. Hedin Decl. ¶ 15. Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they would need to discuss with their clients. *Id*.

On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email, and then placed telephone calls to and left voicemails for

each of Defendants' counsel of record, all of which went unreturned. Hedin Decl. ¶ 16. The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you." Hedin Decl. ¶ 17. Contemporaneously, Plaintiffs' counsel advised as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion, we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

*Id*. Finally, after 10 days of ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each of these important issues, and after five days of also ignoring Judge Holderman's repeated efforts to communicate with them as well (as recounted above), Defendants' counsel agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon.  Hedin Decl. ¶ 18.

During this October 24, 2024 phone call, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the counsel for the *Hoang To* plaintiff the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the instant action (even though only the proposed classes in the *Hoang To* action are only a small subset of the proposed classes here), that those releases will cover both of the Defendants in this action (even though only one of the Defendants here is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about Monday, October 28, 2024, and that Defendants would be filing a motion to stay the instant action pending resolution of the motion for preliminary approval in the *Hoang To* action.  *Id*.  At no time on the call or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay this action. *Id*. And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the class-wide settlement agreement – information obviously necessary for Plaintiffs and their counsel to assess whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay this matter or not – Defendants' counsel flatly refused without explanation.  *Id*.  Plaintiffs' counsel also indicated that they would be filing the instant motion for appointment of interim counsel as

well as a motion to intervene and to stay or dismiss the *Hoang To* action on first-filed doctrine grounds, and Defendants' counsel stated that Defendants would oppose both motions. *Id.*

Almost immediately after counsel for the parties spoke by telephone on October 24, 2024, Defendants filed their motion to stay this action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiffs would be filing in the *Hoang To* action. Hedin Decl. ¶ 19.

Later on October 24, 2024, shortly after Defendants filed their motion to stay, Plaintiffs' counsel spoke with Judge Holderman by phone, who indicated that he had just finally reached Defendants' counsel who advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel. Hedin Decl. ¶ 20.

The reverse auction that Defendants orchestrated of the classes' claims, and the willingness with which the plaintiff's counsel in *Hoang To* appears to have gone along with it, as described above, is the most underhanded conduct that Plaintiffs' counsel has experienced in his 10-year career as a lawyer practicing in this area of law. Hedin Decl. ¶ 21. The post-mediation chain of events speaks for itself: as Plaintiffs' counsel was repeatedly attempting to meet and confer in good faith with Defendants' counsel on the instant interim appointment motion and on a motion to intervene and to dismiss the *Hoang To* matter (only to be ignored), as Judge Holderman was also repeatedly attempting to reach Defendants' counsel to continue facilitating the ongoing post-mediation settlement negotiations between the parties (only to be ignored as well), and as Defendants and multiple third parties were set to provide important testimony and documents to Plaintiffs, Defendants' counsel was busy conducting a reverse auction of the classes' claims to the plaintiff's counsel in the *Hoang To* matter. In other words, Defendants set out to get a deal done on the terms of their liking with the plaintiff's counsel in the *Hoang To* matter (who as it turned out was more than happy to oblige) before Plaintiffs could move for interim appointment in this case or move to dismiss the *Hoang To* action on first-filed grounds, for the transparent purpose of avoiding an arm's-length negotiation with experienced plaintiffs' counsel intent on negotiating a good deal for class members – which is what they had already come to expect from Plaintiffs' counsel – and to prevent Plaintiffs from uncovering the depth of Defendants' wrongdoing in discovery. When the settlement agreement signed by the *Hoang To* plaintiff and Defendants is eventually submitted for approval, Plaintiffs and their counsel fully

expect that its terms will be the same (or worse) than the terms of one of Defendant's prior settlement offers that Plaintiffs in this case had previously rejected.

Plaintiffs have moved this Court to appoint Plaintiffs' Counsel as interim class counsel (ECF Nos. 38-39) and moved in the *Hoang To* action for intervention, to dismiss, stay or transfer that action on the basis of the first-filed doctrine.  *See* Ex. B.

## ARGUMENT

Courts have the inherent authority to control their dockets and to stay pending actions. *Dawkins v. Carrington Mortg. Servs., LLC*, No. 20-CV-60998-RAR, 2020 WL 12948091, at *2 (S.D. Fla. Sept. 30, 2020).  Here, Defendants seek that the court exercise that authority to stay this case to clear a path for approval of the settlement Defendants obtained from plaintiffs' counsel in *Hoang To*.  Before a stay is granted, "it must be clear that the interests of justice require it, that adjudication of the claim would be a waste of judicial effort and that the plaintiff will not be substantially harmed by the delay." *Whirlpool Fin. Corp. v. Metropolis Cap. Grp.*, No. 90 C 5845, 1991 WL 212112, at *3 (N.D. Ill. Oct. 7, 1991); *see also Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir. 1983) (courts must balance the competing interests involved in staying an action, including prejudice to plaintiff).  Each factor counsels *against* staying this action for three reasons: (1) there is an increased likelihood that if this case is stayed, that Plaintiffs and members of the classes will be irreparably harmed by the collusive, reverse auction-produced settlement that purports to release their claims; (2) if the case is stayed, it will needlessly prolong the litigation and deprive class members the ability to obtain meaningful redress, especially given the significant likelihood that the *Hoang To* action will be dismissed or stayed under the first-filed doctrine; and (3) if the case is stayed, there is a real risk that third parties will spoliate evidence of critical importance to this case, which these third parties are presently on the verge of producing in this litigation in response to Plaintiffs' subpoenas.

