# Exhibit B

Frank S. Hedin (SBN 291289)
Hedin LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:    (305) 357-2107
Facsimile:    (305) 200-8801
E-Mail:        fhedin@hedinllp.com

*Counsel for Proposed Intervenors*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN HOANG TO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>       v.<br><br>DIRECTTOU, LLC,<br><br>                    Defendant,<br><br>       and,<br><br>DOUGLAS FELLER; JEFFRY HEISE; JOSEPH MULL, individually and on behalf of all others similarly situated,<br><br>                    Proposed<br>                    Plaintiff-Intervenors. | Case No. 24-cv-06447-WHO<br><br>**TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW**<br><br>**CLASS ACTION**<br><br>Date: November 6, 2024<br>Time: 2:00 PM<br>Judge: Hon. William H. Orrick<br>Courtroom: 2 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND ...............................................................................................3

    A.  Plaintiffs Investigate, File, and Zealously Prosecute the *Feller* Action ...............3

    B.  Plaintiff Files the Secondary, Duplicative *Hoang To* Action ..............................8

    C.  Defendants Obstruct Plaintiffs from Seeking Appointment as Intern Class Counsel, From Seeking Intervention into and Dismissal of This Action, and From Engaging In Discovery ..........................................................12

    D.  Plaintiffs Learn of the Reverse Auction Collusively Engineered in the *Hoang To* Action.....................................................................................15

III. ARGUMENT .....................................................................................................18

    A.  Intervention is Warranted Either as a Matter of Right or With Permission ..............................................................................................19

    B.  The First-to-File Rule Requires Dismissal, or in the Alternative, a Transfer or Stay of the *Hoang To* Action ........................................................22

IV. CONCLUSION....................................................................................................25

**TABLE OF AUTHORITIES**

**CASES**

*Ambrose v. Walker*,
   No. 08-CV-0533, 2011 WL 2941299 (S.D. Ill. July 21, 2011) ............................................... 10

*Barapind v. Reno*,
   225 F.3d 1100 (9th Cir. 2000). ................................................................................................. 25

*Belmonte v. Creative Properties, Inc.*,
   No. 19-CV-61438, 2019 WL 5063832 (S.D. Fla. Oct. 8, 2019)............................................... 10

*Diaz v. Gate Gourmet, Inc. et al*,
   No. 2:20-CV-09454 (C.D. Cal.)........................................................................................... 18, 20

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) .................................................................................................... 19

*Edmonds v. Amazon.com*, Inc.,
   No. 19-CV-1613, 2020 WL 4207208 (W.D. Wash. July 22, 2020) ......................................... 20

*Elpidio v. Union Pac. R.R. Co.*,
   No. 15-CV-3071, 2015 WL 5559920 (N.D. Cal. Sept. 18, 2015) ........................................... 20

*Forest Conservation Council v. U.S. Forest Service*,
   66 F.3d 1489 (9th Cir.1995). .................................................................................................... 19

*Garcia v. Praxair, Inc.*,
   No. 3:18-CV-03887, 2018 WL 4471151 (N.D. Cal. Sept. 18, 2018)....................................... 25

*J & J Sports Prods., Inc. v. Bou*,
   No. 15-CV-30004, 2015 WL 8022009 (D. Mass. Oct. 1, 2015) ............................................. 10

*J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*,
   No. 15-CV-30004, 2015 WL 8082433 (D. Mass. Dec. 7, 2015)............................................. 10

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015) ............................................................................................ 23, 24

*Krefting v. Kaye-Smith Enterprises Inc.*,
   No. 2:23-CV-220, 2023 WL 4847148 (W.D. Wash. July 28, 2023)....................................... 20

*Manier v. L'Oreal USA, Inc*,
   No. 2:16-CV-06886, 2017 WL 59066 (C.D. Cal. Jan. 4, 2017).............................................. 20

*Martin v. Meredith Corp.*,

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

657 F. Supp. 3d 277 (S.D.N.Y. 2023) ................................................................. 11

*Molander v. Google LLC*,
  473 F. Supp. 3d 1013 (N.D. Cal. 2020)..............................................................23

*Pedro v. Millennium Prods., Inc.*,
  No. 15-CV-05253, 2016 WL 3029681 (N.D. Cal. May 27, 2016) .......................23

*Rahman v. Gate Gourmet, Inc.*,
  No. 3:20-CV-03047, 2021 WL 5973046 (N.D. Cal. Nov. 22, 2021) ............... 18, 25

*SMIC, Americas v. Innovative Foundry Techs. LLC*,
  473 F. Supp. 3d 1021 (N.D. Cal. 2020) .............................................................. 24

*Syntex (U.S.A.), Inc. v. Interpharm, Inc.*,
  No. 92-CV-03, 1993 WL 643372 (N.D. Ga. Mar. 19, 1993) ................................ 10

*United States v. EME Homer City Generation L.P.*,
  727 F.3d 274 (3d Cir. 2013)................................................................................ 11

*United States v. EME Homer City Generation L.P.*,
  823 F. Supp. 2d 274 (W.D. Pa. 2011) ................................................................. 11

*Widjaja v. YUMA Brands, Inc.*,
  No. 09-CV-1074, 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009)............................ 19

*Woodard v. Boeing Emps. Credit Union*,
  No. 2:23-CV-00033, 2023 WL 4847005 (W.D. Wash. July 28, 2023).................... 20

**STATUTES**

18 U.S.C. § 2710 ..............................................................................................*passim*

28 U.S.C. § 1391 ....................................................................................................... 25

28 U.S.C. 1404 ......................................................................................................... 18

California Business and Professions Code § 17200 ............................................ 9, 11

California Civil Code § 1799.3 ........................................................................9, 10, 11

California Civil Code § 340 ......................................................................................... 9

Class Action Fairness Act, Public Law 109-2, 119 Stat. 4 (2005) ............................. 8

Clean Water Act, 33 U.S.C. §1251 et seq............................................................... 11

**RULES**

Federal Rule of Civil Procedure 24 ......................................................... 1, 17, 18, 19

Federal Rule of Civil Procedure 26 .......................................................................... 4

---

iii

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

N.D. Cal. Local Rule 3-13 ................................................................................................ 8, 20, 21

Rule 1 Northern District of California's Procedural Guidance for Approval of Class Action
     Settlements Rule 1 .................................................................................... 21, 22

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

Proposed intervenors Douglas Feller, Jeffry Heise, and Joseph Mull, the plaintiffs in the action *Feller et al. v. Alliance Entertainment, LLC, et al.*, Case No. 0:24-CV-61444-RAR (S.D. Fla., filed Aug. 8, 2024)[1] (hereinafter, "Plaintiffs"), respectfully submit this time-sensitive motion pursuant to Federal Rule of Civil Procedure 24 to intervene in and to dismiss, or alternatively to transfer or stay, this action pursuant to the first-to-file rule.

## I.     INTRODUCTION

Intervention by Plaintiffs in this case is necessary to protect the interests of the putative classes. Following Plaintiffs' filing of the *Feller* case, a putative class action for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710—and the product of years of investigatory work by their counsel—Plaintiffs and their counsel expended considerable time and resources litigating the case and exploring settlement with Defendants on behalf of the proposed classes. A mediation was held on October 10, 2024 before a well-respected JAMS mediator (and former federal district court judge) but the parties were unable to reach a settlement.

Approximately one week ago, Defendants decided that they were unwilling to settle the classes' claims on the fair, reasonable, and adequate terms set forth in Plaintiffs' settlement demands in the *Feller* action (the latest of which was made on October 18, 2024), and they instead orchestrated a reverse-auction sale of the classes' claims to the plaintiff and his counsel in the instant matter – a duplicative, copy-cat case brought on behalf of putative classes defined far more narrowly than the classes proposed in the *Feller* action, and which alleges claims against only one of the two defendants named in the *Feller* action. Plaintiffs' counsel first learned of the reverse auction on a call with Defendants' counsel on October 24, 2024 – two weeks after the

---

[1] A copy of the complaint in the *Feller* action is attached hereto as **Exhibit A**.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

mediation between the parties in the first-filed *Feller* action, a week after Defendants had made their most recent post-mediation settlement offer to Plaintiffs' counsel, and just as Plaintiffs were on the verge of moving for interim appointment of class counsel in the *Feller* action and filing the instant motion to intervene and to dismiss this action on first-to-file grounds. On that call, Defendants' counsel advised Plaintiffs' counsel that the parties to this second-filed matter had just signed (on October 23, a day earlier) a class-wide settlement agreement that purports to release the claims of all members of the far-more-expansive classes in the *Feller* case.

