UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| DOUGLAS FELLER; JEFFRY HEISE; and JOSEPH MULL, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br>   v.<br><br>ALLIANCE ENTERTAINMENT, LLC; AND DIRECTTOU, LLC D/B/A COLLECTORS' CHOICE MUSIC, CRITICS' CHOICE VIDEO, MOVIES UNLIMITED, DEEPDISCOUNT, AND WOW HD,<br><br>                Defendants. | Case No. 0:24-cv-61444<br><br>Hon. Rodolfo A. Ruiz II |

**DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**

    I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. §1746 and based on my own personal knowledge, that the following statements are true:

    1.    I am the founding partner at the law firm Hedin LLP and a member in good standing of the Florida Bar and the State Bar of California, and I submit this declaration in support of Plaintiffs' Opposition to Defendants' Expedited Motion to Stay Pending Preliminary Approval. ECF No. 36.

    2.    My firm has devoted significant time developing, investigating, and commencing the instant action against Defendant for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.  Beginning in 2019, my firm began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which included names, addresses, titles of videos purchased by, and various demographic and other personal information about each of the persons who made purchases on their websites, and by studying Defendants' practices of

1

transmitting personally identifying information and video-purchase information to Facebook, now known as Meta, via the "Meta Pixel" technology they had installed on their websites.

3. Specifically, prior to filing this action, my firm: (i) thoroughly investigated and reviewed current and historical versions of Defendants' data cards publicly accessible on Nextmark.com and other data-brokerage websites, over a period of several years dating back to 2019; (ii) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (iii) consulted with experts to investigate Defendants' numerous websites and their use of tracking technologies, including the Meta Pixel technology, on those websites, which included parsing through Defendants' websites' source code; (iv) researched whether Defendants' use of such tracking pixels violated the VPPA; and (v) communicated with and reviewed materials provided by numerous potential clients who interacted with and made purchases on Defendants' websites, in order to determine whether they were capable of adequately representing the interests of the proposed classes.

4. After performing this time-consuming pre-filing work, my firm was retained in July 2024 by Douglas Feller, Jeffry Heise, and Joseph Mull to prosecute claims against Defendants for violation of the VPPA on behalf of themselves and others similarly situated, and shortly thereafter prepared and filed the Class Action Complaint on behalf of the proposed classes.

5. Since the very outset, my firm has vigorously litigated this action on behalf of Plaintiffs and the putative classes, including by serving comprehensive written discovery requests to Defendants, serving notices of deposition to Defendants' corporate representatives, serving third-party subpoenas for documents and deposition testimony to relevant third parties,

consulting with potential experts, and preparing motions and other filings. The parties' Rule 26 conference occurred on August 30, 2024, the Rule 26 conference report was field on September 9, 2024, and the Court entered its first Order Setting Jury Trial on September 10, 2024. On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendant, seeking razor-focused categories of information, documents, communications, and electronically-stored information concerning each of the factual and legal issues relevant to their claim for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23. On September 13, 2024, Plaintiffs' counsel served notices of deposition of Defendants' corporate representatives for November 15, 2024.

6. On September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore early class-wide resolution of this action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago), formerly a district judge in the Northern District of Illinois, on the condition (negotiated by Hedin LLP) that Defendants would agree to provide various information and materials to them in advance of the mediation that were necessary for us to intelligently negotiate on behalf of members of the putative classes. This information and material included the precise sizes of the two classes, the form and contents of the personally identifying and video purchase-related information pertaining to Plaintiffs and class members that Defendants transmitted to the various third-party recipients of the information during the applicable statutory period, and all applicable or potentially applicable policies of insurance.

7. Ahead of the parties' mediation scheduled for October 10 before Judge Holderman, my firm prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on various legal and factual

3

issues relevant to the merits of the claims and defenses and issues of class certification. My firm and Defendants' counsel also participated in a lengthy pre-mediation conference with Judge Holderman. During that conference, Defendants' counsel informed Plaintiffs' counsel that no settlement discussions had occurred between Defendants and the plaintiff in the second-filed *Hoang To* action pending in the Northern District of California.