I.     **A stay increases the likelihood that the Classes will be prejudiced by a collusive, reverse auction settlement.**

Staying this matter would likely result in substantial prejudice to the putative Classes arising from the collusive, reverse auction settlement engineered by Defendants. "A reverse auction is said to occur when the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak

settlement that will preclude other claims against the defendant.  It has an odor of mendacity about it."  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008) (internal citations and quotations omitted).   "The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line—the sum of the settlement and the attorneys' fees—and not the allocation of money between the two categories of expense." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1312 (S.D. Fla. 2005); *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 993 (11th Cir. 2020).  This case bears every hallmark of a reverse auction settlement.  Plaintiff's counsel in the second-filed *Hoang To* action has conducted no discovery, engaged in no meaningful litigation, and does not appear to have participated in a mediation or engaged in any other arm's-length settlement negotiations with the Defendants.

By contrast, in addition to the comprehensive pre-filing investigation described above, *see supra* pp. 4-5, since filing this action, Plaintiffs' counsel have vigorously litigated this action on behalf of the proposed classes, including by serving comprehensive written discovery requests to Defendants, serving notices of deposition on each of Defendants' corporate representatives, serving third-party subpoenas for documents and deposition testimony to relevant third parties, consulting with potential experts, and preparing motions and other filings on behalf of the proposed classes.  Hedin Decl. ¶ 5.  At the same time, Plaintiffs' counsel engaged in extensive settlement discussions with Defendants' counsel, including an all-day mediation before Judge Holderman of JAMS. Hedin Decl. ¶¶ 6–9.  Prior to the mediation, Plaintiffs' counsel obtained and thoroughly reviewed materials provided by Defendants' counsel concerning the size of the putative classes and any applicable policies of insurance.   Hedin Decl. ¶ 6. Plaintiffs' counsel prepared and exchanged with Judge Holderman and Defendants' counsel a comprehensive mediation statement in advance of the mediation. Hedin Decl. ¶ 7.  Although a settlement was not reached at the mediation, negotiations overseen by Judge Holderman continued after the mediation, right up until the point when Defendants decided to find a negotiating partner more to their liking. Hedin Decl. ¶ 9.

Defendants' post-mediation conduct provides a view into their motives and the caliber of the settlement which they obtained from the *Hoang To* plaintiff.  Immediately after the October 10, 2024, mediation session, Plaintiffs' counsel restarted the clock on the discovery and on October

14, 2024, made the first of at least six distinct requests to meet and confer on Defendants' position on Plaintiffs' motion to seek interim appointment as class counsel and on Defendants' view of the *Hoang To* matter, specifically whether they intended to dismiss the action under the plainly applicable first-filed doctrine, and if not, whether they would oppose Plaintiffs moving to intervene and moving to dismiss, stay, or transfer the action.  The record evidence of the next 9 days' correspondence speaks for itself.  Defendants just stonewalled.  *See generally* Hedin Decl. ¶¶ 11-20.  Had Defendants met and conferred as Local Rule 7.3 required, Plaintiffs would have earlier filed their motion for interim appointment and their motion to intervene in the *Hoang To* action.  But either of those events occurring would likely have made Defendants' deal with *Hoang To*'s counsel impossible, which was only obtained after they failed to get Plaintiffs' counsel to assent to a class-wide settlement on terms which in Plaintiffs' counsels' view were not fair, reasonable, and adequate under Rule 23(e)(2), and which the *Hoang To* parties seek to process in a forum which they did not give required notice of the existence of this first-filed action under Northern District of California Local Rule 3-13 concerning the pendency of related actions.