The plaintiff in the instant matter case has conducted no discovery, engaged in no meaningful litigation, and does not appear to have participated in a mediation or engaged in any other arm's-length settlement negotiations with the Defendants. Rather, based on how quickly the reverse auction transpired, it appears the plaintiff and his counsel in this case simply signed on the dotted lines of whatever settlement agreement was presented to them.

Under the circumstances – which bear all the hallmarks of a collusive, reverse auction – the Court should grant this motion to intervene and dismiss, stay, or transfer this action to protect the interests of class members in the *Feller* action.[2]

---

[2] On October 27, 2024, Plaintiffs filed a motion in the *Feller* Action for appointment of their counsel as interim class counsel.  A copy of that motion and the supporting papers are attached hereto as **Composite Exhibit B**.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

## II.     BACKGROUND[3]

### A.     Plaintiffs Investigate, File, and Zealously Prosecute the *Feller* Action

In 2019, Plaintiffs' counsel began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which include names, addresses, titles of videos purchased by, and various demographic and other personal information about each of their customers who made purchases on their websites. *See* Declaration of Frank S. Hedin (the "Hedin Declaration" or "Hedin Decl."), ¶ 6. Part of this investigation included reviewing, saving, and consulting with industry experts about the "data cards" posted by Defendants on Nextmark.com, data-axle.com, and other data-brokerage websites where consumers' personal information is advertised for sale. Hedin Decl. ¶ 7. Over the course of their investigation, Plaintiffs' counsel also studied Defendants' transmission of personally identifiable information to Facebook, now known as to Meta Platforms, Inc. ("Meta"), via the Meta Pixel technology installed on their websites. *Id.* Although their pre-filing investigatory work dates back to 2019, Plaintiffs' counsel was not retained prosecute claims against Defendants until late July of this year. Hedin Decl. ¶ 8.

On August 8, 2024, Plaintiffs filed a Class Action Complaint against Defendants. The Complaint seeks damages resulting from Defendants' nonconsensual disclosures of Plaintiffs' and their other customers' personally identifiable information in violation of the VPPA. As alleged in the Complaint,  Defendant Alliance Entertainment, LLC sells DVDs and Blu-Ray discs to consumers via a network of websites operated by its affiliate Defendant DirectToU, LLC. *See Feller*, ECF No. 1 at ¶ 75. These websites include Collectors' Choice, Critics' Choice, Movies

---

[3] The terms "Plaintiffs" and "Defendants" as used in this document in the plural refer to the parties in the *Feller* action. Additionally, where the singular form of "Plaintiff" and "Defendant" appear within this document, they shall refer to the parties in the instant matter, *Hoang To v. DirectToU, LLC*, 3:24-cv-06447-WHO (N.D. Cal.).

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

Unlimited, DeepDiscount, and WowHD. *Id*. Plaintiffs allege that Defendants violated the VPPA in two ways. First, Defendants have monetized their "vast digital database comprise of their customers' Personal Viewing Information, including the names and addresses of each customer and information reflecting the titles of all video and other audio-visual products" that each has purchased. *Id*. at ¶ 66. Defendants accomplished this by "renting, selling, or otherwise disclosing their customers' Personal Viewing Information to data aggregators, data miners, data brokers, data appenders, and other third parties." *Id*. at ¶ 67. The *Feller* Complaint corroborates these allegations through publicly available evidence, including screenshots of a data card offered for sale by Defendants on the data brokerage website Nextmark.com (containing the Personal Viewing Information of 384,538 American consumers). *Id*. at ¶ 68. Second, Defendants have disclosed their consumers' Personal Viewing Information through the use of the Meta Pixel, a snippet of programming code embedded on each of Defendants' many direct-to-consumer websites which systematically sends their personally identifiable information to Meta. *Id*. at ¶¶ 74–80. Thus, Plaintiffs seek to certify the following classes in the *Feller* action:

> **The Data Brokerage Class:** All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

> **The Meta Pixel Class:** All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

*See id.* at ¶ 85.

On August 30, 2024, the parties to the *Feller* action held a Rule 26(f) conference and, on September 9, 2024, filed their report. *Feller,* ECF No. 26. On September 10, 2024, the Court issued a scheduling order, *Feller,* ECF No. 27, which has since been amended to require class

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

certification motions filed by February 2, 2025, dispositive motions filed by July 24, 2025, and setting the case for a jury trial on November 3, 2025. *Feller,* ECF No. 34.

On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendant. The requests seek information, documents, communications, and electronically stored information concerning each of the factual and legal issues relevant to Plaintiffs' and the classes' claims for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23. Hedin Decl. ¶ 9. On September 13, 2024, Plaintiffs' counsel served notices of depositions of Defendants' corporate representatives for November 15, 2024. *Id.*

On September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore class-wide resolution of the *Feller* action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago).[4] Hedin Decl. ¶ 10. The mediation was held on the condition (negotiated by Plaintiffs' counsel) that Defendants would provide various information and materials in advance of the mediation. *Id.* This included the precise size of the two classes, the form and contents of the personally identifiable information that Defendants disclosed during the relevant time period, and all applicable or potentially applicable insurance policies. *Id.*

Before the mediation, Plaintiffs' counsel prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on legal and factual issues relevant to the claims, defenses, and issue of class certification. Hedin Decl. ¶ 11. Plaintiffs' counsel and Defendants' counsel also participated in a lengthy pre-mediation conference with Judge Holderman. *Id.* Finally, in advance of the mediation, Defendants' counsel advised Plaintiffs' counsel that Defendants had not engaged in

---

[4] Judge Holderman is a former U.S. District Court Judge for the Northern District of Illinois.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

any settlement discussions with the plaintiff or his counsel in this second-filed *Hoang To* action. Hedin Decl. ¶ 11.

On October 10, 2024, the parties participated in a full day mediation before Judge Holderman. Hedin Decl. ¶ 12. After mediating for nearly eight hours, they were unable to reach a proposed class-wide settlement and Judge Holderman declared an impasse. *Id*.

For over more than a week following the mediation, Plaintiffs' counsel and Defendants' counsel, with the continued assistance of Judge Holderman, continued to engage in what Plaintiffs' counsel (and Judge Holderman) believed at the time to be good-faith negotiations. Hedin Decl. ¶ 13. Specifically, on October 16, 2024, Plaintiffs' counsel exchanged e-mails and spoke by telephone with Judge Holderman, and asked him to convey a settlement demand to Defendants' counsel. *Id.* Later that same day, after presenting Plaintiffs' demand to Defendants' counsel by phone, Judge Holderman telephoned Plaintiffs' counsel to convey a counter offer that Defendants had authorized him to provide. *Id*. Over the next two days, Plaintiffs' counsel spoke by phone and exchanged e-mail correspondence with Judge Holderman several times, and on October 18, 2024, Plaintiffs' counsel asked Judge Holderman to present a new settlement demand to Defendants' counsel. *Id*. Judge Holderman sent Plaintiffs' counsel an e-mail that day confirming that he had done transmitted the offer. *Id*. Plaintiffs' counsel followed up with Judge Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had received any response from Defendants' counsel, and on both occasions, Judge Holderman advised Plaintiffs' counsel that he had telephoned Defendants' counsel but had received no answer, and that he had left voicemails but had not heard back. *Id*. Judge Holderman indicated he would try to contact Defendants' counsel again on October 24, 2024. *Id*.