8. On October 10, 2024, following our receipt of information and materials from Defendants bearing, *inter alia*, on issues of class size and insurance, the parties participated in a full day of mediation before Judge Holderman. Although we mediated for nearly a full day, we were unable to reach a proposed class-wide settlement at the mediation and Judge Holderman declared an impasse.

9. For over more than a week following the mediation, the parties, with the assistance of Judge Holderman, continued to engage in what my colleagues and I (and Judge Holderman) believed at the time to be good-faith settlement negotiations. Specifically, on October 16, 2024, six days after the parties' mediation, I exchanged e-mail correspondence and then spoke by telephone with Judge Holderman, during which I asked Judge Holderman to convey a settlement demand to Defendants' counsel, which I believed would meaningfully advance the parties' progress towards a proposed resolution on behalf of the classes. Later that same day, after presenting Plaintiffs' demand to Defendants' counsel by phone, Judge Holderman telephoned me to convey a counter settlement offer that Defendants had authorized him to convey. Over the next two days, I spoke by phone and exchanged e-mail correspondence with Judge Holderman on multiple occasions concerning Defendants' latest settlement offer, and on October 18, 2024, I conveyed another counter settlement demand to Judge Holderman and asked that he present it to the Defendants' counsel. Later that same day, Judge Holderman sent me an e-mail confirming

4

that he had presented Plaintiffs' latest demand to Defendants' counsel by phone. I followed up with Judge Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had received any response from Defendants' counsel, and on both occasions Judge Holderman advised me that he had telephoned Defendants' counsel but had received no answer, that he had left voicemails for them but had still not heard back from them, and that he would try to contact Defendants' counsel yet again on October 24, 2024.

10. At the same time as these settlement discussions overseen by Judge Holderman were occurring, my colleagues and I also continued to push this case forward on multiple fronts. Immediately following the conclusion of the mediation on October 10, 2024, Arun G. Ravindran of my firm confirmed with Defendant that the agreed-upon discovery stay (which had been in effect since the date the parties agreed to mediate) had ended. On October 14, 2024, Mr. Ravindran served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. On October 16, 2024, Meta served its initial responses and objections to the subpoena and, later that same day, I initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. On October 19, 2024, I conferred further with Meta's counsel concerning the timing of its deposition in this matter. On October 17, 2024, I served a third-party subpoena for documents to Data-Axle Inc. (a data company that, as our investigation had revealed, served as one of Defendant's list managers and/or brokers during the relevant statutory period) on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. On October 25, 2024, Mr. Ravindran exchanged correspondence with counsel for Data-Axle regarding Data-Axle's response to the subpoena and production of

documents. By correspondence on October 28, 2024, counsel for Data-Axle advised they would serve objections to the subpoena.

11. Additionally, over the course of a 10-day period beginning on October 14, 2024, continuing through October 24, 2024, my colleagues and I repeatedly attempted to schedule a meet and confer conference with Defendants' counsel concerning, inter alia: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised Defendants' counsel it intended to file; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in that case and whether it would seek to dismiss, stay, or transfer the case on the grounds that it had previously articulated (namely, that it was duplicative of this earlier-filed case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in that case, did not intend to seek such relief in response to the plaintiff's complaint.

12   First, on October 14, 2024, Mr. Ravindran of my firm **made the first of several requests to confer** on Defendants' position regarding the *Hoang To* case. **Exhibit 1** hereto, at 7; **Exhibit 2** hereto, at 1. Having received no response, on October 14, 2024, Mr. Ravindran again requested to confer on the *Hoang To* case with Defendants' counsel. Still having received no response, on October 15, 2024, Mr. Ravindran **again requested** to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions with respect to the duplicative *Hoang-To* matter and on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel in this case. Ex. 1 at 4-5. Plaintiffs' counsel followed up that same day seeking to meet and confer on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel. **Exhibit 3**

hereto, at 1. Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by asking for "a description of the substance" of the conference being requested. Ex. 1 at 4–5. Plaintiffs' counsel immediately responded, stating:

1. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.

2. Defendants' intent with respect to the *Hoang* matter. Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL. Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

Ex. 1 at 4.