Among the factors the court must consider in determining whether to stay an action is whether the movant has shown it would be inequitable to deny a stay.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  Here, the equities all cut against Defendants and their ill-advised gambit.  On October 24, 2024, in the first meet and confer call between the parties since the mediation ended in impasse on October 10, 2024, Plaintiff learned that the day before (October 23, 2024) Defendants and the *Hoang To* plaintiff had signed a settlement agreement that purports to release all class members' claims in this far-more-expansive case.  Defendants refused to provide Plaintiffs' counsel with a copy of the executed settlement agreement or any indication of its terms.  Defendants have not advised this Court what the settlement entails either, opting not to discuss its terms in the Motion or attach it as an exhibit.  Plaintiffs' counsel can only conclude that the terms of settlement between Defendants and the *Hoang To* plaintiff are the same as (or worse than) the terms of one of Defendants' settlement offers that Plaintiffs previously rejected.  Either way, when the *Hoang To* parties finally pull back the cloak on the terms of the settlement, it is highly likely that the result will be wholly unfair, inadequate, and unreasonable and not in the classes' interest.  The equities do not favor any maneuver – including a stay of this action – which furthers that cause.

Another basis of this instant motion is "efficiency." *See* Mot. at 4.  Defendants' using non-conferral as a delay tactic is not efficient.  Nor is Defendants' rushing to process a collusive settlement in a second-filed action where the parties failed to make required disclosures about the existence of the first-filed action to the court. These measures are wasteful, offensive to the adversarial system and threaten to prejudice hundreds of thousands of affected class members. Already, they have caused Plaintiffs and the Court to expend resources on the instant motion practice. If a stay is imposed, it will only delay the classes from obtaining meaningful relief, as it is highly likely (given the facts and circumstances of how the settlement was produced) that the settlement will not be approved.

## II.     The Court Presiding Over the *Hoang To* action is likely to grant Plaintiffs' motion to intervene and to dismiss the action or stay or transfer it.

Defendants' efficiency argument rings hollow for a second reason.  Had Defendants or the plaintiff in *Hoang To* advised the court presiding over that action about the pendency of this first-filed action as required under Northern District of California Local Rule 3-13, the court undoubtedly would have dismissed the *Hoang To* case or transferred it to this Court. *Id.* Indeed, it is well established that "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *See Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1118 (N.D. Cal. 2018) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)); *cf. Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." ).  The parties and issues do not, however, need to be identical, but only "substantially similar." *See Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). "The first-to-file rule is intended to promote judicial efficiency and when 'applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'" *Mattero*, 336 F. Supp. 3d at 1118; *cf. Goldstein v. Beliv*, *LLC*, No. 22-CV-80643-RAR, 2022 WL 16540185, at *1 (S.D. Fla. Oct. 28, 2022) ("This first-to-file rule "is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency . . . .").[6]

---

[6] Courts examine three factors to determine whether to dismiss an action under the first-filed rule "chronology of the lawsuits, similarity of the parties, and similarity of the issues*." See e.g.,*

The failure by the parties to the *Hoang To* action to notify the court at the outset this earlier-filed action, the defendant's subsequent failure to move to dismiss that case on first-filed grounds, and defendants' obstruction of Plaintiffs' ability to move for intervention and dismissal of *Hoang To* and for interim appointment in this action (by refusing to meet and confer for weeks on end) has now necessitated this flurry of motions practice in two courts on opposite ends of the country regarding the same dispute. While keeping the court presiding over *Hoang To* in the dark might have served Defendants' short-term goal of having a fall back counterparty with whom to sell a class-wide settlement to in a reverse auction setting, these tactics are harmful to the interests of the putative classes. And the court presiding over the *Hoang To* action is familiar with the reverse auction tactic, having recently, under nearly identical circumstances, made clear that it will not tolerate such maneuvers. The court's comments there provide an indication of how the court will view Plaintiffs' pending motion to intervene and dismiss:

> Further, the parties' conduct in *Diaz* [the second-filed case] smacks of a "reverse auction" leading to a collusive settlement. Gate Gourmet removed *Diaz* to federal court in October 2020. Even though there is significant overlap in the claims (because both cases are proposed class actions), Gate Gourmet failed to put Rahman and me on notice that there was a related case. *See* Civ. L.R. 3-13(a) (mandating notice of such actions). If it had done so, there presumably would have been motions about the first-to-file rule or an earlier motion about MDL transfer. Instead, Gate

---

*Goldstein*, 2022 WL 16540185, at *2 (S.D. Fla. Oct. 28, 2022). Each of these factors weigh in favor of dismissal of the *Hoang To* action. The instant action was filed before the *Hoang To* action. But more than just being the first filed, this case has progressed substantially further. The *Hoang To* action is set for an initial case management conference on December 10, 2024 with no discovery, class certification, dispositive motions, or trial date set. (*See Hoang To,* ECF No. 11). By contrast, here the Court set the case for trial initially in October 2025, and, on Plaintiffs' motion, extended nearly all case management deadlines by thirty days, including trial, which will now occur in November 2025. (ECF No. 34). The second and third factors also favor dismissal. As explained at length above, this action is broader in scope. First, it involves two defendants, naming Alliance in addition to Defendant DirectToU. Second, it seeks relief on behalf of two separate classes – the Data Brokerage Class and the Meta Pixel Class. Plaintiffs will seek to certify both of these classes and, if successful, will pursue damages as to VPPA violations based on Defendants' disclosures of consumers' personally identifiable information to third parties in the data brokerage industry via customer list rental *and* to Meta Platforms via the Meta Pixel. Third, as to the Meta Pixel Class, the *Hoang To* plaintiff's First Amended Complaint addresses only DirectToU's use of the pixel on Deepdiscount.com, ignoring that this site is just one of several direct-to-consumer sites from which DirectToU obtains customer PII to transmit to Meta. The *Hoang To* court is likely to find that each of these factors weighs in favor of dismissal or transfer of the *Hoang To* action to this Court.