At the same time as these settlement discussions overseen by Judge Holderman were occurring, Plaintiffs' counsel continued pushing this case forward on multiple fronts. Hedin Decl. ¶ 14. Immediately following the mediation on October 10, 2024, Plaintiffs' counsel confirmed with Defendant that the agreed-upon discovery stay had ended. *Id.* On October 14, 2024, Plaintiffs' counsel served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. *Id.* On October 16, 2024, Meta served Plaintiffs with its initial responses and objections to the subpoena and, later that same day, Plaintiffs' counsel initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. *Id.* On October 19, 2024, Plaintiffs' counsel conferred further with Meta's counsel concerning the timing of its deposition in this matter. *Id.* On October 17, 2024, Plaintiffs' counsel served a third-party subpoena for documents to Data-Axle Inc., a data company that, as Plaintiffs' ongoing investigation had revealed, served as one of Defendant's list managers and/or brokers, on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. *Id.* On October 25, 2024, Plaintiffs' counsel exchanged correspondence with counsel for Data Axle regarding Data Axle's response to the subpoena and production of documents. *Id.*

Simply put: Plaintiffs and their counsel thoroughly investigated and have vigorously prosecuted the *Feller* action, and the settlement discussions that occurred between the parties in *Feller* were conducted at arm's length and overseen by an experienced mediator.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

## B. Plaintiff Files the Secondary, Duplicative *Hoang To* Action

Four days after the *Feller* action was filed, on August 12, 2024, the plaintiff in the instant case filed a duplicative VPPA case in California Superior Court, Alameda County.[5] The plaintiff brought a VPPA claim and two California state-law claims against Defendant DirectToU, LLC (but not Defendant Alliance) in this action, and he asserted these claims on behalf of a putative class comprised of:

> All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com.

ECF No. 1, ¶ 12.

On September 12, 2024, the defendant removed the *Hoang To* action to this Court pursuant to the Class Action Fairness Act. The defendant did not disclose the existence of the earlier-filed, related *Feller* action in the notice of removal. *See* ECF No. 1. Nor did either of the parties to this case disclose the existence of the earlier-filed *Feller* action in the two civil cover sheets filed in this case. *See* ECF Nos. 2, 6. Nor did either party file a Notice of Pendency of Other Action or Proceeding to apprise the Court of the existence of the first-filed *Feller* action, as Northern District of California Local Rule 3-13 plainly requires.

On October 1, 2024, the plaintiff in this case filed a First Amended Complaint, alleging a VPPA claim on behalf of a proposed nationwide class of persons who purchased videos on deepdiscount.com, and two state-law claims for violation of California law on behalf of a subclass of California residents. *See* ECF No. 10.

---

[5] The Plaintiff in the *Hoang To* action is listed in the caption as "Jonathan Hoang To" but is referred to within the body of the First Amended Complaint as Jonathan Huang To (*compare* ECF No. 10 at 1 (case caption) *with* ECF No. 10 at 3 (paragraph 6)), and it remains unclear which version is correct.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

Notably, because both of the classes proposed in the operative complaint in the instant *Hoang To* action are defined to only include persons who, while enrolled in Facebook, purchased videos <u>on deepdiscount.com</u>, both of these proposed classes are subsumed by the Meta Pixel Class in the earlier-filed *Feller* action, as shown below:

| The "Meta Pixel Class" Proposed by Plaintiffs in The First-Filed *Feller* Action | The Classes Proposed by the Plaintiff in the Second-Filed *Hoang* Matter |
|---|---|
| All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants' website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.[6] | All natural persons residing in the United States who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com; and<br><br>All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com. |

The *Hoang To* plaintiff also purports to allege two California state-law claims on behalf of a California sub-class – namely, claims for violations of California Civil Code § 1799.3 and California Business and Professions Code § 17200 – both of which are predicated on the same factual allegations giving rise to his federal VPPA claim. *See* ECF No. 10.

But the plaintiff's claim for a violation of § 1799.3 – which was first asserted in August 2024 and arises from video purchases allegedly made by the plaintiff in May 2023 (*see* ECF No.

---

[6] Plaintiffs' counsel's exhaustive, several-years-long investigation into Defendants' disclosure practices revealed that, for the entire duration of the two-year period preceding the filing of this case, the Meta Pixel technology was operational on each website maintained by Defendants on which prerecorded video materials were sold to consumers. Thus, the Meta Pixel-related criterion for membership in the classes proposed in the *Hoang To* action – i.e., that a would-be class member's purchase was made "during the time the Meta Pixel was active" – is unnecessary. For this reason, Plaintiffs in this case properly omitted such a criterion for membership in the Meta Pixel Class proposed in their complaint.

10 at ¶ 6) – is barred by the one-year limitation period applicable to a § 1799.3 claim for statutory penalties. *See* Cal. Civ. Code § 340(a) (specifying one-year limitation period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation."); *id.* § 1799.3(c) ("Any willful violation of this section shall be subject to a civil penalty not to exceed five hundred dollars ($500) for each violation, which may be recovered in a civil action brought by the person who is the subject of the records."). Similarly, the plaintiff's § 17200 claim – which is predicated on violations of § 1799.3 – is likewise barred by the one-year limitation period applicable to § 1799.3 claims. *See Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022).

Moreover, even if these claims were not time-barred, the California state-law claims alleged by the plaintiff in *Hoang To* would still be duplicative and unnecessary. A federal VPPA claim is capable of redressing all disclosures of video purchase-related information of all class members nationwide. *See Belmonte v. Creative Properties, Inc.*, No. 19-61438-CIV, 2019 WL 5063832, at *1–2 (S.D. Fla. Oct. 8, 2019) (dismissing with prejudice state-law claim "premised on the exact same factual allegations as [plaintiff's] federal claim"); *J & J Sports Prods., Inc. v. Bou*, No. 15-CV-30004-MGM, 2015 WL 8022009, at *3 (D. Mass. Oct. 1, 2015), report and recommendation adopted sub nom. *J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*, No. CV 15-30004-MGM, 2015 WL 8082433 (D. Mass. Dec. 7, 2015) (declining to award damages to a plaintiff who prevailed on state claims predicated on the same underlying facts as the plaintiff's federal claims, explaining that damages for the overlapping state claims would be duplicative of the damages the plaintiff was awarded for prevailing on the federal claims); *Ambrose v. Walker*, No. 08-CV-0533-MJR-SCW, 2011 WL 2941299, at *2 (S.D. Ill. July 21, 2011) ("Plaintiff's state law claims are duplicative of his federal constitutional claims and thus,

unnecessary."); *Syntex (U.S.A.), Inc. v. Interpharm, Inc.,* No. CIV.A.1:92-CV-03HTW, 1993 WL 643372, at *13 (N.D. Ga. Mar. 19, 1993); *United States v. EME Homer City Generation L.P.*, 823 F. Supp. 2d 274, 296 (W.D. Pa. 2011), *aff'd,* 727 F.3d 274 (3d Cir. 2013) . This is especially true given that: (1) § 1799.3's provisions prohibiting disclosures of video-purchase information are far narrower in scope than those found in the federal VPPA, *see Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023), *appeal withdrawn,* No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) ("The language of § 1799.3 is similar to that of the VPPA, but notably narrower in certain respects."); (2) the plaintiff has not alleged required facts plausibly establishing any economic injury as required to state a claim for violation of § 17200, *id.* at 287 (dismissing § 17200 on similar allegations of disclosures to Meta, explaining that "Plaintiff's injury consists solely of the alleged disclosure of private information" which is "not 'lost money or property'" as required by the statute); and (3) the injunctive relief sought by the plaintiff under his § 17200 claim is capable of being obtained on a class-wide basis nationwide through his VPPA claim. *See* 18 U.S. Code § 2710 (c)(2)(B) (providing that a court may award any "preliminary and equitable relief as the court determines to be appropriate").

It was not until September 18, 2024, that the defendant first apprised this Court of the existence of the *Feller* action in a motion to enlarge its time to respond to the *Hoang To* complaint. ECF No. 8. In that filing, the defendant stated that it had asked the plaintiff's counsel to voluntarily dismiss the *Hoang To* Action in deference to the earlier-filed *Feller* action, which had been brought on behalf of classes that entirely subsume the putative classes proposed in this second-filed case. *Id.* The defendant noted that the plaintiff's counsel had nonetheless refused to dismiss the instant case. *Id.*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

### C. Defendants Obstruct Plaintiffs From Seeking Appointment as Interim Class Counsel, From Seeking Intervention into and Dismissal of This Action, and From Engaging in Discovery

Over the course of a 10-day period beginning on October 14, 2024, continuing through October 24, 2024, Plaintiff's counsel repeatedly attempted to schedule a meet and confer conference with Defendants' counsel concerning, inter alia: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised Defendants' counsel it intended to file in the *Feller* action; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in the case and whether it would seek to dismiss, stay, or transfer the case on the grounds that it had previously articulated (namely, that it was duplicative of this earlier-filed case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in the case, did not intend to seek such relief in response to the plaintiff's complaint. Hedin Decl. ¶ 15.