13. On October 16, 2024, Defendants' counsel responded to our e-mail correspondence by stating that she would confer with her clients. Ex. 1 at 3. Later that day, Plaintiffs' counsel followed up with Defendants' counsel once more – again, simply to propose a date to have a meet and confer conference on these issues. **Exhibit 5** hereto, at 1. Again, Defendants' counsel responded that she would reply with her clients' position at some unspecified future date.

14. On October 21, 2024, having still not received Defendants' positions on these issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants' counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion to intervene in the *Hoang To* matter and move to dismiss that case under the first filed doctrine. Ex. 1 at 3.

15. Defendants' counsel did not respond to that communication and, later that day, Plaintiffs' counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial disclosures, and **again sought to confer telephonically on October 22, 2024**. **Exhibit 4**

7

hereto, at 2.  Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they would need to discuss with their clients.

16. On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email.  Ex. 3 at 1-2.  Plaintiffs' counsel also left voicemails to each of Defendants' counsel of record, all of which went unreturned.

17 The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you." Ex. 3 at 1. I then sent an e-mail to Defendants' counsel, stating as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

Ex. 1 at 2.

18. In response to my e-mail – which, again, came after 10 days of Defendants' counsel ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each of these important issues, and after five days of also ignoring Judge Holderman's repeated efforts to communicate with them as well (as recounted above) – Defendants' counsel finally agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon.  During this October 24, 2024, phone call, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the counsel for the *Hoang To* plaintiff the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the instant action (even though the proposed classes in the *Hoang To* action are only a small subset of the proposed

8

classes here), that those releases will cover both of the Defendants in this action (even though only one of the Defendants here is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about Monday, October 28, 2024, and that Defendants would be filing a motion to stay the instant action pending resolution of the motion for preliminary approval in the *Hoang To* action. At no time on the call or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay this action. And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the class-wide settlement agreement that had been signed between Defendants and the *Hoang To* plaintiff and his counsel – information obviously necessary for Plaintiffs and their counsel to assess whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay this matter or not – Defendants' counsel flatly refused without explanation. Plaintiffs' counsel also indicated that they would nonetheless be filing a motion for appointment of interim counsel as well as a motion to intervene and to stay or dismiss the *Hoang To* action on first-filed doctrine grounds, and Defendants' counsel stated that Defendants would oppose both motions. Later in the day following this call with Defendants' counsel, I spoke with Judge Holderman by phone, who indicated he had just finally gotten ahold of Defendants' counsel, and they had just then advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel.

19.     Almost immediately after our call with Defendants' counsel ended on October 24, 2024, Defendants filed the instant motion to stay this action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiff would be filing in the *Hoang To* action pending in the Northern District of California.

9

20. Later in the day on October 24, 2024, I telephoned (but received no answer) and then emailed all counsel of record for the plaintiff in the *Hoang To* action in an effort to meet and confer on their position on this motion. *See* **Exhibit 6** hereto. Counsel of record for the plaintiff in the *Hoang To* action, Adrian Barnes, responded that he was not familiar enough with the litigation to provide his client's position on these issues, and that the other counsel of record for his client were unavailable until Monday October 28, 2024, because of the observation of a religious holiday. *See id.*

21. The reverse auction that Defendants and their counsel have transparently orchestrated of the classes' claims in this litigation, and the willingness with which the plaintiff and his counsel in the *Hoang To* action appear to have gone along with it, as described above, is easily the most underhanded conduct that Plaintiffs' counsel has witnessed in his 10-year career as a lawyer practicing in this area of law.

22. Notably, a significant amount of the discovery critical to the classes' claims in this case is in the possession of third parties, including Meta and Data-Axle, both of which my firm recently subpoenaed. It is critically important that these third parties, and any others with materials relevant to this litigation, continue to preserve all such materials in their possession, custody, or control, and that Defendants' filing of a motion to stay this action and the *Hoang To* plaintiff's filing of motions in support of approval of his proposed class-wide settlement in the Northern District of California does not result in these third parties disregarding their preservation obligations with respect to such materials.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct. Executed this 28th day of October 2024, in Miami, Florida.

                                                  */s/ Frank S. Hedin*
                                                  Frank S. Hedin