Gourmet negotiated a pre-certification settlement with the plaintiffs' counsel in *Diaz* and swiftly stipulated to remand the case to state court once it did so. It only filed notices in this case and *Diaz* a month before that remand. . . Even today, it has offered no principled reason for choosing to settle a later-filed case.

…

To start, this case was filed first. Usually, considerations of efficiency, economy, and avoiding duplicative litigation give favor to the first-filed case. . . . If *Diaz* [the second-filed case] had remained pending in federal court, it would likely have been subject to the first-to-file rule and stayed or dismissed in favor this case… In short, if this case were to yield [], it would reward a case that appears to be a reverse auction. It would incentivize class-action defendants to pick their favorite class counsel from among various cases; reach a pre-certification settlement that is good for the defendants, good for class counsel, and potentially bad for the class; and then stipulate to remanding to state court to escape the first-to-file rule.

*Rahman v. Gate Gourmet, Inc.,* No. 3:20-CV-03047-WHO, 2021 WL 5973046, at *2 - *4 (N.D. Cal. Nov. 22, 2021) (Orrick, J.).

Given the significant likelihood of the second-filed *Hoang To* case being dismissed in deference to this first-filed case, staying this case would not serve the interests of judicial economy, nor would it align with Federal Rule of Civil Procedure 1's mandate for the just, speedy resolution of disputes.

### III.     A stay threatens to prejudice Plaintiffs' ability to obtain important discovery.

As noted, Plaintiffs served document and deposition subpoenas on third parties Meta Platforms and Data-Axle, Inc., the recipients of Defendants' VPPA violative disclosures.  Hedin Decl. ¶ 10.    The information sought by those subpoenas bears on class certification and it will reveal the scope of Defendants' VPPA violations for class certification and damages, serve as corroborating evidence of Defendants' VPPA violations, and may provide further investigative avenues or material for impeachment.  On October 14, 2014, Plaintiffs served a subpoena to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. *Id*. The meet and confer process with Meta's counsel is underway, with Meta having issued its initial responses and objections to the subpoena on October 16, 2024, and, later that same day, Plaintiffs' counsel having contacted Meta's counsel to discuss. *Id*. On October 17, 2024, Plaintiffs' counsel served a third-party subpoena for documents to Data-Axle Inc., a data company that, as Plaintiffs' ongoing investigation had revealed, served as one of Defendant's list managers and/or brokers during the relevant statutory period, on Defendants' counsel by e-mail,

and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. *Id.* On October 25, 2024, Plaintiffs' counsel exchanged correspondence with counsel for Data-Axle regarding Data-Axle's response to the subpoena and production of documents. *Id.* By correspondence on October 28, 2024, counsel for Data-Axle advised they would serve objections to the subpoena. *Id.*

Plaintiffs' counsel has diligently pursued obtaining evidence from these third parties. It is critically important that these third parties, and any others with materials relevant to this litigation, continue to preserve all such materials in their possession, custody, or control. The entry of a stay increases the likelihood of these third parties disregarding their preservation obligations with respect to such materials. Moreover, there are likely other entities who have discoverable information relevant to the classes' claims which Plaintiffs will learn through the information obtained from this first round of subpoenas to Meta and Data-Axle. A stay of this case pending the disposition of the *Hoang To* matter – which, as stated, will end in dismissal, or in a stay or transfer of the action – increases the risk that evidence in the possession of these potential witnesses may be lost, destroyed, or become unavailable.

Given the posture of this case, the pendency of the case-dispositive motion in the second-filed *Hoang To* action, the unlikelihood of approval of the collusive settlement reached in the *Hoang To* matter, the threat of substantial prejudice to Plaintiffs and the members of the classes by delay of the substantial progress of this case, and the concomitant risk of spoliation of key evidence, the Motion to Stay should be denied.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Motion to Stay be Denied.


Date: <u>October 25, 2024</u>                                 Respectfully submitted,

*Frank S. Hedin*

**HEDIN LLP**
Frank S. Hedin
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: FHedin@hedinllp.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 28, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

<em><u>/s/ Frank S. Hedin</u></em>