First, on October 14, 2024, Plaintiffs made the first of several requests to confer on Defendants' position regarding the *Hoang To* action. Hedin Decl. ¶ 16. Having received no response, on October 15, 2024, Plaintiffs' counsel again requested to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions regarding the duplicative *Hoang To* action and Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel. *Id.* Plaintiffs' counsel followed up again that same day (for a fourth time) seeking to meet and confer regarding Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel. *Id.* Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

asking for "a description of the substance" of the conference being requested. *Id*. Plaintiffs'
counsel immediately responded, stating:

1.  Defendants' position on Plaintiffs' forthcoming motion seeking interim
    appointment as class counsel.

2.  Defendants' intent with respect to the *Hoang* matter. Specifically, Plaintiff wants
    to discuss whether Defendant intends to dismiss *Hoang* under the first-filed
    doctrine or to move to transfer *Hoang* to the SDFL. Alternatively, we'd like to
    discuss Defendants' position on a motion by Plaintiffs to intervene in
    the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on
    first filed grounds.

*Id*.

On October 16, 2024, Defendants' counsel responded by stating that she would confer
with her client. Hedin Decl. ¶ 17. Later that day, Plaintiffs' counsel followed up with
Defendants' counsel once more—again, simply to propose a date to have a meet and confer
conference on these matters. *Id.* Again, Defendants' counsel responded that she would reply with
her clients' position. *Id.* On October 21, 2024, having still not received Defendants' positions on
these issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants'
counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without
waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion
to intervene in the *Hoang To* action and move to dismiss that case under the first filed doctrine.
Hedin Decl. ¶ 18.

Defendants' counsel did not respond to that communication, and, later that day, Plaintiffs'
counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial
disclosures, and again sought to confer telephonically on October 22, 2024. Hedin Decl. ¶ 19.
Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they
would need to discuss with their clients. *Id*.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email. Hedin Decl. ¶ 20. Plaintiffs' counsel also left voicemails to each of Defendants' counsel of record, all of which went unreturned. *Id.* The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you."  Hedin Decl. ¶ 21. In response, Plaintiffs' counsel advised Defendants' counsel as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

*Id.*

And in response to this e-mail from Plaintiffs' Counsel – which, again, came after 10 days of Defendants' counsel ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each of these important issues, and after five days of ignoring Judge Holderman's repeated efforts to communicate with them as well, Defendants' counsel agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon.  Hedin Decl. ¶ 22.

To recap: between October 14 and October 24, Defendants actively obstructed Plaintiffs' Counsel in the *Feller* action from seeking appointment of their counsel as interim class counsel, from seeking intervention into and dismissal of this second-filed action, and from obtaining the important testimony and documents that Plaintiffs had sought from Defendants and third parties in discovery.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

**D.** **Plaintiffs Learn of the Reverse Auction Collusively Engineered in the *Hoang To* Action**

As it turned out, Defendants had been ignoring Plaintiffs' counsel's attempts to meet and confer with them, and thereby preventing Plaintiffs from filing motions for interim appointment in the *Feller* action and to intervene in and to dismiss the instant *Hoang To* action, because they were busy orchestrating a collusive reverse auction of the class members' claims with the plaintiff and his counsel in the second-filed *Hoang To* action.

Indeed, during the October 24, 2024 phone call that Plaintiffs' counsel was finally able to schedule with Defendants' counsel, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the plaintiff and his counsel in the *Hoang To* action the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the *Feller* action (even though only the proposed classes in the *Hoang To* action comprise only a subset of the persons who comprise the proposed classes in the *Feller* action), that those releases will cover both of the Defendants in the *Feller* action (even though only one of those Defendants is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about October 28, 2024, and that Defendants would be filing a motion to stay the *Feller* action pending resolution of the forthcoming motion for preliminary approval in the *Hoang To* action. Hedin Decl. ¶ 22. At no time on this call or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay the *Feller* action. And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the class-wide settlement agreement that had been signed between Defendants and the *Hoang To* plaintiff and his counsel – information obviously necessary for Plaintiffs and their counsel to assess

15

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay the *Feller* matter or not – Defendants' counsel flatly refused without explanation. *Id.*

Later in the day, following this call with Defendants' counsel, Plaintiffs' counsel spoke with Judge Holderman by phone, who indicated he had just finally gotten ahold of Defendants' counsel, and they had just then advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel. *Id.*

Almost immediately after Plaintiffs' counsel's call with Defendants' counsel ended on October 24, 2024, Defendants filed a motion to stay the *Feller* action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiffs would be filing in the instant *Hoang To* action. Hedin Decl. ¶ 23. The motion to stay states, in pertinent part, that the parties in the *Hoang To* action signed a class-wide settlement agreement "on October 23, 2024" (*Feller*, ECF No. 36 at 2), that "[t]he settlement reached in the *Hoang To* action would, if approved by the Court, cover all claims asserted in this [*Feller*] case" (*id.* at 1), that "the *Hoang To* settlement is expected the release the claims of all putative class members in this [*Feller*] case" (*id.* at 4), and that "a motion for preliminary approval of the proposed settlement will be filed early next week" in the *Hoang To* case (*id.* at 2).

Later in the day on October 24, 2024, Plaintiffs' counsel emailed all counsel of record for the plaintiff in the *Hoang To* action in an effort to meet and confer on their position on both the motion for interim appointment to be filed in the *Feller* action and the instant motion to intervene in and to dismiss or stay the *Hoang To* action on first-to-file grounds. Hedin Decl. ¶ 24. Counsel of record for the plaintiff in the *Hoang To* action, Adrian Barnes, responded that he was not familiar enough with the litigation to provide his client's position on these issues, and that the

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

1    other counsel of record for his client were unavailable until October 28, 2024, because of the

2    observation of a religious holiday. *Id.*

3           The reverse auction that Defendants orchestrated of the classes' claims, and the

4    willingness with which the plaintiff's counsel in *Hoang To* appears to have gone along with it, as

5    described above, is the most underhanded conduct that Plaintiffs' counsel has experienced in his

6    10-year career as a lawyer practicing in this area of law. Hedin Decl. ¶ 25. The post-mediation

7    chain of events speaks for itself: as Plaintiffs' counsel was repeatedly attempting to meet and

8    confer in good faith with Defendants' counsel on their planned interim appointment motion and

9    on the instant motion to intervene and to dismiss the *Hoang To* action (only to be ignored), as

10   Judge Holderman was also repeatedly attempting to reach Defendants' counsel to continue the

11   post-mediation settlement negotiations (only to be ignored as well), and as Defendants and

12   multiple third parties were set to provide important testimony and documents to Plaintiffs,

13   Defendants' counsel was busy conducting a reverse auction of the classes' claims to the plaintiff's

14   counsel in this matter.  In other words, Defendants set out to get a deal done on the terms of their

15   liking with the plaintiff's counsel in the *Hoang To* action (who turned out to be more than happy

16   to oblige) before Plaintiffs could move for interim appointment in the *Feller* case or move to

17   dismiss the *Hoang To* action on first-filed grounds, for the transparent purpose of avoiding an

18   arm's-length negotiation with experienced plaintiffs' counsel intent on negotiating a good deal

19   for class members – which is what they had already come to expect from Plaintiffs' counsel in

20   the *Feller* case – and to prevent Plaintiffs from uncovering the depth of Defendants' wrongdoing

21   in the discovery that was due to be produced in the *Feller* action.  When the settlement agreement

22   signed by the *Hoang To* plaintiff and Defendants is eventually submitted for approval, Plaintiffs

23

24

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

1   and their counsel fully expect that its terms will be the same (or worse) than the terms of one of

2   Defendant's prior settlement offers that Plaintiffs in this case had previously rejected.

3   **III.    ARGUMENT**

4           Under the circumstances described above – which bear all the hallmarks of a reverse

5   auction – the Court should grant intervention by Plaintiffs and dismiss (or, alternatively, stay or

6   transfer) this second-filed action under the first-to-file rule doctrine to protect the interests of the

7   classes.

8           Rule 24 intervention is warranted by right and, alternatively, permissively, given that there

9   are hundreds of thousands of proposed class members in the *Feller* action who would suffer

10  significant, irrevocable prejudice if a collusive, reverse auction settlement agreement (that

11  purports to release all of their claims) were to be approved in the *Hoang To* action.  To avoid

12  further jeopardy to class members' rights, the *Hoang To* action should be dismissed pursuant to

13  the first-to-file doctrine, or, alternatively, stayed pending resolution of the *Feller* action or

14  transferred to the Southern District of Florida pursuant to 28 U.S.C. 1404(a).

15          This Court has previously seen, and put a stop to, attempts to sell class members' claims

16  at reverse auctions: "In short, if this case were to yield [], it would reward a case that appears to

17  be reverse auction. It would incentivize class-action defendants to pick their favorite class counsel

18  from among various cases; reach a pre-certification settlement that is good for the defendants,

19  good for class counsel, and potentially bad for the class; and then stipulate to remanding to state

20  court to escape the first-to-file rule." *Rahman v. Gate Gourmet, Inc.,* No. 3:20-CV-03047-WHO,

21  2021 WL 5973046, at *4 (N.D. Cal. Nov. 22, 2021) (Orrick, J.).  What the *Rahman* court

22  described is exactly what the parties to the instant matter are attempting. As it has done before,

23  this Court should refuse to let a collusive, reverse-auction-produced settlement stand as a

24

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

substitute for adversarial litigation and arm's-length negotiations between the parties. The Court should permit intervention and dismiss, stay, or transfer this second-filed action to protect the interests of class members and promote the interests of judicial economy and efficiency.

### A. Intervention is Warranted Either as a Matter of Right or With Permission

Intervention is plainly warranted here. Rule 24 allows intervention either by right or with the Court's permission. Fed. R. Civ. P. 24(a); Fed. R. Civ. P. 24(b). Under either standard, Plaintiffs in the first-filed *Feller* action are entitled to intervene in the second-filed *Hoang To* action.

> As a matter of right, a court *must* permit a nonparty to intervene when the non-party claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added). The Ninth Circuit has distilled four elements for mandatory intervention. A proposed intervenor must show that "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Courts *may* also permit anyone to intervene in an action who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In the Ninth Circuit, permissive intervention should be granted where the proposed intervenor "(1) shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *See id.* at 412. District courts interpret the rule broadly in favor of permissive intervention. *Forest Conservation*

1   *Council v. U.S. Forest Service,* 66 F.3d 1489, 1493 (9th Cir. 1995).

2        The Plaintiffs in the *Feller* action should be permitted to intervene in this case under either

3   standard. Defendants' counsel has stated that the class-wide settlement agreement executed on

4   October 23, 2024 between the parties to the second-filed *Hoang To* action would, if approved,

5   bind all members of the putative classes in the first-filed *Feller* action. Hedin Decl. ¶¶ 22-23.

6   Because the circumstances leading to this proposed settlement all point to a reverse-auction sale

7   of the classes' claims to the lowest bidder, as discussed above, Plaintiffs in the *Feller* action are

8   entitled to intervene for the purposes of moving to dismiss this action on first-to-file grounds and

9   to otherwise protect the interests of the putative classes they seek to represent in the *Feller* action.

10  *See e.g.*, *Widjaja v. YUMA Brands, Inc.*, No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040, at

11  *7 (E.D. Cal. Oct. 22, 2009) (finding because of the possibility of inconsistent rulings, denying

12  intervention "may impair or impede Intervenor–Plaintiffs' ability to protect that interest [in the

13  litigation]" and granting intervention as a matter of right for plaintiffs in first-filed action); *Manier

14  v. L'Oreal USA, Inc,* No. 2:16-CV-06886-ODW-KS, 2017 WL 59066, at *1–4 (C.D. Cal. Jan. 4,

15  2017) (granting intervention in favor of plaintiffs in a first-filed action); *Elpidio v. Union Pac.

16  R.R. Co.*, No. 15-CV-3071-PJH, 2015 WL 5559920, at *2 (N.D. Cal. Sept. 18, 2015) (same);

17  *Woodard v. Boeing Emps. Credit Union*, No. 2:23-CV-00033, 2023 WL 4847005, at *3–5 (W.D.

18  Wash. July 28, 2023) (same); *Krefting v. Kaye-Smith Enterprises Inc., No.* 2:23-CV-220, 2023

19  WL 4847148, at *4 (W.D. Wash. July 28, 2023) (same); *Edmonds v. Amazon.com*, Inc., No. C19-

20  1613JLR, 2020 WL 4207208, at *3 (W.D. Wash. July 22, 2020) (same).

21        This Court knows a reverse auction when it sees one.  In *Rahman,* a plaintiff before this

22  Court filed the first California Private Attorney General action against a defendant. 2021 WL

23  5973046 at *1. Discovery proceeded. *Id*. The defendant then negotiated a settlement in a second-

24
<hr>

                                  20
          TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
             TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
                           INCORPORATED MEMORANDUM OF LAW

filed case and swiftly moved to remand it to state court where it could avoid the federal first-filed rule. *Id.* at *2. This Court refused to go along, writing:

> Further, the parties' conduct in *Diaz* [the second-filed case] smacks of a "reverse auction" leading to a collusive settlement. Gate Gourmet removed *Diaz* to federal court in October 2020. Even though there is significant overlap in the claims (because both cases are proposed class actions), Gate Gourmet failed to put Rahman and me on notice that there was a related case. *See* Civ. L.R. 3-13(a) (mandating notice of such actions). If it had done so, there presumably would have been motions about the first-to-file rule or an earlier motion about MDL transfer. Instead, Gate Gourmet negotiated a pre-certification settlement with the plaintiffs' counsel in *Diaz* and swiftly stipulated to remand the case to state court once it did so. It only filed notices in this case and *Diaz* a month before that remand. *See* Dkt. No. 31. Even today, it has offered no principled reason for choosing to settle a later-filed case.

*Id.*

The *Hoang To* parties might as well have used the conduct in *Rahman* as a playbook. They filed no Notice of Pendency of Other Action or Proceeding (as required under Northern District of California Local Rule 3-13), swiftly agreed to a pre-certification settlement in the later-filed action without having conducted any discovery, engaged in no meaningful litigation, nor conducted any arm's-lengths settlement negotiations, at mediation or otherwise. The similarities between the cases are striking. This Court should employ the same strong skepticism towards the settlement agreement here as it did towards the one in *Rahman*.

This case has the additional element of Defendants' obstruction. As recounted above, after the parties' mediation, Defendants' counsel repeatedly refused to meet and confer with Plaintiffs' counsel – in order to stonewall Plaintiffs' efforts to obtain interim appointment in the *Feller* action and to intervene and dismiss the instant *Hoang To* action. Hedin Decl. ¶¶ 15-20. Plaintiffs tried more than six times to get Defendants to confer on a motion for interim appointment of class counsel, on a motion to intervene and dismiss this this action, on whether Defendants would move to dismiss this action under the first-to-file rule, and on deposition

21

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

1   scheduling and discovery. *Id*. Defendants ignored these efforts in order to buy time to arrange a

2   reverse auction, bottom-dollar settlement that Plaintiffs and their counsel in the *Feller* action were

3   unwilling to agree to. *Id*. And ultimately, Defendants' counsel only finally agreed to get on the

4   phone with Plaintiffs' counsel in the *Feller* action to meet and confer *after* the settlement

5   agreement had been executed between Defendants and the plaintiff in the *Hoang To* action. Even

6   then, Defendants' counsel refused disclose the terms of the settlement agreement, even though it

7   had already been signed and would be imminently filed on the public docket. *Id*. at ¶ 22.

8        Under the circumstances, the Court should permit the Plaintiffs in the *Feller* action to

9   intervene in this second-filed action to protect the interests of the putative classes from the

10  collusive settlement entered into between the parties to this action.[7]

11       **B.      The First-to-File Rule Requires Dismissal, or in the Alternative, a
                  Transfer or Stay, of the *Hoang To* Action**

12

13       Under the first-to-file rule, this Court must dismiss, stay, or transfer the *Hoang To* action

14  to the Southern District of Florida.

---

[7] It highly unlikely that the proposed settlement is even approvable given the circumstances under which it was obtained. Under Rule 1(d) of the Northern District of California's Procedural Guidance for Approval of Class Action Settlements, the parties must apprise the Court of whether "[a]ny other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval . . . ." *Id.* Moreover, under Rule 1(a), the *Hoang To* parties must explain why the proposed settlement's release, which apparently covers the claims of all members of the proposed classes in the *Feller* action, is so much broader than the claims alleged by the plaintiff in his First Amended Complaint in the *Hoang To* action. Applying these factors to the factual circumstances in question only underscores the underhanded nature of the way in which the proposed settlement in the *Hoang To* action was produced.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

### i. The First-to-File Rule Applies

The first-to-file rule applies in this scenario, and requires that the claims alleged in the second-filed *Hoang To* action be dismissed, stayed, or transferred in deference to the claims alleged in the first-filed *Feller* action.

Courts "consider three factors in determining whether the first-to-file rule applies: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1017 (N.D. Cal. 2020) (citing *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)). Each of these factors weighs in favor of dismissal, stay, or transfer of the *Hoang To* action on first-to-file grounds.

The first factor, chronology, obviously weighs against the *Hoang To* action proceeding. The Plaintiffs filed the *Feller* action in the Southern District of Florida on August 8, 2024. *Feller*, ECF No. 1. The *Hoang To* action was filed on August 12, 2024. *See* ECF No. 1, Ex. A. It was removed to federal court a month later, on September 12, 2024. *See* ECF No. 1. That was over one month after the *Feller* action was filed, and almost two weeks after Defendant's counsel contacted the plaintiff's counsel in the *Hoang To* action to discuss the *Feller* Action and ask that the later-filed *Hoang To* action be dismissed, which the plaintiff's counsel refused to do. *See* ECF No. 8. Since that time, the Plaintiffs have engaged in significant discovery in the *Feller* action, whereas discovery does not appear to have even commenced in the *Hoang To* action.

The second factor, the similarity of the parties and the proposed classes, also supports application of the first-to-file rule. In class actions, courts look to the similarity of the proposed classes, not the named plaintiffs. *See Pedro v. Millennium Prods., Inc.*, No. 15-CV-05253, 2016 WL 3029681, at *3 (N.D. Cal. May 27, 2016) (transferring a second-filed case under the rule and noting that "the majority of district courts in the Ninth Circuit that have applied the first-to-file

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

rule in the context of a class action have compared the putative classes rather than the named plaintiffs."). As discussed above, both actions are brought against Defendant DirectToU, LLC in its role as the operator of deepdiscount.com. The *Feller* action, however, includes an additional Defendant, Alliance Entertainment, LLC, which also operates numerous other websites where prerecorded video materials are sold, and alleges claims on behalf of classes comprised of all persons who make purchases of video products on all of those websites. Thus, the classes proposed and claims alleged in the *Feller* action completely overlap, and subsume, the proposed classes and the claims alleged in the *Hoang To* action.

Third, the similarity of the issues in the two cases supports application of the first-to-file rule because all of the issues in *Hoang To* are present in *Feller*. Both actions seek to redress VPPA violations arising from Defendants' disclosures of personally identifying and video-purchase information to Meta via the Meta Pixel. The underlying conduct giving rise to such disclosures via the Meta Pixel as alleged in the *Feller* action is far more expansive than conduct giving rise to those disclosures as alleged in the *Hoang To* action; whereas just a single website is at issue in *Hoang To*, the *Feller* action focuses on numerous of Defendants' websites. And notably, the claims class members in *Feller* also rest on a second, and even stronger theory of liability not alleged at all in the *Hoang To* action: Defendants' disclosures of all of its customers' personally identifying and purchase-related information to data appenders and other third party renters and exchangers of Defendants' customer files on the data-brokerage marketplace.

The first-to-file rule clearly applies in these circumstances. *See Kohn*, 787 F.3d at 1240 (noting that the issues "need not be identical, only substantially similar.").

### ii. The *Hoang To* Action Should be Dismissed, Stayed, or Transferred

Given that the first-to-file rule applies, the Court should dismiss, stay, or transfer the

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

1   *Hoang To* action in deference to the first-filed *Feller* action.

2        As courts widely recognize, the "first-to-file rule promotes judicial efficiency by allowing

3   a district court to transfer, stay, or dismiss a case when a complaint involving the same parties

4   and the same issues has already been filed in another district." *Alltrade, Inc. v. Uniweld Prod.,*

5   *Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Because each element of the first-to-file rule is satisfied

6   in this case, the *Hoang To* action should be dismissed to make way for the *Feller* action to

7   proceed. *See, e.g.*, *SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021

8   (N.D. Cal. 2020) (applying first-to-file rule); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d

9   93, 96 (9th Cir. 1982) (affirming district court's dismissal under first-to-file rule). This Court has

10  explained that the first-to-file rule applies under highly analogous circumstances, stating: "To

11  start, this case was filed first. Usually, considerations of efficiency, economy, and avoiding

12  duplicative litigation give favor to the first-filed case. . . . If *Diaz* [the second-filed case] had

13  remained pending in federal court, it would likely have been subject to the first-to-file rule and

14  stayed or dismissed in favor this case." *Rahman*, 2021 WL 5973046, at *3.

15       Alternatively, this Court should stay the *Hoang To* action pending disposition of the *Feller*

16  action, *see id.* at *2, or transfer it to the Southern District of Florida, which is where the defendant

17  in *Hoang To* resides, where both of the Defendants in *Feller* reside, and where Defendants'

18  records, their repositories of electronically stored information, and many of the relevant fact

19  witnesses appear to be primarily located.  *See Garcia v. Praxair, Inc.*, No. 3:18-CV-03887-WHO,

20  2018 WL 4471151, at *5 (N.D. Cal. Sept. 18, 2018) (transferring case under the first-to-file rule).

21

22

23

24

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

**CONCLUSION**

For the foregoing reasons, intervention should be granted and this second-filed action should be dismissed, stayed, or transferred pursuant to the first-to-file rule.

Dated: October 28, 2024

Respectfully submitted,

**HEDIN LLP**

By:    */s/ Frank S. Hedin*

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Plaintiffs and the putative Class in Feller et al. v. Alliance Entertainment, LLC, et al., Case No. 0:24-CV-61444-RAR (S.D. Fla. filed Aug. 8, 2024)*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on October 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS OR, IN THE ALTERNATIVE, TO STAY OR TRANSFER THIS ACTION PURSUANT TO THE FIRST-TO-FILE RULE AND INCORPORATED MEMORANDUM OF LAW is being served this day on all counsel of record identified on the attached Service List, via transmission of Notice of Electronic Filing generated by CM/ECF. Lastly, I certify that the foregoing document is being served this day by email on counsel for Defendants in the *Feller* Action.

/s/ Frank S. Hedin

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Plaintiffs and the putative Class in Feller et al. v. Alliance Entertainment, LLC, et al., Case No. 0:24-CV-61444-RAR (S.D. Fla. filed Aug. 8, 2024)*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

**<u>SERVICE LIST</u>**

Adrian John Barnes
HammondLaw P.C.
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(510) 316-9926
Fax: (310) 295-2385
Email: abarnes@hammondlawpc.com

Julian Ari Hammond
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(310) 807-1666
Email: JHammond@hammondlawpc.com

Polina Brandler
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(718) 414-7094
Email: pbrandler@hammondlawpc.com

Ari Nathan Cherniak
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(559) 917-4917
Email: acherniak@hammondlawpc.com

*Attorneys for Second-filed Plaintiff Jonathan Hoang To*

Teresa Carey Chow
Baker & Hostetler LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
(310) 820-8800
Fax: (310) 820-8859
Email: tchow@bakerlaw.com

*Attorney for Second-filed Defendant DirectToU, LLC*

Joel Christopher Griswold
Baker & Hostetler LLP
8248 Tibet Butler Dr.
Windermere, FL 34786
(407)649-4088

28
TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

1  Frank S. Hedin (SBN 291289)
   Hedin LLP
2  535 Mission Street, 14th Floor
   San Francisco, CA 94105
3  Telephone:      (305) 357-2107
   Facsimile:      (305) 200-8801
4  E-Mail:         fhedin@hedinllp.com
5
   *Counsel for Proposed Intervenors*
6
7              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
8
9  JONATHAN HOANG TO, individually and       Case No. 24-cv-06447-WHO
   on behalf of all others similarly situated,
10                                            **DECLARATION OF FRANK S.**
                                              **HEDIN IN SUPPORT OF PROPOSED**
11            Plaintiff,                      **INTERVENORS' TIME-SENSITIVE**
                                              **MOTION TO INTERVENE AND TO**
12     v.                                     **DISMISS OR, IN THE**
                                              **ALTERNATIVE, TO TRANSFER OR**
13  DIRECTTOU, LLC,                           **STAY THIS ACTION PURSUANT TO**
                                              **THE FIRST-TO-FILE RULE**
14            Defendant,
15                                            Date: November 6, 2024
       and,                                   Time: 2:00 PM
16                                            Judge: Hon. William H. Orrick
   DOUGLAS FELLER; JEFFRY HEISE;              Courtroom: 2
17  JOSEPH MULL, individually and on behalf of
   all others similarly situated,
18
19            Proposed
              Plaintiff-Intervenors.
20
21
22
23
24
25
26
27

───────────────────────────────────────
                DECLARATION OF FRANK S. HEDIN

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1.    I am the founding partner at the law firm Hedin LLP and a member in good standing of the Florida Bar and the State Bar of California, and I submit this declaration in support of Proposed Intervenors' Time-Sensitive Motion to Intervene and to Dismiss or, in the Alternative, to Transfer or Stay this Action Pursuant to the First-To-File Rule and Incorporated Memorandum of Law.

2.    From 2012 to 2013, I served as law clerk to the Honorable William Q. Hayes, U.S. District Judge for the Southern District of California. I then worked for four years at a law firm in Miami, Florida, where I represented plaintiffs and defendants in general commercial litigation and intellectual property matters.

3.    I co-founded Hedin LLP, previously known as Hedin Hall LLP, in 2018.

4.    My firm represents Douglas Feller, Jeffry Heise, and Joseph Mull, the Plaintiffs in the putative class action pending in the U.S. District Court for the Southern District of Florida titled *Feller, et. al. v. Alliance Entertainment, LLC, et. al.*, No. 0:24-cv-61444-RAR (S.D. Fla., filed Aug. 8, 2024) (hereinafter the "*Feller* Action"). A copy of the Complaint in the *Feller* Action is attached hereto as **Exhibit 1**.

5.    The *Feller* Action alleges that Defendants Alliance Entertainment, LLC and DirectToU, LLC d/b/a Collectors' Choice Music, Critics' Choice Video, Movies Unlimited, DeepDiscount, and WOW HD ("Defendants") violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et. seq.*, by disclosing the named plaintiffs' and their other customers' "Personally Identifying Information," ("PII"), 18 U.S.C. § 2710(a)(3), without first obtaining informed written consent. (Ex. 1, ¶¶ 1-10). The *Feller* Complaint sets forth two distinct

---

DECLARATION OF FRANK S. HEDIN

means by which the Defendants violated the VPPA: (1) Defendants' use of the Meta Pixel, a snippet of programming code embedded on several of Defendants' direct-to-consumer websites, to send their customers' prerecorded video purchases and personally identifiable information to Meta, and 2) by renting, selling, or otherwise disclosing their customers' Personally Identifying Information to data aggregators, data miners, data brokers, data appenders, and other third parties through the sale or rental of lists from its customer database, including through the website Nextmark.com. (Ex. 1, ¶¶ 66-84).   Thus, the *Feller* Action seeks to certify two classes:

> **(a)** The Data Brokerage Class: All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

> **(b)** The Meta Pixel Class: All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' websites while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

(Ex. 1, ¶ 85).

6.      My firm has devoted significant time developing, investigating, and commencing the *Feller* action against Defendant for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Beginning in 2019, my firm began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which included names, addresses, titles of videos purchased by, and various demographic and other personal information about each of the persons who made purchases on their websites, and by studying Defendants' practices of transmitting personally identifying information and video-purchase information to Facebook, now known as Meta, via the "Meta Pixel" technology they had installed on their websites.

7.      Specifically, prior to filing the *Feller* action, my firm: (i) thoroughly investigated and reviewed current and historical versions of Defendants' data cards publicly accessible on

Nextmark.com and other data-brokerage websites, over a period of several years dating back to 2019; (ii) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (iii) consulted with experts to investigate Defendants' numerous websites and their use of tracking technologies, including the Meta Pixel technology, on those website, including parsing through Defendants' websites' source code; (iv) researched whether Defendants' use of such tracking pixels violated the VPPA; and (v) communicated with and reviewed materials provided by numerous potential clients who interacted with and made purchases on Defendants' websites, in order to determine whether they were capable of adequately representing the interests of the proposed classes.

8. After performing this time-consuming pre-filing work, my firm was retained in July 2024 by Douglas Feller, Jeffry Heise, and Joseph Mull to prosecute claims against Defendants for violation of the VPPA on behalf of themselves and others similarly situated, and shortly thereafter prepared and filed the Class Action Complaint on behalf of the proposed classes.

9. Since the very outset, my firm has vigorously litigated the *Feller* action on behalf of Plaintiffs and the putative classes, including by serving comprehensive written discovery requests to Defendants, serving notices of deposition to Defendants' corporate representatives, serving third-party subpoenas for documents and deposition testimony to relevant third parties, consulting with potential experts, and preparing motions and other filings. The parties' Rule 26 conference occurred on August 30, 2024, the Rule 26 conference report was field on September 9, 2024, and the Court entered its first Order Setting Jury Trial on September 10, 2024. On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendant, seeking razor-focused categories of information,

DECLARATION OF FRANK S. HEDIN

documents, communications, and electronically-stored information concerning each of the factual and legal issues relevant to their claim for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23. On September 13, 2024, Plaintiffs' counsel served notices of deposition of Defendants' corporate representatives for November 15, 2024.

10. On September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore early class-wide resolution of the *Feller* action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago), formerly a district judge in the Northern District of Illinois, on the condition (negotiated by Hedin LLP) that Defendants would agree to provide various information and materials to them in advance of the mediation that were necessary for us to intelligently negotiate on behalf of members of the putative classes. This information and material included the precise sizes of the two classes, the form and contents of the personally identifying and video purchase- related information pertaining to Plaintiffs and class members that Defendants transmitted to the various third-party recipients of the information during the applicable statutory period, and all applicable or potentially applicable policies of insurance.

11. Ahead of the parties' mediation scheduled for October 10 before Judge Holderman, my firm prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on various legal and factual issues relevant to the merits of the claims and defenses and issues of class certification. My firm and Defendants' counsel also participated in a lengthy pre-mediation conference with Judge Holderman. During that conference, Defendants' counsel informed Plaintiffs' counsel that no settlement discussions had occurred between Defendants and the plaintiff in the instant second-filed *Hoang To* action.

DECLARATION OF FRANK S. HEDIN

12.     On October 10, 2024, following our receipt of information and materials from Defendants bearing, *inter alia*, on issues of class size and insurance, the parties participated in a full day of mediation before Judge Holderman.  Although we mediated for nearly a full day, we were unable to reach a proposed class-wide settlement at the mediation and Judge Holderman declared an impasse.

13.     For over more than a week following the mediation, the parties, with the continued assistance of Judge Holderman, continued to engage in what my colleagues and I (and Judge Holderman) believed at the time to be good-faith settlement negotiations.  Specifically, on October 16, 2024, six days after the parties' mediation, I exchanged e-mail correspondence and then spoke by telephone with Judge Holderman, during which I asked Judge Holderman to convey a settlement demand to Defendants' counsel, which I believed would meaningfully advance the parties' progress towards a proposed resolution on behalf of the classes.  Later that same day, after presenting Plaintiffs' demand to Defendants' counsel by phone, Judge Holderman telephoned me to convey a counter settlement offer that Defendants had authorized him to convey.  Over the next two days, I spoke by phone and exchanged e-mail correspondence with Judge Holderman on multiple occasions concerning Defendants' latest settlement offer, and on October 18, 2024, I conveyed another counter settlement demand to Judge Holderman and asked that he present it to the Defendants' counsel. Later that same day, Judge Holderman sent me an e-mail confirming that he had presented Plaintiffs' latest demand to Defendants' counsel by phone.  I followed up with Judge Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had received any response from Defendants' counsel, and on both occasions Judge Holderman advised me that he had telephoned Defendants' counsel but had received no answer, that he had

DECLARATION OF FRANK S. HEDIN

left voicemails for them but had still not heard back from them, and that he would try to contact Defendants' counsel yet again on October 24, 2024.

14.     At the same time as these settlement discussions overseen by Judge Holderman were occurring, my colleagues and I also continued to push the *Feller* action forward on multiple fronts. Immediately following the conclusion of the mediation on October 10, 2024, Arun G. Ravindran of my firm confirmed with Defendant that the agreed-upon discovery stay (which had been in effect since the date the parties agreed to mediate) had ended. On October 14, 2024, Plaintiffs' counsel served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta.  On October 16, 2024, Meta served its initial responses and objections to the subpoena and, later that same day, I initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. On October 19, 2024, I conferred further with Meta's counsel concerning the timing of its deposition. On October 17, 2024, I served a third-party subpoena for documents to Data-Axle Inc. (a data company that, as our investigation had revealed, served as one of Defendants' list managers and/or brokers during the relevant statutory period) on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024.  On October 25, 2024, Mr. Ravindran exchanged correspondence with counsel for Data Axle regarding Data Axle's response to the subpoena and production of documents.

15.     Additionally, over the course of a 10-day period beginning on October 14, 2024, continuing through October 24, 2024, my colleagues and I repeatedly attempted to schedule a meet and confer conference with Defendants' counsel concerning, inter alia: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised

DECLARATION OF FRANK S. HEDIN

Defendants' counsel it intended to file; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in that case and whether it would seek to dismiss, stay, or transfer the case on the grounds that it had previously articulated (namely, that it was duplicative of the earlier-filed *Feller* case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in that case, did not intend to seek such relief in response to the plaintiff's complaint.

16. First, on October 14, 2024, Mr. Ravindran of my firm **made the first of several requests to confer** on Defendants' position regarding the *Hoang To* case. **Exhibit 3** hereto, at 1. Having received no response, on October 15, 2024, Mr. Ravindran **again requested** to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions with respect to the duplicative *Hoang-To* matter and on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel in the *Feller* action. **Exhibit 2** hereto, at 5. Plaintiffs' counsel followed up that same day seeking to meet and confer on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel. **Exhibit 4** hereto, at 1. Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by asking for "a description of the substance" of the conference being requested. Ex. 2 at 4–5. Plaintiffs' counsel immediately responded, stating:

1. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.

2. Defendants' intent with respect to the *Hoang* matter. Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL. Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in

---

DECLARATION OF FRANK S. HEDIN

the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

Ex. 2 at 4.

17.     On October 16, 2024, Defendants' counsel responded to our e-mail correspondence by stating that she would confer with her client.  Ex. 2 at 3.  Later that day, Plaintiffs' counsel followed up with Defendants' counsel once more – again, simply to propose a date to have a meet and confer conference on these issues.  **Exhibit 6** hereto, at 1.  Again, Defendants' counsel responded that she would reply with her clients' position at some unspecified future date.

18.     On October 21, 2024, having still not received Defendants' positions on these issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants' counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion to intervene in the *Hoang To* matter and move to dismiss that case under the first filed doctrine. Ex. 2 at 3.

19.     Defendants' counsel did not respond to that communication and, later that day, Plaintiffs' counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial disclosures, and **again sought to confer telephonically on October 22, 2024**.  **Exhibit 5** hereto, at 2.  Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they would need to discuss with their clients.

20.     On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email.  Ex. 5 at 1-2.  Plaintiffs' counsel also left voicemails to each of Defendants' counsel of record, all of which went unreturned.

DECLARATION OF FRANK S. HEDIN

21.     The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you." Ex. 5 at 1. I then sent an e-mail to Defendants' counsel, stating as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

Ex. 2 at 2.

22.     In response to my e-mail – which, again, came after 10 days of Defendants' counsel ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each of these important issues, and after five days of also ignoring Judge Holderman's repeated efforts to communicate with them as well (as recounted above) – Defendants' counsel finally agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon.  During this October 24, 2024, phone call, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the counsel for the *Hoang To* plaintiff the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the *Feller* action (even though only the proposed classes in the *Hoang To* action are only a small subset of the proposed classes here), that those releases will cover both of the Defendants in the *Feller* action (even though only one of the Defendants here is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about Monday, October 28, 2024, and that Defendants would be filing a motion to stay the *Feller* action pending resolution of the motion for preliminary approval in the *Hoang To* action.  At no time on this call

DECLARATION OF FRANK S. HEDIN

or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay the *Feller* action. And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the class-wide settlement agreement that had been signed between Defendants and the *Hoang To* plaintiff and his counsel – information obviously necessary for Plaintiffs and their counsel to assess whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay the *Feller* action or not – Defendants' counsel flatly refused without explanation. We also indicated that we would nonetheless be filing the a motion for appointment of interim counsel in the *Feller* action, as well as a motion to intervene and to stay or dismiss the *Hoang To* action on first-filed doctrine grounds, and Defendants' counsel stated that Defendants would oppose both motions. Later in the day following this call with Defendants' counsel, I spoke with Judge Holderman by phone, who indicated he had just finally gotten ahold of Defendants' counsel and they had just then advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel.

23. Almost immediately after our call with Defendants' counsel ended on October 24, 2024, Defendants filed a motion to stay the *Feller* action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiffs would be filing in the instant *Hoang To* action. The motion to stay states, in pertinent part, that the parties in the *Hoang To* action signed a class-wide settlement agreement "on October 23, 2024" (ECF No. 36 at 2), that the "[t]he settlement reached in the *Hoang To* action would, if approved by the Court, cover all claims asserted in this [*Feller*] case" (*id.* at 1), that "the *Hoang To* settlement is expected the release the claims of all putative class members in this [*Feller*] case" (*id.* at 4), and that "a

DECLARATION OF FRANK S. HEDIN

motion for preliminary approval of the proposed settlement will be filed early next week" in the *Hoang To* case (*id.* at 2).

24.     Later in the day on October 24, 2024, I telephoned (but received no answer) and then emailed all counsel of record for the plaintiff in the *Hoang To* action in an effort to meet and confer on their position on this motion and the motion for interim appointment in the *Feller action*. *See* **Exhibit 7** hereto. Counsel of record for the plaintiff in the *Hoang To* action, Adrian Barnes, responded that he was not familiar enough with the litigation to provide his client's position on these issues, and that the other counsel of record for his client were unavailable until Monday October 28, 2024, because of the observation of a religious holiday. *See id.*

25.     The reverse auction that Defendants orchestrated of the classes' claims, and the willingness with which the plaintiff's counsel in *Hoang To* appears to have gone along with it, as described above, is the most underhanded conduct that I have experienced in my 10-year career as a lawyer practicing in this area of law.

26.     In addition to the work my firm has already performed in the *Feller* action, as noted above, a significant amount of litigation, including discovery, ***must*** occur prior to class certification and trial in the *Feller* case. Discovery will be complex, nuanced, and require substantial specialized knowledge and experience to perform effectively and efficiently. My firm's thorough investigation into the claims in the *Feller* case, as well as its experience prosecuting numerous other similar data-privacy matters, will enable it to effectively build and prosecute the *Feller* case on behalf of the classes, including in discovery, motion practice, at class certification, and through trial and any appeals if necessary.

27.     Notably, a significant amount of the discovery critical to the classes' claims in the *Feller* action is in the possession of third parties, including Meta and Data Axle, both of which

DECLARATION OF FRANK S. HEDIN

my firm recently subpoenaed. It is critically important that these third parties, and any others with materials relevant to litigation in both cases, continue to preserve all such materials in their possession, custody, or control, and that Defendants' filing of a motion to stay in the *Feller* action and the *Hoang To* plaintiff's filing of motions in support of approval of his proposed class-wide settlement here does not result in these third parties disregarding their preservation obligations with respect to such materials.

      I declare, under penalty of perjury, pursuant to the laws of the United States of America that the foregoing is true and correct. Executed this 28th day of October 2024, in Miami, Florida.


                                 */s/ Frank S. Hedin*
                                 Frank S. Hedin

DECLARATION OF FRANK S. HEDIN

Email: jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo
Baker & Hostetler LLP
One N. Wacker Drive, Suite 3700
Chicago, IL 60606
(312) 416-8185
Email: bdelgobbo@bakerlaw.com

*Attorneys for First-filed Defendant Alliance Entertainment, LLC, et al.*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW