# EXHIBIT B

1  Frank S. Hedin (SBN 291289)
   Hedin LLP
2  535 Mission Street, 14th Floor
   San Francisco, CA 94105
3  Telephone:    (305) 357-2107
   Facsimile:    (305) 200-8801
4  E-Mail:       fhedin@hedinllp.com

5  *Counsel for Proposed Intervenors*

6           **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
7

8  JONATHAN HOANG TO, individually and      Case No. 24-cv-06447-WHO
   on behalf of all others similarly situated,

9                  Plaintiff,               **TIME-SENSITIVE MOTION TO**
                                            **INTERVENE AND TO DISMISS, OR**
       v.                                   **ALTERNATIVELY TO TRANSFER**
10                                          **OR STAY, PURSUANT TO THE**
   DIRECTTOU, LLC,                          **FIRST-TO-FILE RULE, AND**
11                                          **INCORPORATED MEMORANDUM**
                  Defendant,                **OF LAW**
12
       and,                                 **CLASS ACTION**
13
   DOUGLAS FELLER; JEFFRY HEISE;            Date: November 6, 2024
14 JOSEPH MULL, individually and on behalf of  Time: 2:00 PM
   all others similarly situated,           Judge: Hon. William H. Orrick
15                                          Courtroom: 2
                  Proposed
16                Plaintiff-Intervenors.

17

18

19

20

21

22

23

24

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................3

    A.  Plaintiffs Investigate, File, and Zealously Prosecute the *Feller* Action ...............3

    B.  Plaintiff Files the Secondary, Duplicative *Hoang To* Action ...............................8

    C.  Defendants Obstruct Plaintiffs from Seeking Appointment as Intern Class Counsel, From Seeking Intervention into and Dismissal of This Action, and From Engaging In Discovery ...........................................................12

    D.  Plaintiffs Learn of the Reverse Auction Collusively Engineered in the *Hoang To* Action...............................................................................................15

III. ARGUMENT .......................................................................................................18

    A.  Intervention is Warranted Either as a Matter of Right or With Permission...............................................................................................................19

    B.  The First-to-File Rule Requires Dismissal, or in the Alternative, a Transfer or Stay of the *Hoang To* Action ..........................................................22

IV. CONCLUSION....................................................................................................25

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Ambrose v. Walker*,
  No. 08-CV-0533, 2011 WL 2941299 (S.D. Ill. July 21, 2011) ............................... 10

*Barapind v. Reno*,
  225 F.3d 1100 (9th Cir. 2000). ................................................................................25

*Belmonte v. Creative Properties, Inc.*,
  No. 19-CV-61438, 2019 WL 5063832 (S.D. Fla. Oct. 8, 2019).............................. 10

*Diaz v. Gate Gourmet, Inc. et al*,
  No. 2:20-CV-09454 (C.D. Cal.)....................................................................... 18, 20

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ..................................................................................19

*Edmonds v. Amazon.com*, Inc.,
  No. 19-CV-1613, 2020 WL 4207208 (W.D. Wash. July 22, 2020) ........................ 20

*Elpidio v. Union Pac. R.R. Co.*,
  No. 15-CV-3071, 2015 WL 5559920 (N.D. Cal. Sept. 18, 2015) ........................... 20

*Forest Conservation Council v. U.S. Forest Service*,
  66 F.3d 1489 (9th Cir.1995). ................................................................................. 19

*Garcia v. Praxair, Inc.*,
  No. 3:18-CV-03887, 2018 WL 4471151 (N.D. Cal. Sept. 18, 2018).......................25

*J & J Sports Prods., Inc. v. Bou*,
  No. 15-CV-30004, 2015 WL 8022009 (D. Mass. Oct. 1, 2015) ........................... 10

*J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*,
  No. 15-CV-30004, 2015 WL 8082433 (D. Mass. Dec. 7, 2015)............................. 10

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
  787 F.3d 1237 (9th Cir. 2015) ......................................................................... 23, 24

*Krefting v. Kaye-Smith Enterprises Inc.*,
  No. 2:23-CV-220, 2023 WL 4847148 (W.D. Wash. July 28, 2023)....................... 20

*Manier v. L'Oreal USA, Inc*,
  No. 2:16-CV-06886, 2017 WL 59066 (C.D. Cal. Jan. 4, 2017).............................. 20

*Martin v. Meredith Corp.*,

---

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

657 F. Supp. 3d 277 (S.D.N.Y. 2023) ................................................... 11

*Molander v. Google LLC*,
   473 F. Supp. 3d 1013 (N.D. Cal. 2020) ...............................................23

*Pedro v. Millennium Prods., Inc.*,
   No. 15-CV-05253, 2016 WL 3029681 (N.D. Cal. May 27, 2016) .........................23

*Rahman v. Gate Gourmet, Inc.*,
   No. 3:20-CV-03047, 2021 WL 5973046 (N.D. Cal. Nov. 22, 2021) ................ 18, 25

*SMIC, Americas v. Innovative Foundry Techs. LLC*,
   473 F. Supp. 3d 1021 (N.D. Cal. 2020) ............................................... 24

*Syntex (U.S.A.), Inc. v. Interpharm, Inc.*,
   No. 92-CV-03, 1993 WL 643372 (N.D. Ga. Mar. 19, 1993) .......................... 10

*United States v. EME Homer City Generation L.P.*,
   727 F.3d 274 (3d Cir. 2013) ...................................................... 11

*United States v. EME Homer City Generation L.P.*,
   823 F. Supp. 2d 274 (W.D. Pa. 2011) .............................................. 11

*Widjaja v. YUMA Brands, Inc.*,
   No. 09-CV-1074, 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009) ...................... 19

*Woodard v. Boeing Emps. Credit Union*,
   No. 2:23-CV-00033, 2023 WL 4847005 (W.D. Wash. July 28, 2023) ................. 20

**STATUTES**

18 U.S.C. § 2710 .................................................................*passim*

28 U.S.C. § 1391 ................................................................. 25

28 U.S.C. 1404 .................................................................. 18

California Business and Professions Code § 17200 ............................ 9, 11

California Civil Code § 1799.3 .............................................. 9, 10, 11

California Civil Code § 340 ..................................................... 9

Class Action Fairness Act, Public Law 109-2, 119 Stat. 4 (2005) ................. 8

Clean Water Act, 33 U.S.C. §1251 et seq. ....................................... 11

**RULES**

Federal Rule of Civil Procedure 24 ..................................... 1, 17, 18, 19

Federal Rule of Civil Procedure 26 .............................................. 4

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

N.D. Cal. Local Rule 3-13 ................................................................................. 8, 20, 21

Rule 1 Northern District of California's Procedural Guidance for Approval of Class Action
    Settlements Rule 1 ............................................................................. 21, 22

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

Proposed intervenors Douglas Feller, Jeffry Heise, and Joseph Mull, the plaintiffs in the action *Feller et al. v. Alliance Entertainment, LLC, et al.*, Case No. 0:24-CV-61444-RAR (S.D. Fla., filed Aug. 8, 2024)[1] (hereinafter, "Plaintiffs"), respectfully submit this time-sensitive motion pursuant to Federal Rule of Civil Procedure 24 to intervene in and to dismiss, or alternatively to transfer or stay, this action pursuant to the first-to-file rule.

## I.    INTRODUCTION

Intervention by Plaintiffs in this case is necessary to protect the interests of the putative classes.  Following Plaintiffs' filing of the *Feller* case, a putative class action for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710—and the product of years of investigatory work by their counsel—Plaintiffs and their counsel expended considerable time and resources litigating the case and exploring settlement with Defendants on behalf of the proposed classes.  A mediation was held on October 10, 2024 before a well-respected JAMS mediator (and former federal district court judge) but the parties were unable to reach a settlement.

Approximately one week ago, Defendants decided that they were unwilling to settle the classes' claims on the fair, reasonable, and adequate terms set forth in Plaintiffs' settlement demands in the *Feller* action (the latest of which was made on October 18, 2024), and they instead orchestrated a reverse-auction sale of the classes' claims to the plaintiff and his counsel in the instant matter – a duplicative, copy-cat case brought on behalf of putative classes defined far more narrowly than the classes proposed in the *Feller* action, and which alleges claims against only one of the two defendants named in the *Feller* action.  Plaintiffs' counsel first learned of the reverse auction on a call with Defendants' counsel on October 24, 2024 – two weeks after the

---

[1] A copy of the complaint in the *Feller* action is attached hereto as **Exhibit A**.

1
TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

mediation between the parties in the first-filed *Feller* action, a week after Defendants had made their most recent post-mediation settlement offer to Plaintiffs' counsel, and just as Plaintiffs were on the verge of moving for interim appointment of class counsel in the *Feller* action and filing the instant motion to intervene and to dismiss this action on first-to-file grounds. On that call, Defendants' counsel advised Plaintiffs' counsel that the parties to this second-filed matter had just signed (on October 23, a day earlier) a class-wide settlement agreement that purports to release the claims of all members of the far-more-expansive classes in the *Feller* case.

The plaintiff in the instant matter case has conducted no discovery, engaged in no meaningful litigation, and does not appear to have participated in a mediation or engaged in any other arm's-length settlement negotiations with the Defendants. Rather, based on how quickly the reverse auction transpired, it appears the plaintiff and his counsel in this case simply signed on the dotted lines of whatever settlement agreement was presented to them.

Under the circumstances – which bear all the hallmarks of a collusive, reverse auction – the Court should grant this motion to intervene and dismiss, stay, or transfer this action to protect the interests of class members in the *Feller* action.[2]

---

[2] On October 27, 2024, Plaintiffs filed a motion in the *Feller* Action for appointment of their counsel as interim class counsel. A copy of that motion and the supporting papers are attached hereto as **Composite Exhibit B**.

## II.     BACKGROUND[3]

### A.     Plaintiffs Investigate, File, and Zealously Prosecute the *Feller* Action

In 2019, Plaintiffs' counsel began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which include names, addresses, titles of videos purchased by, and various demographic and other personal information about each of their customers who made purchases on their websites. *See* Declaration of Frank S. Hedin (the "Hedin Declaration" or "Hedin Decl."), ¶ 6. Part of this investigation included reviewing, saving, and consulting with industry experts about the "data cards" posted by Defendants on Nextmark.com, data-axle.com, and other data-brokerage websites where consumers' personal information is advertised for sale. Hedin Decl. ¶ 7. Over the course of their investigation, Plaintiffs' counsel also studied Defendants' transmission of personally identifiable information to Facebook, now known as to Meta Platforms, Inc. ("Meta"), via the Meta Pixel technology installed on their websites. *Id.*  Although their pre-filing investigatory work dates back to 2019, Plaintiffs' counsel was not retained prosecute claims against Defendants until late July of this year. Hedin Decl. ¶ 8.

On August 8, 2024, Plaintiffs filed a Class Action Complaint against Defendants. The Complaint seeks damages resulting from Defendants' nonconsensual disclosures of Plaintiffs' and their other customers' personally identifiable information in violation of the VPPA. As alleged in the Complaint,  Defendant Alliance Entertainment, LLC sells DVDs and Blu-Ray discs to consumers via a network of websites operated by its affiliate Defendant DirectToU, LLC. *See Feller*, ECF No. 1 at ¶ 75. These websites include Collectors' Choice, Critics' Choice, Movies

---

[3] The terms "Plaintiffs" and "Defendants" as used in this document in the plural refer to the parties in the *Feller* action. Additionally, where the singular form of "Plaintiff" and "Defendant" appear within this document, they shall refer to the parties in the instant matter, *Hoang To v. DirectToU, LLC*, 3:24-cv-06447-WHO (N.D. Cal.).

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

Unlimited, DeepDiscount, and WowHD. *Id*. Plaintiffs allege that Defendants violated the VPPA in two ways. First, Defendants have monetized their "vast digital database comprise of their customers' Personal Viewing Information, including the names and addresses of each customer and information reflecting the titles of all video and other audio-visual products" that each has purchased. *Id*. at ¶ 66. Defendants accomplished this by "renting, selling, or otherwise disclosing their customers' Personal Viewing Information to data aggregators, data miners, data brokers, data appenders, and other third parties." *Id*. at ¶ 67. The *Feller* Complaint corroborates these allegations through publicly available evidence, including screenshots of a data card offered for sale by Defendants on the data brokerage website Nextmark.com (containing the Personal Viewing Information of 384,538 American consumers). *Id*. at ¶ 68. Second, Defendants have disclosed their consumers' Personal Viewing Information through the use of the Meta Pixel, a snippet of programming code embedded on each of Defendants' many direct-to-consumer websites which systematically sends their personally identifiable information to Meta. *Id*. at ¶¶ 74–80. Thus, Plaintiffs seek to certify the following classes in the *Feller* action:

> **The Data Brokerage Class:** All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

> **The Meta Pixel Class:** All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

*See id.* at ¶ 85.

On August 30, 2024, the parties to the *Feller* action held a Rule 26(f) conference and, on September 9, 2024, filed their report. *Feller,* ECF No. 26. On September 10, 2024, the Court issued a scheduling order, *Feller,* ECF No. 27, which has since been amended to require class

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

certification motions filed by February 2, 2025, dispositive motions filed by July 24, 2025, and setting the case for a jury trial on November 3, 2025. *Feller,* ECF No. 34.

On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendant. The requests seek information, documents, communications, and electronically stored information concerning each of the factual and legal issues relevant to Plaintiffs' and the classes' claims for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23. Hedin Decl. ¶ 9. On September 13, 2024, Plaintiffs' counsel served notices of depositions of Defendants' corporate representatives for November 15, 2024. *Id.*

On September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore class-wide resolution of the *Feller* action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago).[4] Hedin Decl. ¶ 10. The mediation was held on the condition (negotiated by Plaintiffs' counsel) that Defendants would provide various information and materials in advance of the mediation. *Id.* This included the precise size of the two classes, the form and contents of the personally identifiable information that Defendants disclosed during the relevant time period, and all applicable or potentially applicable insurance policies. *Id.*

Before the mediation, Plaintiffs' counsel prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on legal and factual issues relevant to the claims, defenses, and issue of class certification. Hedin Decl. ¶ 11. Plaintiffs' counsel and Defendants' counsel also participated in a lengthy pre-mediation conference with Judge Holderman. *Id.* Finally, in advance of the mediation, Defendants' counsel advised Plaintiffs' counsel that Defendants had not engaged in

---

[4] Judge Holderman is a former U.S. District Court Judge for the Northern District of Illinois.

1    any settlement discussions with the plaintiff or his counsel in this second-filed *Hoang To* action.

2    Hedin Decl. ¶ 11.

3    On October 10, 2024, the parties participated in a full day mediation before Judge

4    Holderman.  Hedin Decl. ¶ 12. After mediating for nearly eight hours, they were unable to reach

5    a proposed class-wide settlement and Judge Holderman declared an impasse. *Id.*

6    For over more than a week following the mediation, Plaintiffs' counsel and Defendants'

7    counsel, with the continued assistance of Judge Holderman, continued to engage in what

8    Plaintiffs' counsel (and Judge Holderman) believed at the time to be good-faith negotiations.

9    Hedin Decl. ¶ 13. Specifically, on October 16, 2024, Plaintiffs' counsel exchanged e-mails and

10   spoke by telephone with Judge Holderman, and asked him to convey a settlement demand to

11   Defendants' counsel. *Id.*  Later that same day, after presenting Plaintiffs' demand to Defendants'

12   counsel by phone, Judge Holderman telephoned Plaintiffs' counsel to convey a counter offer that

13   Defendants had authorized him to provide. *Id.* Over the next two days, Plaintiffs' counsel spoke

14   by phone and exchanged e-mail correspondence with Judge Holderman several times, and on

15   October 18, 2024, Plaintiffs' counsel asked Judge Holderman to present a new settlement demand

16   to Defendants' counsel. *Id.*  Judge Holderman sent Plaintiffs' counsel an e-mail that day

17   confirming that he had done transmitted the offer. *Id.*  Plaintiffs' counsel followed up with Judge

18   Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had

19   received any response from Defendants' counsel, and on both occasions, Judge Holderman

20   advised Plaintiffs' counsel that he had telephoned Defendants' counsel but had received no

21   answer, and that he had left voicemails but had not heard back. *Id.*  Judge Holderman indicated

22   he would try to contact Defendants' counsel again on October 24, 2024. *Id.*

23

24

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

At the same time as these settlement discussions overseen by Judge Holderman were occurring, Plaintiffs' counsel continued pushing this case forward on multiple fronts. Hedin Decl. ¶ 14. Immediately following the mediation on October 10, 2024, Plaintiffs' counsel confirmed with Defendant that the agreed-upon discovery stay had ended. *Id.* On October 14, 2024, Plaintiffs' counsel served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. *Id.* On October 16, 2024, Meta served Plaintiffs with its initial responses and objections to the subpoena and, later that same day, Plaintiffs' counsel initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. *Id.* On October 19, 2024, Plaintiffs' counsel conferred further with Meta's counsel concerning the timing of its deposition in this matter. *Id.* On October 17, 2024, Plaintiffs' counsel served a third-party subpoena for documents to Data-Axle Inc., a data company that, as Plaintiffs' ongoing investigation had revealed, served as one of Defendant's list managers and/or brokers, on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. *Id.* On October 25, 2024, Plaintiffs' counsel exchanged correspondence with counsel for Data Axle regarding Data Axle's response to the subpoena and production of documents. *Id.*

Simply put: Plaintiffs and their counsel thoroughly investigated and have vigorously prosecuted the *Feller* action, and the settlement discussions that occurred between the parties in *Feller* were conducted at arm's length and overseen by an experienced mediator.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

### B. Plaintiff Files the Secondary, Duplicative *Hoang To* Action

Four days after the *Feller* action was filed, on August 12, 2024, the plaintiff in the instant case filed a duplicative VPPA case in California Superior Court, Alameda County.[5] The plaintiff brought a VPPA claim and two California state-law claims against Defendant DirectToU, LLC (but not Defendant Alliance) in this action, and he asserted these claims on behalf of a putative class comprised of:

> All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com.

ECF No. 1, ¶ 12.

On September 12, 2024, the defendant removed the *Hoang To* action to this Court pursuant to the Class Action Fairness Act. The defendant did not disclose the existence of the earlier-filed, related *Feller* action in the notice of removal. *See* ECF No. 1. Nor did either of the parties to this case disclose the existence of the earlier-filed *Feller* action in the two civil cover sheets filed in this case. *See* ECF Nos. 2, 6. Nor did either party file a Notice of Pendency of Other Action or Proceeding to apprise the Court of the existence of the first-filed *Feller* action, as Northern District of California Local Rule 3-13 plainly requires.

On October 1, 2024, the plaintiff in this case filed a First Amended Complaint, alleging a VPPA claim on behalf of a proposed nationwide class of persons who purchased videos on deepdiscount.com, and two state-law claims for violation of California law on behalf of a subclass of California residents. *See* ECF No. 10.

---

[5] The Plaintiff in the *Hoang To* action is listed in the caption as "Jonathan Hoang To" but is referred to within the body of the First Amended Complaint as Jonathan Huang To (*compare* ECF No. 10 at 1 (case caption) *with* ECF No. 10 at 3 (paragraph 6)), and it remains unclear which version is correct.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

Notably, because both of the classes proposed in the operative complaint in the instant *Hoang To* action are defined to only include persons who, while enrolled in Facebook, purchased videos on deepdiscount.com, both of these proposed classes are subsumed by the Meta Pixel Class in the earlier-filed *Feller* action, as shown below:

| The "Meta Pixel Class" Proposed by Plaintiffs in The First-Filed *Feller* Action | The Classes Proposed by the Plaintiff in the Second-Filed *Hoang* Matter |
|---|---|
| All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants' website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.[6] | All natural persons residing in the United States who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com; and<br><br>All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com. |

The *Hoang To* plaintiff also purports to allege two California state-law claims on behalf of a California sub-class – namely, claims for violations of California Civil Code § 1799.3 and California Business and Professions Code § 17200 – both of which are predicated on the same factual allegations giving rise to his federal VPPA claim. *See* ECF No. 10.

But the plaintiff's claim for a violation of § 1799.3 – which was first asserted in August 2024 and arises from video purchases allegedly made by the plaintiff in May 2023 (*see* ECF No.

---

[6] Plaintiffs' counsel's exhaustive, several-years-long investigation into Defendants' disclosure practices revealed that, for the entire duration of the two-year period preceding the filing of this case, the Meta Pixel technology was operational on each website maintained by Defendants on which prerecorded video materials were sold to consumers. Thus, the Meta Pixel-related criterion for membership in the classes proposed in the *Hoang To* action – i.e., that a would-be class member's purchase was made "during the time the Meta Pixel was active" – is unnecessary. For this reason, Plaintiffs in this case properly omitted such a criterion for membership in the Meta Pixel Class proposed in their complaint.

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

10 at ¶ 6) – is barred by the one-year limitation period applicable to a § 1799.3 claim for statutory

penalties. *See* Cal. Civ. Code § 340(a) (specifying one-year limitation period for "[a]n action

upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual

and the state, except if the statute imposing it prescribes a different limitation."); *id.* § 1799.3(c)

("Any willful violation of this section shall be subject to a civil penalty not to exceed five hundred

dollars ($500) for each violation, which may be recovered in a civil action brought by the person

who is the subject of the records."). Similarly, the plaintiff's § 17200 claim – which is predicated

on violations of § 1799.3 – is likewise barred by the one-year limitation period applicable to §

1799.3 claims. *See Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022).

Moreover, even if these claims were not time-barred, the California state-law claims

alleged by the plaintiff in *Hoang To* would still be duplicative and unnecessary. A federal VPPA

claim is capable of redressing all disclosures of video purchase-related information of all class

members nationwide. *See Belmonte v. Creative Properties, Inc.*, No. 19-61438-CIV, 2019 WL

5063832, at *1–2 (S.D. Fla. Oct. 8, 2019) (dismissing with prejudice state-law claim "premised

on the exact same factual allegations as [plaintiff's] federal claim"); *J & J Sports Prods., Inc. v.

Bou*, No. 15-CV-30004-MGM, 2015 WL 8022009, at *3 (D. Mass. Oct. 1, 2015), report and

recommendation adopted sub nom. *J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*,

No. CV 15-30004-MGM, 2015 WL 8082433 (D. Mass. Dec. 7, 2015) (declining to award

damages to a plaintiff who prevailed on state claims predicated on the same underlying facts as

the plaintiff's federal claims, explaining that damages for the overlapping state claims would be

duplicative of the damages the plaintiff was awarded for prevailing on the federal claims);

*Ambrose v. Walker*, No. 08-CV-0533-MJR-SCW, 2011 WL 2941299, at *2 (S.D. Ill. July 21,

2011) ("Plaintiff's state law claims are duplicative of his federal constitutional claims and thus,

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

1    unnecessary."); *Syntex (U.S.A.), Inc. v. Interpharm, Inc.,* No. CIV.A.1:92-CV-03HTW, 1993 WL

2    643372, at \*13 (N.D. Ga. Mar. 19, 1993); *United States v. EME Homer City Generation L.P.*, 823

3    F. Supp. 2d 274, 296 (W.D. Pa. 2011), *aff'd,* 727 F.3d 274 (3d Cir. 2013) .  This is especially true

4    given that: (1) § 1799.3's provisions prohibiting disclosures of video-purchase information are

5    far narrower in scope than those found in the federal VPPA, *see Martin v. Meredith Corp.*, 657

6    F. Supp. 3d 277, 285 (S.D.N.Y. 2023), *appeal withdrawn,* No. 23-412, 2023 WL 4013900 (2d

7    Cir. May 24, 2023) ("The language of § 1799.3 is similar to that of the VPPA, but notably

8    narrower in certain respects."); (2) the plaintiff has not alleged required facts plausibly

9    establishing any economic injury as required to state a claim for violation of § 17200, *id*. at 287

10    (dismissing § 17200 on similar allegations of disclosures to Meta, explaining that "Plaintiff's

11    injury consists solely of the alleged disclosure of private information" which is "not 'lost money

12    or property'" as required by the statute); and (3) the injunctive relief sought by the plaintiff under

13    his § 17200 claim is capable of being obtained on a class-wide basis nationwide through his VPPA

14    claim. *See* 18 U.S. Code § 2710 (c)(2)(B) (providing that a court may award any "preliminary

15    and equitable relief as the court determines to be appropriate").

16         It was not until September 18, 2024, that the defendant first apprised this Court of the

17    existence of the *Feller* action in a motion to enlarge its time to respond to the *Hoang To* complaint.

18    ECF No. 8.  In that filing, the defendant stated that it had asked the plaintiff's counsel to

19    voluntarily dismiss the *Hoang To* Action in deference to the earlier-filed *Feller* action, which had

20    been brought on behalf of classes that entirely subsume the putative classes proposed in this

21    second-filed case.  *Id*.  The defendant noted that the plaintiff's counsel had nonetheless refused

22    to dismiss the instant case.  *Id.*

23

24

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

**C.** **Defendants Obstruct Plaintiffs From Seeking Appointment as Interim Class Counsel, From Seeking Intervention into and Dismissal of This Action, and From Engaging in Discovery**

Over the course of a 10-day period beginning on October 14, 2024, continuing through October 24, 2024, Plaintiff's counsel repeatedly attempted to schedule a meet and confer conference with Defendants' counsel concerning, inter alia: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised Defendants' counsel it intended to file in the *Feller* action; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in the case and whether it would seek to dismiss, stay, or transfer the case on the grounds that it had previously articulated (namely, that it was duplicative of this earlier-filed case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in the case, did not intend to seek such relief in response to the plaintiff's complaint. Hedin Decl. ¶ 15.

First, on October 14, 2024, Plaintiffs made the first of several requests to confer on Defendants' position regarding the *Hoang To* action. Hedin Decl. ¶ 16.  Having received no response, on October 15, 2024, Plaintiffs' counsel again requested to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions regarding the duplicative *Hoang To* action and Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel. *Id.* Plaintiffs' counsel followed up again that same day (for a fourth time) seeking to meet and confer regarding Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel. *Id.* Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

asking for "a description of the substance" of the conference being requested.  *Id.* Plaintiffs'

counsel immediately responded, stating:

1. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.

2. Defendants' intent with respect to the *Hoang* matter.  Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL.  Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

*Id.*

On October 16, 2024, Defendants' counsel responded by stating that she would confer

with her client.  Hedin Decl. ¶ 17.  Later that day, Plaintiffs' counsel followed up with

Defendants' counsel once more—again, simply to propose a date to have a meet and confer

conference on these matters. *Id.*  Again, Defendants' counsel responded that she would reply with

her clients' position. *Id.* On October 21, 2024, having still not received Defendants' positions on

these issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants'

counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without

waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion

to intervene in the *Hoang To* action and move to dismiss that case under the first filed doctrine.

Hedin Decl. ¶ 18.

Defendants' counsel did not respond to that communication, and, later that day, Plaintiffs'

counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial

disclosures, and again sought to confer telephonically on October 22, 2024.  Hedin Decl. ¶ 19.

Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they

would need to discuss with their clients.  *Id.*

13

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email. Hedin Decl. ¶ 20. Plaintiffs' counsel also left voicemails to each of Defendants' counsel of record, all of which went unreturned. *Id.* The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you." Hedin Decl. ¶ 21. In response, Plaintiffs' counsel advised Defendants' counsel as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

*Id.*

And in response to this e-mail from Plaintiffs' Counsel – which, again, came after 10 days of Defendants' counsel ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each of these important issues, and after five days of ignoring Judge Holderman's repeated efforts to communicate with them as well, Defendants' counsel agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon. Hedin Decl. ¶ 22.

To recap: between October 14 and October 24, Defendants actively obstructed Plaintiffs' Counsel in the *Feller* action from seeking appointment of their counsel as interim class counsel, from seeking intervention into and dismissal of this second-filed action, and from obtaining the important testimony and documents that Plaintiffs had sought from Defendants and third parties in discovery.

### D. Plaintiffs Learn of the Reverse Auction Collusively Engineered in the *Hoang To* Action

As it turned out, Defendants had been ignoring Plaintiffs' counsel's attempts to meet and confer with them, and thereby preventing Plaintiffs from filing motions for interim appointment in the *Feller* action and to intervene in and to dismiss the instant *Hoang To* action, because they were busy orchestrating a collusive reverse auction of the class members' claims with the plaintiff and his counsel in the second-filed *Hoang To* action.

Indeed, during the October 24, 2024 phone call that Plaintiffs' counsel was finally able to schedule with Defendants' counsel, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the plaintiff and his counsel in the *Hoang To* action the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the *Feller* action (even though only the proposed classes in the *Hoang To* action comprise only a subset of the persons who comprise the proposed classes in the *Feller* action), that those releases will cover both of the Defendants in the *Feller* action (even though only one of those Defendants is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about October 28, 2024, and that Defendants would be filing a motion to stay the *Feller* action pending resolution of the forthcoming motion for preliminary approval in the *Hoang To* action. Hedin Decl. ¶ 22. At no time on this call or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay the *Feller* action. And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the class-wide settlement agreement that had been signed between Defendants and the *Hoang To* plaintiff and his counsel – information obviously necessary for Plaintiffs and their counsel to assess

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay the *Feller* matter or not – Defendants' counsel flatly refused without explanation. *Id.*

Later in the day, following this call with Defendants' counsel, Plaintiffs' counsel spoke with Judge Holderman by phone, who indicated he had just finally gotten ahold of Defendants' counsel, and they had just then advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel. *Id.*

Almost immediately after Plaintiffs' counsel's call with Defendants' counsel ended on October 24, 2024, Defendants filed a motion to stay the *Feller* action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiffs would be filing in the instant *Hoang To* action. Hedin Decl. ¶ 23. The motion to stay states, in pertinent part, that the parties in the *Hoang To* action signed a class-wide settlement agreement "on October 23, 2024" (*Feller*, ECF No. 36 at 2), that "[t]he settlement reached in the *Hoang To* action would, if approved by the Court, cover all claims asserted in this [*Feller*] case" (*id.* at 1), that "the *Hoang To* settlement is expected the release the claims of all putative class members in this [*Feller*] case" (*id.* at 4), and that "a motion for preliminary approval of the proposed settlement will be filed early next week" in the *Hoang To* case (*id.* at 2).

Later in the day on October 24, 2024, Plaintiffs' counsel emailed all counsel of record for the plaintiff in the *Hoang To* action in an effort to meet and confer on their position on both the motion for interim appointment to be filed in the *Feller* action and the instant motion to intervene in and to dismiss or stay the *Hoang To* action on first-to-file grounds. Hedin Decl. ¶ 24. Counsel of record for the plaintiff in the *Hoang To* action, Adrian Barnes, responded that he was not familiar enough with the litigation to provide his client's position on these issues, and that the

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

other counsel of record for his client were unavailable until October 28, 2024, because of the observation of a religious holiday. *Id.*

The reverse auction that Defendants orchestrated of the classes' claims, and the willingness with which the plaintiff's counsel in *Hoang To* appears to have gone along with it, as described above, is the most underhanded conduct that Plaintiffs' counsel has experienced in his 10-year career as a lawyer practicing in this area of law. Hedin Decl. ¶ 25. The post-mediation chain of events speaks for itself: as Plaintiffs' counsel was repeatedly attempting to meet and confer in good faith with Defendants' counsel on their planned interim appointment motion and on the instant motion to intervene and to dismiss the *Hoang To* action (only to be ignored), as Judge Holderman was also repeatedly attempting to reach Defendants' counsel to continue the post-mediation settlement negotiations (only to be ignored as well), and as Defendants and multiple third parties were set to provide important testimony and documents to Plaintiffs, Defendants' counsel was busy conducting a reverse auction of the classes' claims to the plaintiff's counsel in this matter. In other words, Defendants set out to get a deal done on the terms of their liking with the plaintiff's counsel in the *Hoang To* action (who turned out to be more than happy to oblige) before Plaintiffs could move for interim appointment in the *Feller* case or move to dismiss the *Hoang To* action on first-filed grounds, for the transparent purpose of avoiding an arm's-length negotiation with experienced plaintiffs' counsel intent on negotiating a good deal for class members – which is what they had already come to expect from Plaintiffs' counsel in the *Feller* case – and to prevent Plaintiffs from uncovering the depth of Defendants' wrongdoing in the discovery that was due to be produced in the *Feller* action. When the settlement agreement signed by the *Hoang To* plaintiff and Defendants is eventually submitted for approval, Plaintiffs

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

and their counsel fully expect that its terms will be the same (or worse) than the terms of one of Defendant's prior settlement offers that Plaintiffs in this case had previously rejected.

### III. ARGUMENT

Under the circumstances described above – which bear all the hallmarks of a reverse auction – the Court should grant intervention by Plaintiffs and dismiss (or, alternatively, stay or transfer) this second-filed action under the first-to-file rule doctrine to protect the interests of the classes.

Rule 24 intervention is warranted by right and, alternatively, permissively, given that there are hundreds of thousands of proposed class members in the *Feller* action who would suffer significant, irrevocable prejudice if a collusive, reverse auction settlement agreement (that purports to release all of their claims) were to be approved in the *Hoang To* action. To avoid further jeopardy to class members' rights, the *Hoang To* action should be dismissed pursuant to the first-to-file doctrine, or, alternatively, stayed pending resolution of the *Feller* action or transferred to the Southern District of Florida pursuant to 28 U.S.C. 1404(a).

This Court has previously seen, and put a stop to, attempts to sell class members' claims at reverse auctions: "In short, if this case were to yield [], it would reward a case that appears to be reverse auction. It would incentivize class-action defendants to pick their favorite class counsel from among various cases; reach a pre-certification settlement that is good for the defendants, good for class counsel, and potentially bad for the class; and then stipulate to remanding to state court to escape the first-to-file rule." *Rahman v. Gate Gourmet, Inc.,* No. 3:20-CV-03047-WHO, 2021 WL 5973046, at *4 (N.D. Cal. Nov. 22, 2021) (Orrick, J.). What the *Rahman* court described is exactly what the parties to the instant matter are attempting. As it has done before, this Court should refuse to let a collusive, reverse-auction-produced settlement stand as a

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

substitute for adversarial litigation and arm's-length negotiations between the parties. The Court should permit intervention and dismiss, stay, or transfer this second-filed action to protect the interests of class members and promote the interests of judicial economy and efficiency.

### A. Intervention is Warranted Either as a Matter of Right or With Permission

Intervention is plainly warranted here. Rule 24 allows intervention either by right or with the Court's permission. Fed. R. Civ. P. 24(a); Fed. R. Civ. P. 24(b). Under either standard, Plaintiffs in the first-filed *Feller* action are entitled to intervene in the second-filed *Hoang To* action.

> As a matter of right, a court *must* permit a nonparty to intervene when the non-party claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added). The Ninth Circuit has distilled four elements for mandatory intervention. A proposed intervenor must show that "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Courts *may* also permit anyone to intervene in an action who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In the Ninth Circuit, permissive intervention should be granted where the proposed intervenor "(1) shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *See id.* at 412. District courts interpret the rule broadly in favor of permissive intervention. *Forest Conservation*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

1    *Council v. U.S. Forest Service,* 66 F.3d 1489, 1493 (9th Cir. 1995).

2    The Plaintiffs in the *Feller* action should be permitted to intervene in this case under either

3    standard. Defendants' counsel has stated that the class-wide settlement agreement executed on

4    October 23, 2024 between the parties to the second-filed *Hoang To* action would, if approved,

5    bind all members of the putative classes in the first-filed *Feller* action. Hedin Decl. ¶¶ 22-23.

6    Because the circumstances leading to this proposed settlement all point to a reverse-auction sale

7    of the classes' claims to the lowest bidder, as discussed above, Plaintiffs in the *Feller* action are

8    entitled to intervene for the purposes of moving to dismiss this action on first-to-file grounds and

9    to otherwise protect the interests of the putative classes they seek to represent in the *Feller* action.

10    *See e.g.*, *Widjaja v. YUMA Brands, Inc.*, No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040, at

11    *7 (E.D. Cal. Oct. 22, 2009) (finding because of the possibility of inconsistent rulings, denying

12    intervention "may impair or impede Intervenor–Plaintiffs' ability to protect that interest [in the

13    litigation]" and granting intervention as a matter of right for plaintiffs in first-filed action); *Manier*

14    *v. L'Oreal USA, Inc,* No. 2:16-CV-06886-ODW-KS, 2017 WL 59066, at *1–4 (C.D. Cal. Jan. 4,

15    2017) (granting intervention in favor of plaintiffs in a first-filed action); *Elpidio v. Union Pac.*

16    *R.R. Co.*, No. 15-CV-3071-PJH, 2015 WL 5559920, at *2 (N.D. Cal. Sept. 18, 2015) (same);

17    *Woodard v. Boeing Emps. Credit Union*, No. 2:23-CV-00033, 2023 WL 4847005, at *3–5 (W.D.

18    Wash. July 28, 2023) (same); *Krefting v. Kaye-Smith Enterprises Inc., No.* 2:23-CV-220, 2023

19    WL 4847148, at *4 (W.D. Wash. July 28, 2023) (same); *Edmonds v. Amazon.com*, Inc., No. C19-

20    1613JLR, 2020 WL 4207208, at *3 (W.D. Wash. July 22, 2020) (same).

21    This Court knows a reverse auction when it sees one.  In *Rahman,* a plaintiff before this

22    Court filed the first California Private Attorney General action against a defendant. 2021 WL

23    5973046 at *1. Discovery proceeded. *Id*. The defendant then negotiated a settlement in a second-

24

filed case and swiftly moved to remand it to state court where it could avoid the federal first-filed rule. *Id*. at *2. This Court refused to go along, writing:

> Further, the parties' conduct in *Diaz* [the second-filed case] smacks of a "reverse auction" leading to a collusive settlement. Gate Gourmet removed *Diaz* to federal court in October 2020. Even though there is significant overlap in the claims (because both cases are proposed class actions), Gate Gourmet failed to put Rahman and me on notice that there was a related case. *See* Civ. L.R. 3-13(a) (mandating notice of such actions). If it had done so, there presumably would have been motions about the first-to-file rule or an earlier motion about MDL transfer. Instead, Gate Gourmet negotiated a pre-certification settlement with the plaintiffs' counsel in *Diaz* and swiftly stipulated to remand the case to state court once it did so. It only filed notices in this case and *Diaz* a month before that remand. *See* Dkt. No. 31. Even today, it has offered no principled reason for choosing to settle a later-filed case.

*Id.*

The *Hoang To* parties might as well have used the conduct in *Rahman* as a playbook. They filed no Notice of Pendency of Other Action or Proceeding (as required under Northern District of California Local Rule 3-13), swiftly agreed to a pre-certification settlement in the later-filed action without having conducted any discovery, engaged in no meaningful litigation, nor conducted any arm's-lengths settlement negotiations, at mediation or otherwise. The similarities between the cases are striking. This Court should employ the same strong skepticism towards the settlement agreement here as it did towards the one in *Rahman*.

This case has the additional element of Defendants' obstruction. As recounted above, after the parties' mediation, Defendants' counsel repeatedly refused to meet and confer with Plaintiffs' counsel – in order to stonewall Plaintiffs' efforts to obtain interim appointment in the *Feller* action and to intervene and dismiss the instant *Hoang To* action. Hedin Decl. ¶¶ 15-20. Plaintiffs tried more than six times to get Defendants to confer on a motion for interim appointment of class counsel, on a motion to intervene and dismiss this this action, on whether Defendants would move to dismiss this action under the first-to-file rule, and on deposition

21

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

1    scheduling and discovery. *Id*. Defendants ignored these efforts in order to buy time to arrange a

2    reverse auction, bottom-dollar settlement that Plaintiffs and their counsel in the *Feller* action were

3    unwilling to agree to. *Id*. And ultimately, Defendants' counsel only finally agreed to get on the

4    phone with Plaintiffs' counsel in the *Feller* action to meet and confer *after* the settlement

5    agreement had been executed between Defendants and the plaintiff in the *Hoang To* action. Even

6    then, Defendants' counsel refused disclose the terms of the settlement agreement, even though it

7    had already been signed and would be imminently filed on the public docket. *Id*. at ¶ 22.

8           Under the circumstances, the Court should permit the Plaintiffs in the *Feller* action to

9    intervene in this second-filed action to protect the interests of the putative classes from the

10   collusive settlement entered into between the parties to this action.[7]

11                    **B.**     **The First-to-File Rule Requires Dismissal, or in the Alternative, a**
                               **Transfer or Stay, of the *Hoang To* Action**

12

13          Under the first-to-file rule, this Court must dismiss, stay, or transfer the *Hoang To* action

14   to the Southern District of Florida.

15

16   _____

17   [7] It highly unlikely that the proposed settlement is even approvable given the circumstances under
     which it was obtained.  Under Rule 1(d) of the Northern District of California's Procedural
18   Guidance for Approval of Class Action Settlements, the parties must apprise the Court of whether
     "[a]ny other cases that will be affected by the settlement, an explanation of what claims will be
19   released in those cases if the settlement is approved, the class definitions in those cases, their
     procedural posture, whether plaintiffs' counsel in those cases participated in the settlement
20   negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those
     other cases before and during the settlement negotiations, an explanation of the level of
21   coordination between the two groups of plaintiffs' counsel, and an explanation of the significance
     of those factors on settlement approval . . . ." *Id.* Moreover, under Rule 1(a), the *Hoang To* parties
22   must explain why the proposed settlement's release, which apparently covers the claims of all
     members of the proposed classes in the *Feller* action, is so much broader than the claims alleged
23   by the plaintiff in his First Amended Complaint in the *Hoang To* action.  Applying these factors
     to the factual circumstances in question only underscores the underhanded nature of the way in
24   which the proposed settlement in the *Hoang To* action was produced.

                                                     22
     TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
        TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
                        INCORPORATED MEMORANDUM OF LAW

### i. The First-to-File Rule Applies

The first-to-file rule applies in this scenario, and requires that the claims alleged in the second-filed *Hoang To* action be dismissed, stayed, or transferred in deference to the claims alleged in the first-filed *Feller* action.

Courts "consider three factors in determining whether the first-to-file rule applies: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1017 (N.D. Cal. 2020) (citing *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)). Each of these factors weighs in favor of dismissal, stay, or transfer of the *Hoang To* action on first-to-file grounds.

The first factor, chronology, obviously weighs against the *Hoang To* action proceeding. The Plaintiffs filed the *Feller* action in the Southern District of Florida on August 8, 2024. *Feller*, ECF No. 1. The *Hoang To* action was filed on August 12, 2024. *See* ECF No. 1, Ex. A. It was removed to federal court a month later, on September 12, 2024. *See* ECF No. 1. That was over one month after the *Feller* action was filed, and almost two weeks after Defendant's counsel contacted the plaintiff's counsel in the *Hoang To* action to discuss the *Feller* Action and ask that the later-filed *Hoang To* action be dismissed, which the plaintiff's counsel refused to do. *See* ECF No. 8. Since that time, the Plaintiffs have engaged in significant discovery in the *Feller* action, whereas discovery does not appear to have even commenced in the *Hoang To* action.

The second factor, the similarity of the parties and the proposed classes, also supports application of the first-to-file rule. In class actions, courts look to the similarity of the proposed classes, not the named plaintiffs. *See Pedro v. Millennium Prods., Inc.*, No. 15-CV-05253, 2016 WL 3029681, at *3 (N.D. Cal. May 27, 2016) (transferring a second-filed case under the rule and noting that "the majority of district courts in the Ninth Circuit that have applied the first-to-file

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

rule in the context of a class action have compared the putative classes rather than the named plaintiffs."). As discussed above, both actions are brought against Defendant DirectToU, LLC in its role as the operator of deepdiscount.com. The *Feller* action, however, includes an additional Defendant, Alliance Entertainment, LLC, which also operates numerous other websites where prerecorded video materials are sold, and alleges claims on behalf of classes comprised of all persons who make purchases of video products on all of those websites. Thus, the classes proposed and claims alleged in the *Feller* action completely overlap, and subsume, the proposed classes and the claims alleged in the *Hoang To* action.

Third, the similarity of the issues in the two cases supports application of the first-to-file rule because all of the issues in *Hoang To* are present in *Feller*. Both actions seek to redress VPPA violations arising from Defendants' disclosures of personally identifying and video-purchase information to Meta via the Meta Pixel. The underlying conduct giving rise to such disclosures via the Meta Pixel as alleged in the *Feller* action is far more expansive than conduct giving rise to those disclosures as alleged in the *Hoang To* action; whereas just a single website is at issue in *Hoang To*, the *Feller* action focuses on numerous of Defendants' websites. And notably, the claims class members in *Feller* also rest on a second, and even stronger theory of liability not alleged at all in the *Hoang To* action: Defendants' disclosures of all of its customers' personally identifying and purchase-related information to data appenders and other third party renters and exchangers of Defendants' customer files on the data-brokerage marketplace.

The first-to-file rule clearly applies in these circumstances. *See Kohn*, 787 F.3d at 1240 (noting that the issues "need not be identical, only substantially similar.").

### ii. The *Hoang To* Action Should be Dismissed, Stayed, or Transferred

Given that the first-to-file rule applies, the Court should dismiss, stay, or transfer the

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

1    *Hoang To* action in deference to the first-filed *Feller* action.

2       As courts widely recognize, the "first-to-file rule promotes judicial efficiency by allowing

3 a district court to transfer, stay, or dismiss a case when a complaint involving the same parties

4 and the same issues has already been filed in another district." *Alltrade, Inc. v. Uniweld Prod.,*

5 *Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Because each element of the first-to-file rule is satisfied

6 in this case, the *Hoang To* action should be dismissed to make way for the *Feller* action to

7 proceed. *See, e.g.*, *SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021

8 (N.D. Cal. 2020) (applying first-to-file rule); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d

9 93, 96 (9th Cir. 1982) (affirming district court's dismissal under first-to-file rule). This Court has

10 explained that the first-to-file rule applies under highly analogous circumstances, stating: "To

11 start, this case was filed first. Usually, considerations of efficiency, economy, and avoiding

12 duplicative litigation give favor to the first-filed case. . . . If *Diaz* [the second-filed case] had

13 remained pending in federal court, it would likely have been subject to the first-to-file rule and

14 stayed or dismissed in favor this case." *Rahman*, 2021 WL 5973046, at *3.

15       Alternatively, this Court should stay the *Hoang To* action pending disposition of the *Feller*

16 action, *see id.* at *2, or transfer it to the Southern District of Florida, which is where the defendant

17 in *Hoang To* resides, where both of the Defendants in *Feller* reside, and where Defendants'

18 records, their repositories of electronically stored information, and many of the relevant fact

19 witnesses appear to be primarily located. *See Garcia v. Praxair, Inc.*, No. 3:18-CV-03887-WHO,

20 2018 WL 4471151, at *5 (N.D. Cal. Sept. 18, 2018) (transferring case under the first-to-file rule).

21

22

23

24

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

## CONCLUSION

For the foregoing reasons, intervention should be granted and this second-filed action should be dismissed, stayed, or transferred pursuant to the first-to-file rule.

Dated: October 28, 2024                    Respectfully submitted,


                                           **HEDIN LLP**

                                           By:    */s/ Frank S. Hedin*

                                           **HEDIN LLP**
                                           Frank S. Hedin (SBN 291289)
                                           1395 Brickell Ave, Suite 610
                                           Miami, Florida 33131
                                           Telephone: (305) 357-2107
                                           Facsimile: (305) 200-8801
                                           Email: fhedin@hedinllp.com

                                           *Counsel for Plaintiffs and the putative Class in
                                           Feller et al. v. Alliance Entertainment, LLC, et al.,
                                           Case No. 0:24-CV-61444-RAR (S.D. Fla. filed Aug.
                                           8, 2024)*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on October 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS OR, IN THE ALTERNATIVE, TO STAY OR TRANSFER THIS ACTION PURSUANT TO THE FIRST-TO-FILE RULE AND INCORPORATED MEMORANDUM OF LAW is being served this day on all counsel of record identified on the attached Service List, via transmission of Notice of Electronic Filing generated by CM/ECF. Lastly, I certify that the foregoing document is being served this day by email on counsel for Defendants in the *Feller* Action.

*/s/ Frank S. Hedin*

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Plaintiffs and the putative Class in Feller et al. v. Alliance Entertainment, LLC, et al., Case No. 0:24-CV-61444-RAR (S.D. Fla. filed Aug. 8, 2024)*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND INCORPORATED MEMORANDUM OF LAW

**SERVICE LIST**

Adrian John Barnes
HammondLaw P.C.
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(510) 316-9926
Fax: (310) 295-2385
Email: abarnes@hammondlawpc.com

Julian Ari Hammond
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(310) 807-1666
Email: JHammond@hammondlawpc.com

Polina Brandler
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(718) 414-7094
Email: pbrandler@hammondlawpc.com

Ari Nathan Cherniak
1201 Pacific Avenue, Sixth Floor
Tacoma, WA 98402
(559) 917-4917
Email: acherniak@hammondlawpc.com

*Attorneys for Second-filed Plaintiff Jonathan Hoang To*

Teresa Carey Chow
Baker & Hostetler LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
(310) 820-8800
Fax: (310) 820-8859
Email: tchow@bakerlaw.com

*Attorney for Second-filed Defendant DirectToU, LLC*

Joel Christopher Griswold
Baker & Hostetler LLP
8248 Tibet Butler Dr.
Windermere, FL 34786
(407)649-4088

28

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

Email: jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo
Baker & Hostetler LLP
One N. Wacker Drive, Suite 3700
Chicago, IL 60606
(312) 416-8185
Email: bdelgobbo@bakerlaw.com

*Attorneys for First-filed Defendant Alliance Entertainment, LLC, et al.*

TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS, OR ALTERNATIVELY
TO TRANSFER OR STAY, PURSUANT TO THE FIRST-TO-FILE RULE, AND
INCORPORATED MEMORANDUM OF LAW

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

| | |
|---|---|
| DOUGLAS FELLER; JEFFRY HEISE; JOSEPH MULL, individually and on behalf of all others similarly situated, | CASE NO. _____ |
| Plaintiff, | (JURY TRIAL DEMANDED) |
| v. | |
| ALLIANCE ENTERTAINMENT, LLC; and DIRECTTOU, LLC d/b/a Collectors' Choice Music, Critics' Choice Video, Movies Unlimited, DeepDiscount, and WOW HD | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Douglas Feller ("Plaintiff Feller"), Jeffry Heise ("Plaintiff Heise"), and Joseph Mull ("Plaintiff Mull") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations pertaining specifically to themselves or their counsel, which are based on personal knowledge.

## NATURE OF THE CASE

1.     Plaintiffs bring this action to redress Defendants' practices of selling, renting, transmitting, and/or otherwise disclosing, to various third parties, records containing the personal information (including names and addresses) of each of their customers, along with detailed information revealing the titles and subject matter of the videos and other audiovisual materials purchased by each customer (collectively "Personal Viewing Information") in violation of the Video Privacy Protection Act, 18 U.S.C. §2701et. seq. ("VPPA").

2.      Defendants violate the VPPA with respect to their disclosure of Plaintiffs' and putative classes' Personal Viewing Information in two ways.

3.      First, Defendants disclose their customers' Personal Viewing Information to various third-party recipients, which then append that information to a myriad of other categories of personal and demographic data pertaining to those customers.  Defendants re-sell that Personal Viewing Information (enhanced with the appended demographic information) to other third parties on the open market.

4.      Second, Defendants have systematically transmitted (and continue to transmit today) their customers' personally identifying video viewing information to Meta Platforms, Inc. ("Meta") using a snippet of programming code called the "Meta Pixel," which Defendants chose to install on their websites.

5.      The information Defendants disclosed (and continues to disclose) to Meta via the Meta Pixel it installed on their websites includes the Facebook ID ("FID") and the title of the specific prerecorded video material that each of their customers purchased on their website. An FID is a unique sequence of numbers linked to a specific Meta profile.  A Meta profile, in turn, publicly identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person). Entering "Facebook.com/[FID]" into a web browser returns the Meta profile of the person to whom the FID corresponds. Thus, the FID identifies a person more precisely than a name, as numerous persons may share the same name, but each person's Facebook profile (and associated FID) uniquely identifies one and only one person.  In the simplest terms, the Meta Pixel installed by Defendants captures and discloses to Meta information that reveals the specific videos that a particular person purchased on Defendants' websites (hereinafter, "Private Viewing Information").

6.      By these means Defendants disclosed and continue to disclose their customers'
Private Viewing Information to third parties without asking for, let alone obtaining, their consent
to these practices.

7.      The VPPA clearly prohibits what Defendants have done. Subsection (b)(1) of the
VPPA provides that, absent the consumer's prior informed, written consent, any "video tape
service provider who knowingly discloses, to any person, personally identifiable information
concerning any consumer of such provider shall be liable to the aggrieved person for," 18 U.S.C.
§ 2710(b)(1), damages in the amount of $2,500.00, *see id.* § 2710(c).

8.      Thus, while Defendants profit handsomely from their unauthorized disclosure of
their customers' Personal Viewing Information to third parties without providing prior notice to
or obtaining the requisite consent from any of these customers, they do so at the expense of their
customers' privacy and their statutory rights under federal law.

9.      Defendants' practice of disclosing their customers' Personal Viewing Information
in violation of the VPPA has invaded Plaintiffs' and the other unnamed Class members' privacy
and resulted in a barrage of unwanted junk mail to their home addresses and e-mail inboxes.
Defendants' disclosures are also dangerous because they allow for the targeting of particularly
vulnerable members of society. For example, as a result of Defendants' disclosures of Personal
Viewing Information, any person or entity could buy a list with the names and addresses of all
women residing in Connecticut who have spent more than $75.00 purchasing DVD or Blu-ray
movies featuring Burt Lancaster from the Defendants during the past 12 months. Such a list is
available for sale for approximately $158.00 per thousand customers listed.

10.     In an era when the collection and monetization of consumer data proliferates on an
unprecedented scale, it's important that companies are held accountable for the exploitation of

their customers' sensitive information. Defendants chose to disregard Plaintiffs' and thousands of other consumers' statutorily protected privacy rights by (a) releasing their Private Viewing Information into the data-aggregation and brokerage marketplace and (b) directly disseminating such information from their websites to Meta via the Meta Pixel. Accordingly, on behalf of themselves and the putative Class members defined below, Plaintiffs bring this Class Action Complaint against Defendants for intentionally and unlawfully disclosing their Personal Viewing Information.

PARTIES

I. **Plaintiff Feller**

11. Plaintiff Feller is, and at all times relevant hereto was, a citizen and resident of Indianapolis, Indiana.

12. Plaintiff Feller is, and at all times relevant hereto was, a user of Meta with a Facebook account which was assigned a unique FID.

13. On or about February 21, 2024, Plaintiff Feller purchased prerecorded video material from Defendants' online catalog by requesting and paying for such material on Defendants' website Critic's Choice (located at ccvideo.com), and by providing his name, email address, and home address for shipment of such material. Defendants completed their sales of goods to Plaintiff Feller by shipping the prerecorded video material he purchased to the address he provided in his order. Accordingly, Plaintiff Feller requested or obtained, and is therefore a consumer of, prerecorded video material sold by Defendants on their website.

14. At all times relevant hereto, including when purchasing prerecorded video material from Defendants on their website, Plaintiff Feller had a Meta account, a Meta profile, and an FID associated with such profile.

15.     When Plaintiff Feller purchased prerecorded video material from Defendants on their website, Defendants disclosed to Meta Plaintiff Feller's FID coupled with the specific title of the video or videos he purchased (as well as the URL where such video is available for purchase), among other information concerning Plaintiff Feller and the device on which he used to make the purchase.

16.     Prior to and at the time he purchased prerecorded video material from Defendants, Defendants did not notify Plaintiff Feller that they would disclose the Personal Viewing Information of their customers generally or of Plaintiff Feller in particular, and Plaintiff Feller has never consented, agreed, authorized, or otherwise permitted Defendants to disclose his Personal Viewing Information to third parties.  Plaintiff Feller has never been provided any written notice that Defendants sell, rent, license, exchange, or otherwise disclose their customers' Personal Viewing Information, or any means of opting out of such disclosures of his Personal Viewing Information.

17.     Defendants nonetheless sold, rented, transmitted and/or otherwise disclosed, either directly or through an intermediary or intermediaries, Plaintiff Feller's Personal Viewing Information – his FID coupled with the specific title of the video he purchased (as well as the URL where such video is available for purchase) to Meta and Plaintiff Feller's name, postal address, e-mail address, gender, age, and income, as well as the particular audio-visual product(s) Plaintiff Feller purchased from Defendants (i.e., the titles of the prerecorded video material purchased) and the amount of money spent by Plaintiff Feller on those purchases – to data miners, data appenders, data aggregators, marketing companies, and/or other third parties, including without limitation NextMark, during the relevant time period.

18.     Plaintiff Feller has never consented, agreed, authorized, or otherwise permitted Defendants to disclose his Personal Viewing Information to Meta or any third party.  In fact, Defendants never even provided Plaintiff Feller with written notice of their practices of disclosing their customers' Personal Viewing Information to Meta or any other third party.

19.     Because Defendants disclosed Plaintiff Feller's Personal Viewing Information (including his FID, the title of the prerecorded video material he purchased from Defendants' website, and the URL where such video is available for purchase) and to Meta and other third parties without prior notice or consent during the applicable statutory period, Defendants violated Plaintiff Feller's rights under the VPPA by invading his statutorily conferred interest in keeping such information (which bears on his personal affairs and concerns) private.

## II.     Plaintiff Heise

20.     Plaintiff Heise is, and at all times relevant hereto was, a citizen and resident of Coldwater, Michigan.

21.     Plaintiff Heise is, and at all times relevant hereto was, a user of Meta with a Facebook account which was assigned a unique FID.

22.     On or about April 4, 2023, Plaintiff Heise purchased prerecorded video material from Defendants' online catalog by requesting and paying for such material on Defendants' website, Critics' Choice, and by providing his name, email address, and home address for shipment of such material.  Defendants completed their sales of goods to Plaintiff Heise by shipping the prerecorded video material he purchased to the address he provided in his order.  Accordingly, Plaintiff Heise requested or obtained, and is therefore a consumer of, prerecorded video material sold by Defendants on their website.

23. At all times relevant hereto, including when purchasing prerecorded video material from Defendants on their website, Plaintiff Heise had a Meta account, a Meta profile, and an FID associated with such profile.

24. When Plaintiff Heise purchased prerecorded video material from Defendants on their website, Defendants disclosed to Meta Plaintiff Heise's FID coupled with the specific title of the video he purchased (as well as the URL where such video is available for purchase), among other information concerning Plaintiff Heise and the device on which he used to make the purchase.

25. Prior to and at the time he purchased prerecorded video material from Defendants via their catalogs, Defendants did not notify Plaintiff Heise that they would disclose the Personal Viewing Information of their customers generally or of Plaintiff Heise in particular, and Plaintiff Heise has never consented, agreed, authorized, or otherwise permitted Defendants to disclose his Personal Viewing Information to third parties. Plaintiff Heise has never been provided any written notice that Defendants sell, rent, license, exchange, or otherwise disclose their customers' Personal Viewing Information, or any means of opting out of such disclosures of his Personal Viewing Information.

26. Defendants nonetheless sold, rented, transmitted and/or otherwise disclosed, either directly or through an intermediary or intermediaries, Plaintiff Heise's Personal Viewing Information – his FID coupled with the specific title of the video or videos he purchased (as well as the URL where such video is available for purchase) to Meta and Plaintiff Heise's name, postal address, e-mail address, gender, age, and income, as well as the particular audio-visual product(s) Plaintiff Heise purchased from Defendants (i.e., the titles of the prerecorded video material purchased) and the amount of money spent by Plaintiff Heise on those purchases – to data miners,

data appenders, data aggregators, marketing companies, and/or other third parties, including without limitation NextMark, during the relevant time period.

27. Plaintiff Heise has never consented, agreed, authorized, or otherwise permitted Defendants to disclose his Personal Viewing Information to Meta. In fact, Defendants never even provided Plaintiff Heise with written notice of their practices of disclosing their customers' Personal Viewing Information to Meta or any other third party.

28. Because Defendants disclosed Plaintiff Heise's Personal Viewing Information (including his FID, the title of the prerecorded video material he purchased from Defendants' website, and the URL where such video is available for purchase) to Meta and other third parties without prior notice or consent during the applicable statutory period, Defendants violated Plaintiff Heise's rights under the VPPA by invading his statutorily conferred interest in keeping such information (which bears on his personal affairs and concerns) private.

III. **Plaintiff Mull**

29. Plaintiff Mull is, and at all times relevant hereto was, a citizen and resident of Arenzville, Illinois.

30. Plaintiff Mull is, and at all times relevant hereto was, a user of Meta with a Facebook account that was assigned a unique FID

31. On or about July 11, 2024, Plaintiff Mull purchased prerecorded video material from Defendants' online catalog by requesting and paying for such material on Defendants' Movies Unlimited website (located at moviesunlimited.com) and by providing his name, email address, and home address for shipment of such material. Defendants completed their sales of goods to Plaintiff Mull by shipping the prerecorded video material he purchased to the address he

provided in his order. Accordingly, Plaintiff Mull requested or obtained, and is therefore a consumer of, prerecorded video material sold by Defendants on their website.

32.     At all times relevant hereto, including when purchasing prerecorded video material from Defendants on their website, Plaintiff Mull had a Meta account, a Meta profile, and an FID associated with such profile.

33.     When Plaintiff Mull purchased prerecorded video material from Defendants on their website, Defendants disclosed to Meta Plaintiff Mull's FID coupled with the specific title of the video or videos he purchased (as well as the URL where such video is available for purchase), among other information concerning Plaintiff Mull and the device on which he used to make the purchase.

34.     Prior to and at the time he purchased prerecorded video material from Defendants via their catalogs, Defendants did not notify Plaintiff Mull that they would disclose the Personal Viewing Information of their customers generally or of Plaintiff Mull in particular, and Plaintiff Mull has never consented, agreed, authorized, or otherwise permitted Defendants to disclose his Personal Viewing Information to third parties. Plaintiff Mull has never been provided any written notice that Defendants sell, rent, license, exchange, or otherwise disclose their customers' Personal Viewing Information, or any means of opting out of such disclosures of his Personal Viewing Information.

35.     Defendants nonetheless sold, rented, transmitted and/or otherwise disclosed, either directly or through an intermediary or intermediaries, Plaintiff Mull's Personal Viewing Information – his FID coupled with the specific title of the video he purchased (as well as the URL where such video is available for purchase) to Meta and Plaintiff Mull's name, postal address, e-mail address, gender, age, and income, as well as the particular audio-visual product(s) Plaintiff

Mull purchased from Defendants (i.e., the titles of the prerecorded video material purchased) and the amount of money spent by Plaintiff Mull on those purchases – to data miners, data appenders, data aggregators, marketing companies, and/or other third parties, including without limitation NextMark, during the relevant time period.

36.     Plaintiff Mull has never consented, agreed, authorized, or otherwise permitted Defendants to disclose his Personal Viewing Information to Meta.  In fact, Defendants never even provided Plaintiff Mull with written notice of their practices of disclosing their customers' Personal Viewing Information or Private Purchase Information to third parties such as Meta and other third parties.

37.     Because Defendants disclosed Plaintiff Mull's Personal Viewing Information (including his FID, the title of the prerecorded video material he purchased from Defendants' website, and the URL where such video is available for purchase) to Meta and other third parties without prior notice or consent during the applicable statutory period, Defendants violated Plaintiff Mull's rights under the VPPA by invading his statutorily conferred interest in keeping such information (which bears on his personal affairs and concerns) private.

## IV.    Defendants

38.     Defendant Alliance Entertainment, LLC is a Delaware corporation that maintains its headquarters in Plantation, Florida. Defendant Alliance Entertainment, LLC is engaged in the business of wholesale, retail, and direct-to-consumer distribution and fulfillment of home entertainment products, including music, movies, games, and consumer electronics. Defendant Alliance Entertainment, LLC describes itself as the largest wholesale distributor of home entertainment audio and video software in the United States and operates as a one-stop shop for entertainment products and prerecorded video materials for consumers.

39. Defendant DirectToU, LLC is a Delaware corporation that maintains its headquarters in Plantation, Florida. Defendant DirectToU, LLC is a subdivision of Alliance Entertainment Holding Corporation, an affiliate of Defendant Alliance Entertainment, LLC, and operates as a wholesale distribution and retail sales business involving the sale of entertainment products, including music, movies, video games, electronics, toys, and other prerecorded video materials. Defendant DirectToU, LLC operates the direct-to-consumer brands Collectors' Choice Music, Critics' Choice Video, Movies Unlimited, DeepDiscount, and WOW HD.

## JURISDICTION AND VENUE

40. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2710.

41. Personal jurisdiction and venue are proper because Defendants maintain their headquarters and principal places of business in Plantation, Florida, within this judicial District.

## VIDEO PRIVACY PROTECTION ACT

42. Generally speaking, the VPPA prohibits companies (like Defendant) from knowingly disclosing to third parties (like Meta) information that personally identifies consumers (like Plaintiffs) as having viewed particular videos or other audio-visual materials.

43. Specifically, subject to certain exceptions that do not apply here, the VPPA prohibits "a video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1). The statute defines a "video tape service provider" as "any person, engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), and defines a "consumer" as "a renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). "'[P]ersonally identifiable

information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

44.      Leading up to the VPPA's enactment in 1988, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." *Id.*  Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials because such records offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively).

45.      Thus, in proposing the Video and Library Privacy Protection Act (which later became the VPPA), Senator Patrick J. Leahy (the senior Senator from Vermont from 1975 to 2023) sought to codify, as a matter of law, that "our right to privacy protects the choice of movies that we watch with our family in our own homes." 134 Cong. Rec. S5399 (May 10, 1988).  As Senator Leahy explained at the time, the personal nature of such information, and the need to protect it from disclosure, is the raison d'être of the statute: "These activities are at the core of any definition of personhood.  They reveal our likes and dislikes, our interests and our whims.  They say a great deal about our dreams and ambitions, our fears and our hopes.  They reflect our individuality, and they describe us as people." *Id*.

46.      While these statements rang true in 1988 when the act was passed, the importance of legislation like the VPPA in the modern era of data mining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act:

Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

47.     Former Senator Al Franken may have said it best: "If someone wants to share what they watch, I want them to be able to do so . . . But I want to make sure that consumers have the right to easily control who finds out what they watch—and who doesn't. The Video Privacy Protection Act guarantees them that right."[2]

48.     In this case, however, Defendants deprived Plaintiffs and numerous other similarly situated persons of that right by systematically (and surreptitiously) disclosing their Personal Viewing Information to Meta and other third parties, without providing notice to (let alone obtaining consent from) any of them, as explained in detail below.

## BACKGROUND FACTS

### I.     Consumers' Personal Information Has Real Market Value

49.     In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle remarked that "the digital revolution . . . has given an enormous capacity to the acts of collecting

---

[1]     The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, http://www.judiciary. senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21stcentury.

[2]     Chairman Franken Holds Hearing on Updated Video Privacy Law for 21st Century, frank.senate.gov (Jan. 31, 2012).

and transmitting and flowing of information, unlike anything we've ever seen in our lifetimes . . . [and] individuals are concerned about being defined by the existing data on themselves."[3]

50.     More than a decade later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per year online advertising industry in the United States.[4]

51.     The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace and publicly stated that:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[5]

52.     In fact, an entire industry exists while companies known as data aggregators purchase, trade, and collect massive databases of information about consumers.  Data aggregators then profit by selling this "extraordinarily intrusive" information in an open and largely unregulated market.[6]

53.     The scope of data aggregators' knowledge about consumers is immense: "If you are an American adult, the odds are that [they] know[] things like your age, race, sex, weight,

---

[3]     FCC, *The Information Marketplace* (Mar. 13, 2001), at 8-11, *available at* https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf.

[4]     *See Web's Hot New Commodity: Privacy*, Wall Street Journal (Feb. 28, 2011), http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[5]     Statement of FTC Cmr. Harbour (Dec. 7, 2009), at 2, *available at* https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

[6]     *See* M. White, *Big Data Knows What You're Doing Right Now*, TIME.com (July 31, 2012), http://moneyland.time.com/2012/07/31/big-data-knows-what-youre-doing-right-now/.

height, marital status, education level, politics, buying habits, household health worries, vacation dreams—and on and on."[7]

54.     Further, "[a]s use of the Internet has grown, the data broker industry has already evolved to take advantage of the increasingly specific pieces of information about consumers that are now available."[8]

55.     Recognizing the severe threat the data mining industry poses to consumers' privacy, on July 25, 2012, the co-chairmen of the Congressional Bi-Partisan Privacy Caucus sent a letter to nine major data brokerage companies seeking information on how those companies collect, store, and sell their massive collections of consumer data, stating in pertinent part:

> By combining data from numerous offline and online sources, data brokers have developed hidden dossiers on every U.S. consumer. This large[-]scale aggregation of the personal information of hundreds of millions of American citizens raises a number of serious privacy concerns.[9]

56.     Data aggregation is especially troublesome when consumer information is sold to direct-mail advertisers.  In addition to causing waste and inconvenience, direct-mail advertisers often use consumer information to lure unsuspecting consumers into various scams,[10] including

---

[7]     N. Singer, *You for Sale: Mapping, and Sharing, the Consumer Genome*, N.Y. Times (June 16, 2012), *available at* http://www.nytimes.com/2012/06/17/technology/acxiom-the-quiet-giant-of- consumer-database-marketing.html.

[8]     Letter from Sen. J. Rockefeller IV, Sen. Cmtee. on Commerce, Science, and Transportation, to S. Howe, Chief Executive Officer, Acxiom (Oct. 9, 2012) *available at* http://www.commerce.senate.gov/public/?a=Files.Serve&File_id=3bb94703-5ac8-4157-a97b-a658c3c3061c.

[9]     *See Bipartisan Group of Lawmakers Query Data Brokers About Practices Involving Consumers' Personal Information*, Website of Sen. Markey (July 24, 2012), http://www.markey.senate.gov/news/press-releases/bipartisan-group-of-lawmakers-query-data-brokers-about-practices-involving-consumers-personal-information.
[10]    *See Prize Scams*, Federal Trade Commission, http://www.consumer.ftc.gov/articles/0199-prize-scams (last visited July 30, 2021).

fraudulent sweepstakes, charities, and buying clubs. Thus, when companies like Defendants share information with data aggregators, data cooperatives, and direct-mail advertisers, they contribute to the "[v]ast databases" of consumer data that are often "sold to thieves by large publicly traded companies," which "put[s] almost anyone within the reach of fraudulent telemarketers" and other criminals.[11]

57. Disclosures like Defendants' are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[12] The FTC notes that "[t]she elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[13]

58. Indeed, an entire black market exists while the personal information of vulnerable elderly Americans is exchanged. Thus, information disclosures like Defendants' are particularly troublesome because of their cascading nature: "Once marked as receptive to [a specific] type of spam, a consumer is often bombarded with similar fraudulent offers from a host of scam artists."[14]

---

[11] *See* Charles Duhigg, *Bilking the Elderly, with a Corporate Assist*, N.Y. Times, May 20, 2007, *available at* http://www.nytimes.com/2007/05/20/business/20tele.html (last visited July 30, 2021).

[12] *Id.*

[13] *Fraud Against Seniors: Hearing before the Senate Special Committee on Aging* (August 10, 2000) (prepared statement of the FTC), *available at* https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf.

[14] *Id.*

59. Defendants is not alone in violating their customers' statutory rights and jeopardizing their well-being in exchange for increased revenue: disclosing customer and subscriber information to data aggregators, data appenders, data cooperatives, direct marketers, and other third parties has become a widespread practice. Unfortunately for consumers, however, this growth has come at the expense of their most basic privacy rights.

## II. Consumers Place Monetary Value on Their Privacy and Consider Privacy Practices When Making Purchases

60. As the data aggregation industry has grown, so has consumer concerns regarding personal information.

61. A recent survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers polled avoid doing business with companies who they believe do not protect their privacy online.[15] As a result, 81 percent of smartphone users polled said that they avoid using smartphone apps that they don't believe protect their privacy online.[16]

62. Thus, as consumer privacy concerns grow, consumers increasingly incorporate privacy concerns and values into their purchasing decisions, and companies viewed as having weaker privacy protections are forced to offer greater value elsewhere (through better quality and/or lower prices) than their privacy-protective competitors.

---

[15] *See 2014 TRUSTe US Consumer Confidence Privacy Report*, TRUSTe, http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf (last visited May 13, 2019).

[16] *Id.*

63.     In fact, consumers' personal information has become such a valuable commodity that companies are beginning to offer individuals the opportunity to sell their personal information themselves.[17]

64.     These companies' business models capitalize on a fundamental tenet underlying the personal information marketplace: consumers recognize the economic value of their private data.  Research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their personal data.[18]

65.     Thus, in today's digital economy, individuals and businesses alike place a real, quantifiable value on consumer data and corresponding privacy rights.[19]  As such, where a business offers customers a product or service that includes statutorily guaranteed privacy protections, yet fails to honor these guarantees, the customer receives a product or service of less value than the product or service paid for.

### III.     Defendants Unlawfully Sells, Rents, Transmits, And Otherwise Discloses Their Customers' Personal Viewing Information

66.     Defendants maintains a vast digital database comprised of their customers' Personal Viewing Information, including the names and addresses of each customer and

---

[17]     *See* Joshua Brustein, *Start-Ups Seek to Help Users Put a Price on Their Personal Data*, N.Y. Times (Feb. 12, 2012), *available at* http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html (last visited May 13, 2019).

[18]     *See* Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (2011); *see also* European Network and Information Security Agency, *Study on monetising privacy* (Feb. 27, 2012), *available at*     https://www.enisa.europa.eu/activities/identity-and-trust/library/deliverables/monetising-privacy (last visited May 13, 2019).

[19]     *See* Hann, et al., *The Value of Online Information Privacy: An Empirical Investigation* (Oct.     2003)     at     2,     *available     at* http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.321.6125&rep=rep1&type=pdf     (last visited May 13, 2019) ("It is obvious that people value online privacy.").

information reflecting the titles of all video and other audio-visual products that each of their customers have purchased.

67.     During the time period relevant to this action, Defendants has monetized this database by renting, selling, or otherwise disclosing their customers' Personal Viewing Information to data aggregators, data miners, data brokers, data appenders, and other third parties.

68.     These factual allegations are corroborated by publicly available evidence. For instance, as shown in the screenshot below, the Personal Viewing Information of 384,538 American consumers who purchased Defendants' video products is offered for sale on the website of NextMark, Inc. ("NextMark") – one of many traffickers of this type of Personal Viewing Information – at a base price of "$105.00/M [per thousand records]" (10.5 cents each):

# ALLIANCE ENTERTAINMENT MUSIC & DVD MASTERFILE Mailing List

Alliance Entertainment Masterfile provides an unduplicated file comprised of Collectors' Choice Music, Critics Choice Video and DVD, and Movies Unlimited. These buyers have purchased CD's and DVD's that cater to a very diverse audience through Alliance Entertainment's various catalogs.

**Get Count**  **Get Pricing**  **Get More Information**

| SEGMENTS | COUNTS THROUGH 11/30/2019 | | |
|---|---|---|---|
| 384,538 TOTAL UNIVERSE / BASE RATE | $105.00/M | | |
| 238,582 12 MONTH BUYERS | + $10.00/M | | |
| 151,913 6 MONTH BUYERS | + $15.00/M | | |
| 101,799 3 MONTH BUYERS | + $20.00/M | | |
| 48,957 1 MONTH BUYERS | + $25.00/M | | |
| FUNDRAISER RATE | $70.00/M | | |
| PUBLISHER RATE | $85.00/M | | |
| COMPETITIVE OFFERS | + $16.00/M | | |
| FACEBOOK MATCH & TARGET | + $25.00/M | | |
| FACEBOOK DIGITAL DISPLAY | $55.00/M | | |

| POPULARITY: | ===== 99 |
|---|---|
| MARKET: | CONSUMER |
| CHANNELS: | 🖥 |
| SOURCE: | 80% DMS |
| PRIVACY: | UNKNOWN |
| DMA?: | YES - MEMBER |
| STATUS: | STANDARD PROVIDER |
| GEO: | USA |
| GENDER: | 42% FEMALE 49% MALE |
| SPENDING: | $55.00 AVERAGE ORDER |

**DESCRIPTION**

Alliance Entertainment Masterfile provides an unduplicated file comprised of Collectors' Choice Music, Critics Choice Video and DVD, and Movies Unlimited. These buyers have purchased CD's and DVD's that cater to a very diverse audience through Alliance Entertainment's various catalogs.

\*\* Heartland Music Catalog is no longer mailing. The names and products have been added to the Critics Choice Video & DVD Catalog. \*\*

Alliance Entertainment offer music collectors that desire to purchase new music, imports, re-issues and hard-to-find music in all genres that include: oldies, rock, folk, country, big band, nostalgic soul, R&B, gospel and blues. Additionally, they sell a carefully-edited selection of high-quality home video titles, from hundreds of suppliers, with the latest Video/DVD releases which include classics, musicals, documentaries, action movies, family, British, horror, war and special interest movie titles.

Alliance Entertainment Masterfile will work well for the following offers: regional and national fundraising appeals, regional and national publication offers, stationery, apparel, collectibles, sweepstakes, housewares, general merchandise, insurance, African American, food, craft, children's offers, credit offers, health, travel and more.

Average Age: 55

Average Income: $70,000

Dollar Selects: Cummulative

\* All selections can be combined with lifestyle, age and income data.

**SELECTS**

| | |
|---|---|
| $100+ BUYERS | $26.00/M |
| $25+ BUYERS | $11.00/M |
| $50+ BUYERS | $16.00/M |
| $75+ BUYERS | $21.00/M |
| 1 MONTH HOTLINE | $25.00/M |
| 12 MONTH HOTLINE | $10.00/M |
| 3 MONTH HOTLINE | $20.00/M |
| 6 MONTH HOTLINE | $15.00/M |
| AGE | |
| DOLLAR COUNTS | |
| FACEBOOK DIGITAL DISPLAY | $55.00/M |
| FACEBOOK MATCH & TARGET | $25.00/M |
| GENDER/SEX | $8.00/M |
| INCOME | |
| LIFESTYLE | |
| MULTI-BUYERS | $10.00/M |
| MUSIC CATEGORIES | |
| PRODUCT | $16.00/M |
| SCF | $8.00/M |
| STATE | $8.00/M |
| VIDEO CATEGORIES | |
| ZIP | $8.00/M |
| ZIP TAPE | $8.00/M |

**ADDRESSING**

| | |
|---|---|
| KEY CODING | $5.00/M |
| EMAIL | $75.00/F |
| FTP | $75.00/F |

**RELATED LISTS**

- OLDIES.COM (FORMERLY NINA'S DISCOUNT OLDIES)
- BETTY'S ATTIC
- BILLBOARD MAGAZINE CONSUMER POSTAL FILE
- HEARTLAND AMERICA
- AMERICAN MINT
- MUSIC TRENDS CLASSIC ROCK
- CRITICS CHOICE VIDEO & DVD
- COLLECTORS CHOICE MUSIC CATALOG BUYERS
- ANNIE'S - GOOD OLD DAYS MAGAZINE
- AMERICAN SCIENCE AND SURPLUS

*See* **Exhibit A** hereto.

69.     The "ALLIANCE ENTERTAINMENT MUSIC & DVD MASTERFILE" list offered for sale by NextMark, shown in the screenshot above, contains Personal Viewing Information for each of the 384,538 American consumers whose information appears on the list, including each person's name, postal address, e-mail address, gender, age, and income, as well as the particular audio-visual product(s) they purchased from Defendants (i.e., the titles of the DVD and Blu-ray videos purchased) and the amount of money they spent on those purchases.

70.     As a result of Defendants' data compiling and sharing practices, companies have obtained and continue to obtain the Personal Viewing Information of Defendants' customers, together with additional sensitive personal information that has been appended thereto by data appenders and others.

71.     Plaintiffs are informed and believe, and thereupon allege, that numerous of the third parties to whom Defendants has transmitted and/or otherwise disclosed their customers' Personal Viewing Information, either directly or indirectly through an intermediary or intermediaries, have in turn sold, rented, transmitted, or otherwise disclosed that Personal Viewing Information (together with other sensitive personal demographic and lifestyle information appended thereto by data appenders and other entities) to other third parties, including other data brokers, data miners, data appenders, and marketing companies.

72.     Defendants' disclosures of Personal Viewing Information have put their customers at risk of serious harm from scammers.  For example, as a result of Defendants' disclosures of Personal Viewing Information, any person or entity could obtain a list with the names and addresses of all women residing in Connecticut who have spent more than $75.00 purchasing DVD

- 21 -

or Blu-ray movies featuring Burt Lancaster from the Defendants during the past 12 months. Such a list is available for sale for approximately $158.00 per thousand customers listed.

73.    Defendants did not seek Plaintiffs and other their customers' prior written consent to the disclosure of their Personal Viewing Information (in writing or otherwise) and their customers remain unaware that their Personal Viewing Information and other sensitive data is being sold, rented and exchanged on the open market.

IV.    **Defendant Knowingly Uses the Meta Pixel to Transmit the Private Viewing Information of its Customers to Meta**

74.    Separately from, and in addition to, transmitting Plaintiffs and the Class members' Private Viewing Information to data brokers and data appenders, Defendants violated the VPPA by transmitting Plaintiffs' and the class members' Private Viewing Information to Meta.

75.    Defendants sell a wide variety of prerecorded video materials, including movies and television shows on DVD and Blu-Ray, to consumers on their network of websites, which include websites belonging to the following brands: Collectors' Choice Music (ccmusic.com), Critics' Choice Video (ccvideo.com), Movies Unlimited (moviesunlimited.com), DeepDiscount (deepdiscount.com), and WOW HD (wowhd.co.uk).

76.    To make a purchase of prerecorded video material from Defendants' websites, a person must provide at least his or her name, email address, billing address, and credit or debit card (or other form of payment) information.

77.    Whenever a person with a Meta account purchases prerecorded video material from Defendants on their websites, Defendants use – and have used at all times relevant hereto – the Meta Pixel to disclose to Meta the unencrypted FID of the person who made the purchase and the specific title of video material that the person purchased (as well as the URL where such video material is available for purchase).

78.     In order to take advantage of the targeted advertising and other informational and analytical services offered by Meta, Defendants intentionally programmed its websites (by following step-by-step instructions from Meta's website) to include the Meta Pixel code, which systematically transmits to Meta the FID of each person with a Meta account who purchases prerecorded video material on one of Defendants' websites, along with the specific title of the prerecorded video material that the person purchased.

79.     With only a person's FID and the title of the prerecorded video material (or URL where such material is available for purchase) that the person purchased from Defendants on on of their websites—all of which Defendants knowingly and systematically provide to Meta—any ordinary person could learn the identity of the person to whom the FID corresponds and the title of the specific prerecorded video material that the person purchased (and thus requested and obtained).  This can be accomplished simply by accessing the URL www.facebook.com/ and inserting the person's FID.

80.     Defendants' practices of disclosing the Private Viewing Information of its customers to Meta continued unabated for the duration of the two-year period preceding the filing of this action.   At all times relevant hereto, whenever one of the Plaintiffs or any other person purchased prerecorded video material from Defendants on their websites, Defendants disclosed to Meta (*inter alia*) the specific title of the video material that was purchased (including the URL where such material is available for purchase), along with the FID of the person who purchased it (which, as discussed above, uniquely identified the person).

81.     At all times relevant hereto, Defendants knew that the Meta Pixel was disclosing its customers' Private Viewing Information to Meta.

82.     Although Defendants could easily have programmed its website so that none of its

customers' Private Viewing Information is disclosed to Meta, Defendants instead chose to program its website so that all of its customers' Private Viewing Information is disclosed to Meta.

83.     Before transmitting its customers' Private Viewing Information to Meta, Defendant failed to notify any of them that it would do so, and none of them have ever consented (in writing or otherwise) to these practices.

84.     By intentionally disclosing to Meta each of the Plaintiffs' and its other customers' FIDs together with the specific video material that they each purchased, without any of their consent to these practices, Defendant knowingly violated the VPPA on an enormous scale.

## CLASS ACTION ALLEGATIONS

85.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and seek to represent two classes of similarly situated persons (the "Classes"), defined as follows:

> **(a)     The Data Brokerage Class:** All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

> **(b)     The Meta Pixel Class:** All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

86.     Excluded from the Classes are any entity in which Defendants have a controlling interest, and officers or directors of Defendants.

87.     Class members are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in at least the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs

at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the membership records of Defendant.

88. Common questions of law and fact exist for all Class members and predominate over questions affecting only individual class members. Common legal and factual questions include but are not limited to (a) whether Defendants knowingly disclosed Plaintiffs' and Class members' Private Viewing Information to a third party; (b) whether the Defendants embedded Meta Pixel on their websites that monitors and tracks actions taken by visitors to their websites; (c) whether the Defendants report the actions and information of visitors to Meta; and (d) whether Defendant knowingly disclosed Plaintiffs' and Class members' Private Viewing Information to Meta; (e) whether Defendants' conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710; (f) whether each of the Plaintiffs and Class members is entitled to a statutory damage award of $2,500, as provided by the VPPA.

89. The named Plaintiffs' claims are typical of the claims of the Classes in that the named Plaintiffs and the Class members suffered invasions of their statutorily protected right to privacy (as afforded by the VPPA), as well as intrusions upon their private affairs and concerns that would be highly offensive to a reasonable person, as a result of Defendants' uniform and wrongful conduct in intentionally disclosing their Private Purchase Information to third parties.

90. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with those of the Class members they seek to represent; they have retained competent counsel experienced in prosecuting class actions and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of all Class members.

91. The class mechanism is superior to other available means for the fair and efficient adjudication of Class members' claims. Each individual member of the Classes may lack the

resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CLAIMS FOR RELIEF

## COUNT I: VIOLATION OF THE VPPA (18 U.S.C. § 2710)

92.     Plaintiffs repeat the allegations asserted in the preceding paragraphs as if fully set forth herein.

93.     The VPPA prohibits each Defendant, a "video tape service provider," from knowingly disclosing "personally identifying information" concerning any "consumer" to a third party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

94.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" Defendants are "video tape service providers" as defined in 18 U.S.C. § 2710(a)(4) because they engaged in the business of selling and delivering prerecorded video materials, similar to prerecorded video cassette tapes, to consumers nationwide.

95.     As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or consumer of goods or services from a video tape service provider." As alleged above, Plaintiffs and Class members are each a "consumer" within the meaning of the VPPA because they each purchased prerecorded video material from Defendants' websites that was sold and delivered to them by Defendants.

96.     As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." The Private Viewing Information that Defendants transmitted to third parties, including Meta, constitutes "personally identifiable information" as defined in 18 U.S.C. § 2710(a)(3) because it identified each of the Plaintiffs and Class members as an individual who purchased, and thus "requested or obtained," specific prerecorded video material from Defendants via their websites.

97.     Defendants knowingly disclosed Plaintiffs' and the members of the Data Brokerage Class's Private Viewing Information to data aggregators, data brokers, data appenders, and the like because Defendants knowingly rented, sold, or otherwise disclosed their customers' Personal Viewing Information to data aggregators, data miners, data brokers, data appenders, and other third parties.

98.     Further, Defendants knowingly disclosed Plaintiffs' the members of the Meta Pixel Class's Private Viewing Information to Meta via the Meta Pixel technology because Defendants intentionally installed and programmed the Meta Pixel code on its website, knowing that such code would transmit to Meta the titles of the video materials purchased by its customers coupled with its customers' unique identifiers (including FIDs).

99.     Defendants failed to obtain informed written consent from any of the Plaintiffs or

Class members authorizing them to disclose their Private Viewing Information to Meta or any other third party. More specifically, at no time prior to or during the applicable statutory period did Defendants obtain from any person who purchased prerecorded video material on its website (including any of the Plaintiffs or members of the classes) informed, written consent that was given in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer, that was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner, or that was given after Defendants provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

100. By disclosing Plaintiffs' and Class members' Private Viewing Information, Defendants violated their statutorily protected right to privacy in their Private Viewing Information.

101. Consequently, Defendants are liable to each of the Plaintiffs and the members of the Classes for damages in the statutorily set sum of $2,500. *See* 18 U.S.C. § 2710(c)(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendants Alliance Entertainment, LLC and DirectToU, LLC. as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

B. For an order declaring that Defendant's conduct as described herein violated the VPPA;

C. For an order finding in favor of Plaintiffs and the Class and against Defendant on all counts asserted herein;

D.    For an award of $2,500.00 to the Plaintiffs and each Class member, as provided by the VPPA, 18 U.S.C. § 2710(c);

E.    For an order permanently enjoining Defendant from disclosing the Private Viewing Information of its subscribers to third parties in violation of the VPPA.

F.    For prejudgment interest on all amounts awarded; and

G.    For an order awarding punitive damages, reasonable attorneys' fees, and costs to counsel for Plaintiffs and the Class under Rule 23 and 18 U.S.C. § 2710(c).

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Class Members, hereby demand a trial by jury on all claims so triable.

Dated: August 8, 2024         Respectfully submitted,

By: /s/ Frank S. Hedin

**HEDIN LLP**
FRANK S. HEDIN (FBN: 109698)
ARUN G. RAVINDRAN (FBN: 66247)
ELLIOT O. JACKSON (FBN: 1034536)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com
        aravindran@hedinllp.com
        ejackson@hedinllp.com

*Counsel for Plaintiffs and the Putative Class*

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| DOUGLAS FELLER; JEFFRY HEISE; and JOSEPH MULL, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 0:24-cv-61444 |
| v. | Hon. Rodolfo A. Ruiz II |
| ALLIANCE ENTERTAINMENT, LLC; AND DIRECTTOU, LLC D/B/A COLLECTORS' CHOICE MUSIC, CRITICS' CHOICE VIDEO, MOVIES UNLIMITED, DEEPDISCOUNT, AND WOW HD, | |
| Defendants. | |

## PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiffs Douglas Feller, Jeffry Heise, and Joseph Mull respectfully submit this motion for appointment of their counsel at Hedin LLP as interim counsel on behalf of the putative classes in this action.

### INTRODUCTION

Appointment of interim class counsel is necessary at this juncture to protect the interests of members of the putative classes. Following Plaintiffs' filing of this putative class action for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 – the product of years of investigatory work by Plaintiffs' counsel – Plaintiffs and their counsel expended considerable time and resources litigating this case and exploring settlement with Defendants. A mediation was held on October 10, 2024 before a well-respected JAMS mediator (and former federal district court judge) but the parties were unable to reach a settlement.

Approximately a week ago, Defendants decided that they were unwilling to settle the case on the fair, reasonable, and adequate terms set forth in Plaintiffs' settlement demands (the latest of which was made on October 18, 2024), and so they instead orchestrated a reverse-auction sale of the classes' claims to the plaintiff's counsel in a duplicative, copy-cat case filed in the Northern District of California (on behalf of putative classes that are much narrower than, and totally subsumed by, the proposed classes here). Plaintiffs' counsel first learned of this on a call with Defendants' counsel on October 24, 2024 – two weeks after the mediation between the parties in

this first-filed action, a week after Defendants had made their most recent post-mediation settlement offer to Plaintiffs, and just as Plaintiffs' counsel was on the verge of filing the instant motion for interim appointment of class counsel. On that call, Defendants' counsel advised Plaintiffs' counsel that a class-wide settlement agreement had been signed the day before by the parties to the second-filed case, and that the settlement agreement purports to release the claims of all members of the far-more-expansive classes in this case.

Plaintiff's counsel in the second-filed case has conducted no discovery, engaged in no meaningful litigation, and does not appear to have participated in a mediation or engaged in any other arm's-length settlement negotiations with the Defendants. Rather, based on how quickly this reverse auction transpired, it appears the plaintiff and his counsel in the second-filed case simply signed on the dotted lines of whatever settlement agreement was presented to them.

Under the circumstances – which bear all the hallmarks of a collusive, reverse auction – the Court should appoint Hedin LPP as interim class counsel to protect the classes' interests pursuant to Rule 23(g).

## BACKGROUND

Beginning in 2019, Plaintiffs' counsel began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which included names, addresses, titles of videos purchased by, and various demographic and other personal information about each of their customers who made purchases on their websites. (*See* Declaration of Frank S. Hedin in Support of Motion to Appoint Interim Class Counsel (the "Hedin Declaration" or "Hedin Decl.") ¶ 10). Part of this investigation included reviewing, saving, and consulting with industry experts about the "data cards" posted by Defendants on Nextmark.com, data-axle.com, and other data-brokerage websites where consumers' personal information is advertised for sale. *Id.* Over the course of this extensive investigation, Plaintiffs' counsel also studied Defendants' practices of transmitting personally identifying information and video-purchase information to Facebook, now known as Meta, via "Meta Pixel" technology installed on their websites. *Id.* Although their pre-filing investigatory work dated back to 2019, Plaintiffs' counsel were not retained by clients to prosecute claims against Defendants until late July of this year. *Id.*

On August 8, 2024, Plaintiffs initiated this action by filing the Class Action Complaint against Defendants in this judicial district, where Defendants maintain their corporate headquarters. ECF No. 1 (the "Complaint" or "Compl."). The Complaint alleges that Defendants

disclosed to third parties, without consent, Plaintiffs' and their other customers' personally identifiable information, including information revealing the particular prerecorded video materials they purchased on any of the numerous direct-to-consumer websites operated by Defendants[1], in violation of the VPPA, and seeks statutory damages on behalf of Plaintiffs and the members of the proposed classes.

The Complaint alleges that Defendants violated the VPPA in two ways: (1) by using the Meta Pixel technology, a snippet of programming code embedded on each of Defendants' direct-to-consumer websites, to systematically send their customers' personally identifiable information and information revealing the prerecorded video materials they purchased to Meta; and (2) by renting, selling, exchanging, or otherwise disclosing customer lists and purchase records containing this same type of personally identifying video-purchase information, pertaining to all of the purchases made by their customers on all of their websites, to data aggregators, data miners, data brokers, data appenders, aggressive marketing companies, and others. *See* Compl. ¶¶ 3–4, 67, 74–80. Thus, in the Complaint, Plaintiffs seek to represent the following two classes:

> **The Data Brokerage Class:** All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

> **The Meta Pixel Class:** All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' website[s] while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

Compl. ¶ 85.

On August 12, 2024, a putative class action entitled *Hoang To[2] v. Directtou, LLC* was filed in state court in California, alleging a VPPA claim and two California state-law claims against DirectToU, LLC (but not Alliance Entertainment, LLC) on behalf of a putative class

---

[1]     Defendant Alliance Entertainment, LLC ("Alliance") sells DVDs and Blu-Ray discs to consumers via a network of websites operated by its affiliate DirectToU, LLC ("DirectToU"). These websites include Collectors' Choice, Critics' Choice, Movies Unlimited, DeepDiscount, and WowHD. ECF No. 1, ¶ 39.

[2]     The Plaintiff in the *Hoang To* action is listed in the caption as Jonathan Hoang To but is referred to within the body of the operative first amended complaint as Jonathan Huang To (*compare Hoang To*, ECF No. 10 at 1 (case caption) *with id.*, ECF No. 10 at 3 (paragraph 6)), and it remains unclear which version is correct.

comprised of all Californians who purchased videos on deepdiscount.com – one of many of the direct-to-consumer websites operated by Defendants – based upon DirectToU's alleged disclosure of information pertaining to its customers' purchases on that website to Meta by way of the Meta Pixel technology. *See Hoang To v. Directtou, LLC*, 24-cv-06447, ECF No. 1 (N.D. Cal.) (the "*Hoang To* action").[3] The defendant in the second-filed *Hoang To* action, DirectToU, LLC, subsequently removed the action to the Northern District of California pursuant to the Class Action Fairness Act. The defendant did not disclose the existence of the instant, earlier-filed related action in the notice of removal (*Hoang To*, ECF No. 1), and neither of the parties in the *Hoang To* action disclosed the existence of this earlier-filed related action in either of the two civil cover sheets filed in that action (*Hoang To*, ECF Nos. 2, 6). Additionally, despite both parties being aware of this case and the overlapping claims, at no time since the removal of the *Hoang To* action has either party filed a Notice of Pendency of Other Action or Proceeding to put the court on notice of the existence of this first-filed case, as N.D. Cal. Local Rule 3-13 has plainly required.

On August 30, 2024, the parties in this case held a Rule 26(f) conference and, on September 9, 2024, they filed their report. ECF No. 26. On September 10, 2024, the Court issued a scheduling order. ECF No. 27. On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendant, seeking razor-focused categories of information, documents, communications, and electronically stored information concerning each of the factual and legal issues relevant to their claim for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23. Hedin Decl. ¶ 13.

On September 13, 2024, Plaintiffs' counsel served notices of deposition of Defendants' corporate representatives for November 15, 2024. Hedin Decl. ¶ 13.

On October 1, 2024, the plaintiff in the *Hoang To* action filed a first amended complaint[4], alleging a VPPA claim on behalf of a proposed nationwide class of persons who purchased videos on deepdiscount.com, and two state-law claims for violation of California law on behalf of a

---

[3]       A copy of the complaint in the *Hoang To* action is attached hereto as **Exhibit A.**

[4]       A copy of the operative first amended complaint in the *Hoang To* action is attached hereto as **Exhibit B**.

subclass of California residents.  *See Hoang To*, ECF No. 10.[5]  Notably, because both of the classes proposed in the operative complaint in *Hoang To* are defined to only include persons who,

---

[5]     Although the *Hoang To* action purports to allege two California state-law claims – for violation of California Civil Code § 1799.3 and California Business and Professions Code § 17200 – these claims are barred by the applicable limitation period and are otherwise duplicative and unnecessary (given that they are both predicated on the same factual allegations giving rise to the plaintiff's federal VPPA claim).  First, the *Hoang To* plaintiff's claim for violation of § 1799.3 – filed in August 2024, and purportedly arising from video purchases made in May 2023 (*see Hoang To*, First Amended Complaint, ECF No. 10 at ¶ 6) – is barred by the one-year limitation period applicable to a § 1799.3 claim for statutory penalties. *See* Cal. Civ. Code § 340(a) (specifying one-year limitation period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation."); *id.* § 1799.3(c) ("Any willful violation of this section shall be subject to a civil penalty not to exceed five hundred dollars ($500) for each violation, which may be recovered in a civil action brought by the person who is the subject of the records.").  And his § 17200 claim likewise fails because it is predicated on violations of § 1799.3. *See Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022).  Having failed to allege cognizable claims for violations of these state statutes on his own behalf, the plaintiff in *Hoang To* cannot prosecute such claims on behalf of unnamed members of his proposed California subclass.

Second, even if these claims were not time barred, the California state-law claims alleged by the plaintiff in *Hoang To* would still be duplicative and unnecessary because a federal VPPA claim is capable of redressing all disclosures of video purchase-related information of all class members nationwide. *See Belmonte v. Creative Properties, Inc.*, No. 19-61438-CIV, 2019 WL 5063832, at *1–2 (S.D. Fla. Oct. 8, 2019) (Moreno, J.) (dismissing with prejudice state-law claim "premised on the exact same factual allegations as [plaintiff's] federal claim"); *J & J Sports Prods., Inc. v. Bou*, No. 15-CV-30004-MGM, 2015 WL 8022009, at *3 (D. Mass. Oct. 1, 2015), *report and recommendation adopted sub nom. J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*, No. CV 15-30004-MGM, 2015 WL 8082433 (D. Mass. Dec. 7, 2015) (declining to award damages to a plaintiff who prevailed on state claims predicated on the same underlying facts as the plaintiff's federal claims, explaining that damages for the overlapping state claims would be duplicative of the damages the plaintiff was awarded for prevailing on the federal claims); *Syntex (U.S.A.), Inc. v. Interpharm, Inc.,* No. CIV.A.1:92-CV-03HTW, 1993 WL 643372, at *13 (N.D. Ga. Mar. 19, 1993) ("The court notes . . . plaintiffs are seeking redress for unfair competition and trademark infringement under applicable federal and state law, and these remaining state law claims, while perhaps actionable, are superfluous.").  This is especially true because § 1799.3's provisions prohibiting disclosures of video-purchase information are far narrower in scope than those found in the federal VPPA, *see Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023), *appeal withdrawn,* No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) ("The language of § 1799.3 is similar to that of the VPPA, but notably narrower in certain respects."), because the *Hoang To* plaintiff has not alleged facts plausibly establishing any economic injury as required to state a claim for violation of § 17200, *see id.* at 287, and in any event because the injunctive relief sought by the *Hoang To* plaintiff's § 17200 claim can be obtained nationwide with a VPPA claim. *See* 18 U.S.C. § 2710(c)(2)(B) (providing that a court may award any "preliminary and equitable relief as the court determines to be appropriate").

while enrolled in Facebook, purchased videos on deepdiscount.com while Meta Pixel technology was operational on the site, both putative classes are subsumed by the Meta Pixel Class in this earlier-filed action, as reflected in the table below:

| The "Meta Pixel Class" Proposed by Plaintiffs in This First-Filed Matter | The Classes Proposed by the Plaintiff in the Second-Filed *Hoang* Matter |
|---|---|
| All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants' website[s] while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.[6] | All natural persons residing in the United States who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com; and<br><br>All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com. |

Meanwhile, on September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore early class-wide resolution of this action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago), formerly a district judge in the Northern District of Illinois, on the condition (negotiated by Plaintiffs' counsel) that Defendants would agree to provide various information and materials to them in advance of the mediation that were necessary for counsel and the Plaintiffs to intelligently negotiate on behalf of members of the putative classes. Hedin Decl. ¶ 14. This information and material included the precise sizes of the two classes, the form and

---

[6] As explained above, Plaintiffs' counsel performed an exhaustive, years-long investigation into Defendants' disclosure practices prior to filing this case, and those investigative efforts revealed that, during the two-year period preceding the filing of this case, the Meta Pixel technology was operational on each website maintained by Defendants on which prerecorded video materials were sold to consumers, and that Defendants systematically transmitted to Meta the Facebook ID along with the titles of the video materials purchased by each of its customers on each of those websites over that two-year period of time. Thus, the Meta Pixel-related criterion for membership in the classes proposed in the *Hoang To* action – i.e., that a would-be class member's purchase was made "during the time the Meta Pixel was active" – is unnecessary and, for that reason, is not included as a criterion for membership in the Meta Pixel Class proposed in Plaintiffs' complaint in this case.

contents of the personally identifying and video purchase-related information pertaining to Plaintiffs and class members that Defendants transmitted to the various third-party recipients of the information during the applicable statutory period, and all applicable or potentially applicable policies of insurance. *Id.*

On September 18, 2024, the defendant's counsel first apprised the court in *Hoang To* of the existence of this action, in an administrative motion to enlarge time to respond to the *Hoang To* complaint; in that filing, defendant's counsel advised the court that it had asked the plaintiff's counsel in *Hoang To* to voluntarily dismiss the *Hoang To* action because of the pendency of the instant earlier-filed action, brought on behalf of classes that entirely overlap the putative classes proposed in *Hoang To*, but that the plaintiff's counsel had refused. *Hoang To*, ECF No. 8.

Ahead of the parties' mediation scheduled for October 10, 2024 before Judge Holderman, Plaintiffs' counsel prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on various legal and factual issues relevant to the merits of the claims and defenses and issues of class certification. Hedin Decl. ¶ 15. Plaintiffs' counsel and Defendant's counsel also participated in a lengthy pre-mediation conference with Judge Holderman. *Id.* During that conference, Defendants' counsel informed Plaintiffs' counsel that no settlement discussions had occurred between Defendants and the plaintiff in *Hoang To*. *Id*.

On October 10, 2024, following Plaintiffs' counsels' receipt of information and materials from Defendants bearing on, *inter alia*, issues of class size and insurance, the parties participated in nearly a full day of mediation before Judge Holderman. Hedin Decl. ¶ 16. The parties were unable to reach a proposed class-wide settlement at the mediation, and Judge Holderman declared an impasse. *Id*.

For over more than a week following the mediation, Plaintiffs' counsel and Defendants' counsel, with the continued assistance of Judge Holderman, continued to engage in what Plaintiffs' counsel (and Judge Holderman) believed at the time to be good-faith negotiations. Hedin Decl. ¶ 17. Specifically, on October 16, 2024, Plaintiffs' counsel exchanged e-mail correspondence and then spoke by telephone with Judge Holderman, during which Plaintiffs' counsel asked Judge Holderman to convey a settlement demand to Defendants' counsel, which Plaintiffs' counsel believed would meaningfully advance the parties' progress towards a proposed resolution on behalf of the classes. *Id*. Later that same day, after presenting Plaintiffs' demand

to Defendants' counsel by phone, Judge Holderman telephoned Plaintiffs' counsel to convey a counter settlement offer that Defendants had authorized him to convey to Plaintiffs' counsel. *Id*. Over the next two days, Plaintiffs' counsel spoke by phone and exchanged e-mail correspondence with Judge Holderman on multiple occasions concerning Defendants' latest settlement offer, and on October 18, 2024, Plaintiffs' counsel conveyed another counter settlement demand to Judge Holderman and asked that he present it to the Defendants' counsel. Later that same day, Judge Holderman sent Plaintiffs' counsel an e-mail confirming that he had presented Plaintiffs' latest demand to Defendants' counsel by phone. *Id*. Plaintiffs' counsel followed up with Judge Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had received any response from Defendants' counsel, and on both occasions Judge Holderman advised Plaintiffs' counsel that he had telephoned Defendants' counsel but had received no answer, that he had left voicemails for them but had still not heard back from them, and that he would try to contact Defendants' counsel yet again on October 24, 2024. *Id*.

At the same time as these settlement discussions overseen by Judge Holderman were occurring, Plaintiffs' counsel also continued to push this case forward on multiple fronts. Immediately following the conclusion of the mediation on October 10, 2024, Plaintiffs' counsel confirmed with Defendant that the agreed-upon discovery stay (which had been in effect since the date the parties agreed to mediate) had ended. Hedin Decl. ¶ 18. On October 14, 2024, Plaintiffs' counsel served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. *Id*. On October 16, 2024, Meta served Plaintiffs with its initial responses and objections to the subpoena and, later that same day, Plaintiffs' counsel initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. *Id*. On October 19, 2024, Plaintiffs' counsel conferred further with Meta's counsel concerning the timing of its deposition in this matter. *Id*. On October 17, 2024, Plaintiffs' counsel served a third-party subpoena for documents to Data-Axle Inc., a data company that, as Plaintiffs' ongoing investigation had revealed, served as one of Defendant's list managers and/or brokers during the relevant statutory period, on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. *Id*. On October 25, 2024, Plaintiffs' counsel exchanged correspondence

with counsel for Data Axle regarding Data Axle's response to the subpoena and production of documents. *Id.*

Additionally, over the course of ten days from October 14, 2024 through October 24, 2024, Plaintiffs' counsel repeatedly attempted to schedule meet and confer conferences with Defendants' counsel concerning deposition scheduling as well as: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised Defendants' counsel it intended to file; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in that case and whether it would seek to dismiss, stay, or transfer the case on the grounds that Defendants had previously articulated (namely, that *Hoang To* was duplicative of this earlier-filed case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in that case, did not intend to seek such relief in response to the plaintiff's complaint. Hedin Decl. ¶ 19.

On October 14, 2024, Plaintiffs **made the first of several requests to confer** on Defendants' position regarding the *Hoang To* case. Hedin Decl. ¶ 20. Having received no response, on October 15, 2024, Plaintiffs' counsel **again requested** to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions with respect to the duplicative *Hoang-To* matter and on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel in this case. *Id.* Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by asking for "a description of the substance" of the conference being requested. *Id.* Plaintiffs' counsel immediately responded, stating:

1. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.

2. Defendants' intent with respect to the *Hoang* matter. Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL. Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

*Id.* On October 16, 2024, Defendants' counsel responded by stating that she would confer with her client. Hedin Decl. ¶ 21. Later that day, Plaintiffs' counsel followed up with Defendants'

counsel once more – again, simply to propose a date to have a meet and confer conference on these matters. *Id.* Again, Defendants' counsel refused to provide her clients' position. *Id.*

On October 21, 2024, having still not received Defendants' positions on these issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants' counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion to intervene in the *Hoang To* matter and move to dismiss that case under the first filed doctrine. Hedin Decl. ¶ 22. Defendants' counsel did not respond to that communication and, later that day, Plaintiffs' counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial disclosures, and **again sought to confer telephonically on October 22, 2024**. Hedin Decl. ¶ 23. Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they would need to discuss with their clients. *Id.*

On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email, and then placed telephone calls and left voicemails to each of Defendants' counsel of record, all of which went unreturned. Hedin Decl. ¶ 24. The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you." Hedin Decl. ¶ 25. Contemporaneously, Plaintiffs' counsel advised as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion, we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

*Id.* Finally, after 10 days of ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each of these important issues, and after five days of also ignoring Judge Holderman's repeated efforts to communicate with them as well (as recounted above), Defendants' counsel agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon. Hedin Decl. ¶ 26.

During this October 24, 2024 phone call, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the counsel for the *Hoang To* plaintiff the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the instant

action (even though only the proposed classes in the *Hoang To* action are only a small subset of the proposed classes here), that those releases will cover both of the Defendants in this action (even though only one of the Defendants here is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about Monday, October 28, 2024, and that Defendants would be filing a motion to stay the instant action pending resolution of the motion for preliminary approval in the *Hoang To* action. Hedin Decl. ¶ 26. At no time on the call or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay this action. *Id.* And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the signed class-wide settlement agreement – information obviously necessary for Plaintiffs and their counsel to assess whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay this matter or not – Defendants' counsel flatly refused without explanation. *Id.* Plaintiffs' counsel also indicated that they would be filing the instant motion for appointment of interim counsel as well as a motion to intervene and to stay or dismiss the *Hoang To* action on first-filed doctrine grounds, and Defendants' counsel stated that Defendants would oppose both motions. *Id.*

Almost immediately after counsel for the parties spoke by telephone on October 24, 2024, Defendants filed their motion to stay this action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiffs would be filing in the *Hoang To* action. Hedin Decl. ¶ 26. The motion to stay states, in pertinent part, that the parties in the *Hoang To* action signed a class-wide settlement agreement "on October 23, 2024" (ECF No. 36 at 2), that the "[t]he settlement reached in the *Hoang To* action would, if approved by the Court, cover all claims asserted in this [*Feller*] case" (*id.* at 1), that "the *Hoang To* settlement is expected to release the claims of all putative class members in this [*Feller*] case" (*id.* at 4), and that "a motion for preliminary approval of the proposed settlement will be filed early next week" in the *Hoang To* case (*id.* at 2). Plaintiffs will file a response in opposition to Defendants' motion to stay by the deadline set by the Court of October 28, 2024.

Later on October 24, 2024, shortly after Defendants filed their motion to stay, Plaintiffs' counsel spoke with Judge Holderman by phone, who indicated that he had just finally gotten

ahold of Defendants' counsel and that Defendants' counsel had just then advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel. Hedin Decl. ¶ 26.

The reverse auction that Defendants orchestrated of the classes' claims, and the willingness with which the plaintiff's counsel in *Hoang To* appears to have gone along with it, as described above, is the most underhanded conduct that Plaintiffs' counsel has experienced in his 10-year career as a lawyer practicing in this area of law. Hedin Decl. ¶ 27. The post-mediation chain of events speaks for itself: as Plaintiffs' counsel was repeatedly attempting to meet and confer in good faith with Defendants' counsel on the instant interim appointment motion and on a motion to intervene and to dismiss the *Hoang To* matter (only to be ignored), as Judge Holderman was also repeatedly attempting to reach Defendants' counsel to continue facilitating the ongoing post-mediation settlement negotiations between the parties (only to be ignored as well), and as Defendants and multiple third parties were set to provide important testimony and documents to Plaintiffs, Defendants' counsel was busy conducting a reverse auction of the classes' claims to the plaintiff's counsel in the *Hoang To* matter. In other words, Defendants set out to get a deal done on the terms of their liking with the plaintiff's counsel in the *Hoang To* matter (who as it turned out was more than happy to oblige) before Plaintiffs could move for interim appointment in this case or move to dismiss the *Hoang To* action on first-filed grounds, for the transparent purpose of avoiding an arm's-length negotiation with experienced plaintiffs' counsel intent on negotiating a good deal for class members – which is what they had already come to expect from Plaintiffs' counsel – and to prevent Plaintiffs from uncovering the depth of Defendants' wrongdoing in discovery. When the settlement agreement signed by the *Hoang To* plaintiff and Defendants is eventually submitted for approval, Plaintiffs and their counsel fully expect that its terms will be the same (or worse) than the terms of one of Defendant's prior settlement offers that Plaintiffs in this case had previously rejected.

After the filing of this motion, Plaintiffs intend to file a motion in the Northern District of California to intervene and to dismiss, or alternative stay or transfer, the *Hoang To* action.

## ARGUMENT

What transpired here is offensive to the adversarial system and threatens to prejudice hundreds of thousands of affected class members. This Court need not go along. The Court should appoint Hedin LLP as interim counsel to protect the interests of the classes in this litigation.

Federal Rule of Civil Procedure 23(g)(3) provides: "The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." In cases where multiple overlapping and duplicative cases have been filed, "designation of interim class counsel is encouraged, and indeed is essential for efficient case management." *Morrison v. Fam. Dollar Stores, Inc.*, No. 24-cv-60294, 2024 WL 3312055, at *1 (S.D. Fla. June 11, 2024) (citing MANUAL FOR COMPLEX LITIGATION §21.11 (4th ed. 2004)). Federal Rule of Civil Procedure 23(g)(1)(A) provides criteria for courts to consider in deciding whether to appoint interim class counsel:

> (a) the work counsel has done in identifying or investigating potential claims in the action;
>
> (b) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (c) counsel's knowledge of the applicable law; and
>
> (d) the resources that counsel will commit to representing the class.

*Id*. The Court may also "consider other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Each of these factors weighs in favor of appointing Hedin LLP to represent the proposed classes on an interim basis in this matter.

## I. Hedin LLP Has Thoroughly Identified and Investigated the Claims in This Litigation.

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

MOORE'S FEDERAL PRACTICE §23.120(3)(a) (3d. Ed. 2007).

Prior to filing suit, Hedin LLP performed an extensive and time-consuming investigation into the conduct underlying Plaintiffs' claims over a period of several years (dating back to 2019), demonstrating the firm's commitment to fairly and adequately representing the proposed classes.

Hedin Decl. ¶ 12.  Specifically, the attorneys at Hedin LLP (i) thoroughly investigated and reviewed current and historical versions of Defendants' data cards publicly accessible on Nextmark.com and other data-brokerage websites, over a period of several years dating back to 2019; (ii) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (iii) consulted with a digital forensics expert to investigate Defendants' numerous websites and their use of tracking technologies on those website, including parsing through Defendants' websites' source code; (iv) researched whether Defendants' use of tracking pixels violated the VPPA; (v) communicated with and reviewed materials provided by numerous potential clients who interacted with and made purchases on Defendants' websites, in order to determine whether they were capable of adequately representing the interests of the proposed classes; (vi) investigated the adequacy of the named Plaintiffs to represent the putative classes and executed engagement agreements to represent them in this matter; and (vii) prepared the Class Action Complaint on behalf of the proposed classes. Hedin Decl. ¶ 12. These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state the courts should consider in appointing interim class counsel.

Moreover, since the filing of this action, Plaintiffs' counsel at Hedin LLP have vigorously litigated this action on behalf of the proposed classes, including by serving comprehensive written discovery requests to Defendants, serving notices of deposition on each of Defendants' corporate representatives, serving third-party subpoenas for documents and deposition testimony to relevant third parties, consulting with potential experts, and preparing motions and other filings on behalf of the proposed classes.  Hedin Decl. ¶ 13.  At the same time, Plaintiffs' counsel engaged in extensive settlement discussions with Defendants' counsel, including at an all-day mediation before Judge Holderman of JAMS. Hedin Decl. ¶¶ 15–17.  Prior to the mediation, Plaintiffs' counsel obtained and thoroughly reviewed materials provided by Defendants' counsel concerning the size of the putative classes and any applicable policies of insurance.  Hedin Decl. ¶ 14. Plaintiffs' counsel prepared and exchanged with Judge Holderman and Defendants' counsel a comprehensive mediation statement in advance of the mediation. Hedin Decl. ¶ 15.  Although a settlement was not reached at the mediation, negotiations overseen by Judge Holderman continued after the mediation, right up until the point when Defendants decided to find a negotiating partner more to their liking. Hedin Decl. ¶ 17.  Appointing Hedin LLP as interim

class counsel at this juncture will put counsel experienced in prosecuting data privacy class actions at the helm of this litigation, and will enable any future settlement negotiations to proceed in an arm's-length, non-collusive manner going forward. Hedin Decl. ¶ 30.

The Advisory Committee Notes also contemplate that an appointment of interim class counsel may be necessary to conduct discovery prior to a determination on class certification pursuant to Rule 23(c)(1). *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003). The Advisory Committee Notes further state, "[o]rdinarily such work is handled by the lawyer who filed the action." *Id*. Here, a significant amount of discovery ***must*** occur (and related motion practice will likely be necessary) prior to class certification and trial. *See id.* Discovery in this matter will be complex, nuanced, and require substantial specialized knowledge and experience to perform effectively and efficiently. Hedin Decl. ¶ 30. Hedin LLP's thorough investigation into the claims, as well as the firm's experience prosecuting prior similar matters (discussed further below), will enable it to effectively build and prosecute this case on behalf of the Classes, including in discovery and related motion practice. *Id.*

Accordingly, the first Rule 23(g) factor weighs heavily in favor of appointing Hedin LLP as interim class counsel on behalf of the putative Classes in this matter.

## II.     Hedin LLP's Has a Proven Track Record and Substantial Knowledge of the Applicable Law.

Hedin LLP has significant experience successfully prosecuting complex class actions, including for violation of similar data privacy statutes, and brings substantial knowledge of the relevant legal and factual issues to bear for the classes' benefit in this action.

Since the firm's founding in 2018, courts have recognized Hedin LLP's "extensive experience in class actions," *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) (Moore, J.), and have regularly noted the quality of the firm's work on behalf of its clients. *See, e.g.*, *Groover v. Prisoner Transp. Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) (Bloom, J.) (noting that the firm "provided excellent and thorough representation in a case that was exceptionally time-consuming").[7] Hedin LLP's firm resume is attached as Exhibit 1 to the Hedin Declaration.

---

[7]     The firm's representation in this matter was *pro bono* and counsel was appointed by the Court pursuant to the Southern District of Florida's Pro Bono Assistance Program.

Hedin LLP focuses on consumer and data privacy class actions and its lawyers have successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y.) (same, $50 million non-reversionary class settlement); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million non-reversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America,*

*N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class settlement). Hedin Decl. ¶¶ 4-6.[8]

Notably, Hedin LLP has significant experience litigating data-privacy class actions arising from the same sort of conduct at issue here: the rental, sale, and exchange of consumers' private information in the data-brokerage marketplace, as evidenced by "data cards" (posted publicly on Nextmark and other such websites) in which companies advertise the availability of such data about their customers. Hedin Decl. ¶ 9; *see e.g.*, *Horton*, 380 F. Supp. 3d 679; *Lin*, No. 19-11889; *Schreiber*, No. 22-cv-00188; *Pratt et al. v. KSE Sportsman Media, Inc*., No. 21-cv-11404 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class); *Kain v. The Economist Newspaper NA, Inc.,* No. 21-cv-11807 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class*); Strano v. Kiplinger Washington Editors, Inc.,* No. 21-cv-12987 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $6.8 million all-cash non-reversionary settlement for class).

Hedin LLP is well-suited to continue representing the affected members of the putative classes in this matter given the significant amount of work the firm has performed on this matter to date, as well as the firm's extensive experience prosecuting the other similar consumer data-privacy matters outlined above. *See* Hedin Decl. ¶¶ 4-7, ¶¶ 10-26.

---

[8]     The firm has also served as class counsel in securities class actions in state and federal courts throughout the country, as well as regularly represented indigent litigants on a *pro bono* basis. Hedin Decl. ¶¶ 7-8.

Accordingly, the second and third Rule 23(g) factors weigh heavily in favor of appointing Hedin LLP as interim class counsel on behalf of the putative classes in this matter.

### III.    Hedin LLP Has Committed and Will Continue to Commit all Resources Necessary to Effectively Prosecute this Action on Behalf of the Classes.

Hedin LLP is a well-established and successful firm and has the resources and personnel necessary to pursue a case of this magnitude, as it has demonstrated in numerous similar class actions. As a result, the firm can fully utilize its resources and knowledge of local practice. *See* Hedin Decl. ¶¶ 4-9, 32-33. The firm has already demonstrated the will and ability to commit all resources necessary (monetary and otherwise) to investigate, develop, and prosecute a strong and well-supported case on behalf of members of the proposed classes, and to begin responsibly exploring potential resolutions on their behalf. *See* Hedin Decl. ¶¶ 13-18. The firm's resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will allow it to streamline and effectively prosecute the litigation and thus, be of great value to the putative classes. Hedin Decl. ¶¶ 32-33.

Hedin LLP draws from a team of highly experienced attorneys, including those with the trial experience necessary to present this case to a jury at trial, who are dedicated to representing the classes' interest in this litigation, as well as supporting non-lawyer professionals and staff. *Id.* As such, courts and mediators have lauded the resources and commitment of the firm in representing clients in class action cases. For instance, United States District Judge Beth Bloom of the Southern District of Florida, has recognized the "excellent and thorough representation" provided by Hedin LLP, including in "exceptionally time-consuming" cases. *Groover*, 2019 WL 3974143, at *2. The same is true with respect to this action. If appointed to represent the classes, Hedin LLP will continue to commit the same resources and effort to this case as it has committed to its other, successful class action matters. Hedin Decl. ¶¶ 32-33.

Accordingly, the fourth and final Rule 23(g) factor weighs heavily in favor of appointing Hedin LLP as interim class counsel on behalf of the putative classes in this matter.

### IV.    Additional Factors Favor Appointing Hedin LLP.

In addition to the Rule 23(g)(1)(A) factors, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Several additional factors support appointment of Hedin LLP as interim class counsel. First, appointing the firm as interim class counsel would give members of the

proposed classes the benefit of sophisticated and experienced counsel who, as discussed above, has a track record of achieving landmark results in data privacy class actions. Second, through its significant experience prosecuting complex class actions, Hedin LLP has developed significant relationships with industry experts, regulatory personnel, and settlement administration experts. Hedin Decl. ¶ 32. Third, Hedin LLP employs attorneys with extensive trial experience, and thus has the ability to take this case to trial on behalf of the classes if necessary. *Id.*

Additionally, a significant amount of the discovery critical to the classes' claims in this case is in the possession of third parties, including Meta and Data Axle, both of which Plaintiffs' counsel recently subpoenaed. Hedin Decl. ¶ 31. As Plaintiffs' counsel is keenly aware from prior experience in similar data-privacy matters, it is critically important that these third parties, and any others with materials relevant to this litigation, continue to preserve all such materials in their possession, custody, or control, and that Defendants' filing of the motion to stay in this action and the *Hoang To* plaintiff's filing of motions in support of approval of his proposed class-wide settlement in the Northern District of California do not result in these third parties disregarding their preservation obligations with respect to such materials. *Id.* If appointed interim counsel, Hedin LLP will ensure such materials are fully preserved and promptly produced. *Id.*

Finally, the bench and bar have recognized the importance of considering diversity as a relevant factor in selecting interim class counsel. *See e.g., In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2024 WL 2959279, at *5 (D. Nev. June 12, 2024) ("A proposed team's diversity is a factor the Court can consider in appointing interim class counsel."); *see also In re Stubhub Refund Litig.*, No. 20-MD-02951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020) (appointing as co-lead interim counsel applicants who "demonstrated careful attention to creating a diverse team"); *In re Robinhood Outage Litigation*, No. 20-CV-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) (noting the need for diversity and how "the attorneys running this litigation should reflect the diversity of the proposed national class"); *City of Providence, R.I. v. AbbVie Inc.*, 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020). Several of the attorneys at Hedin LLP are members of underrepresented groups, and the firm is committed to ensuring that a diverse set of attorneys work on each of the firm's matters, including this matter. *See* Hedin Decl. ¶ 32 & *id.,* Ex. 1 (firm resume, biographies of each of the firm's attorneys).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court appoint Hedin LLP to serve as interim class counsel on behalf of the putative classes in this matter pursuant to Rule 23(g).

As noted above, pursuant to Local Rule 7.1(a)(3), undersigned counsel conferred on October 24, 2024 with Defendants' counsel, who indicated that Defendants oppose this motion. Also on October 24, 2024, Plaintiffs' counsel attempted to contact by telephone, and then emailed, counsel of record for the plaintiff in the *Hoang To* action to ascertain their client's position on this motion. One of the plaintiff's counsel of record in that matter, Adrian Barnes, responded by stating that he could not provide a position on the motion because he was not sufficiently familiar with the litigation and that all of the other counsel of record for his client were unavailable until October 28, 2024, the day Defendants' counsel has indicated that the plaintiff in *Hoang To* intends to move for preliminary approval of the proposed settlement that threatens to prejudice members of the classes. [9]  Hedin Decl. ¶ 28.

Date: October 27, 2024

Respectfully submitted,

**HEDIN LLP**

*/s/ Frank S. Hedin*

Frank S. Hedin (FBN: 109698)
Arun G. Ravindran (FBN: 66247)
Julie Holt (FBN: 95997)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com
            aravindran@hedinllp.com
            jholt@hedinllp.com

---

[9]     Upon the filing of this motion, undersigned counsel will immediately serve counsel in the *Hoang To* action with a copy of the motion, its exhibits, and the accompanying Hedin Declaration and exhibits thereto.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

*/s/ Frank S. Hedin*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

|  |  |
|---|---|
| DOUGLAS FELLER; JEFFRY HEISE; and JOSEPH MULL, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 0:24-cv-61444 |
| v. | Hon. Rodolfo A. Ruiz II |
| ALLIANCE ENTERTAINMENT, LLC; AND DIRECTTOU, LLC D/B/A COLLECTORS' CHOICE MUSIC, CRITICS' CHOICE VIDEO, MOVIES UNLIMITED, DEEPDISCOUNT, AND WOW HD, | |
| Defendants. | |

## <u>DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL</u>

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. §1746 and based on my own personal knowledge, that the following statements are true:

1.      I am the founding partner at the law firm Hedin LLP and a member in good standing of the Florida Bar and the State Bar of California, and I submit this declaration in support of Plaintiffs' motion for appointment of interim class counsel.

3.      From 2012 to 2013, I served as law clerk to the Honorable William Q. Hayes, U.S. District Judge for the Southern District of California. I then worked for four years at a law firm in Miami, Florida, where I represented plaintiffs and defendants in general commercial litigation and intellectual property matters.

4.      I co-founded Hedin LLP, previously known as Hedin Hall LLP, in 2018.  Based in Miami, Florida, with offices in San Francisco, California, and Washington D.C., Hedin LLP focuses on consumer and data privacy class actions and has successfully prosecuted dozens of

such matters in state and federal courts as court-appointed class counsel. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y.) (same, $50 million non-reversionary class settlement); *Kokoszki v. Playboy Enters., Inc*., No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc*., No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc*., No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.)

(same, $10 million non-reversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class settlement). Over the past five years alone, the firm has recovered over $400 million in all-cash relief for the classes it has represented. *See* **Exhibit 1** hereto.

5.        Hedin LLP also regularly serves as class counsel or lead plaintiffs' counsel in matters that turn on novel questions of first impression pertaining to the rights of consumers under state statutes, as well as the constitutional issues (standing and otherwise) that often arise during the prosecution of such matters in federal court. For example, in data-privacy class actions against publishers for violation of Michigan's Preservation of Personal Privacy Act ("PPPA"), Mich. Comp. Laws § 445.771 *et. Seq.*, based on their alleged disclosure of subscribers' information to

third parties, Hedin LLP obtained groundbreaking decisions on two important issues that dramatically expanded the scope of the statute and led to the recovery of meaningful relief for consumers throughout Michigan. *See id.* (citing *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018) (holding, despite prior district court decision to the contrary on the same issue, that the version of the PPPA in effect prior to its July 2016 amendment applied to claims filed after the amendment's effective date); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *4 (E.D. Mich. Jan. 16, 2020) (holding that Michigan-based publishers may be held liable for disclosing the data of all of their subscribers, even those outside Michigan)).

6.     Additionally, our attorneys have obtained multiple noteworthy victories for consumers on issues of first impression in litigation against Google and Shutterfly under an Illinois statute, the Biometric Information Privacy Act ("BIPA"), which opened doors for consumers throughout the state to recover relief under that statute. *See e.g.*, *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015) (holding that scans of face geometry collected from photographs constitute "biometric identifiers" within the meaning of BIPA); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) (holding that neither the presumption against extraterritoriality nor the dormant commerce clause bars BIPA's application to the collection of Illinoisans' biometrics from devices within Illinois); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *8 n.5 (N.D. Ill. Sept. 15, 2017) (holding that the nonconsensual collection of a scan of face geometry, a bare violation of BIPA, is a concrete and particularized injury sufficient to confer Article III standing)).

7.     My firm has also served as class counsel or plaintiffs' counsel in securities class actions in state and federal courts throughout the country. *E.g.*, *In re Menlo Therapeutics Inc. Sec. Litig.*, No. 18CIV06049 (Cal. Super. Ct., San Mateo Cty.) (class settlement on behalf of IPO

investors finally approved); *In re EverQuote, Inc. Secs. Litig.*, No. 651177/2019 (N.Y. Supreme, N.Y. Cty.) (class settlement on behalf of IPO investors finally approved); *Plymouth Cty. Ret. Sys. v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Super. Ct., N.Y. Cty.) (co-lead counsel for plaintiff class of investors asserting Securities Act claims arising from initial and secondary public offerings).

8.      We also frequently represent indigent litigants on a *pro bono* basis. *E.g.*, *Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla.) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

9.      Notably, my firm has substantial experience litigating data-privacy class actions arising from the same sort of conduct at issue here: the rental, sale, and exchange of consumers' private information in the data-brokerage marketplace, as evidenced by "data cards" (posted publicly on Nextmark and other such websites) in which companies advertise the availability of such data about their customers. *See e.g.*, *Horton*, 380 F. Supp. 3d 679; *Lin*, No. 19-11889; *Schreiber*, No. 22-cv-00188; *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class); *Kain v. The Economist Newspaper NA, Inc.,* No. 21-cv-11807 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class*); *Strano v. Kiplinger Washington Editors, Inc.,* No. 21-cv-12987 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in

violation of PPPA, where firm negotiated $6.8 million all-cash non-reversionary settlement for class).

10.     My firm has devoted significant time developing, investigating, and commencing the instant action against Defendant for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.  Beginning in 2019, my firm began investigating Defendants' practices of renting, selling, and otherwise disclosing its customer lists, which included names, addresses, titles of videos purchased by, and various demographic and other personal information about each of the persons who made purchases on their websites, and by studying Defendants' practices of transmitting personally identifying information and video-purchase information to Facebook, now known as Meta, via the "Meta Pixel" technology they had installed on their websites.

11.     Specifically, prior to filing this action, my firm: (i) thoroughly investigated and reviewed current and historical versions of Defendants' data cards publicly accessible on Nextmark.com and other data-brokerage websites, over a period of several years dating back to 2019; (ii) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (iii) consulted with experts to investigate Defendants' numerous websites and their use of tracking technologies, including the Meta Pixel technology, on those website, including parsing through Defendants' websites' source code; (iv) researched whether Defendants' use of such tracking pixels violated the VPPA; and (v) communicated with and reviewed materials provided by numerous potential clients who interacted with and made purchases on Defendants' websites, in order to determine whether they were capable of adequately representing the interests of the proposed classes.

12.     After performing this time-consuming pre-filing work, my firm was retained in July 2024 by Douglas Feller, Jeffry Heise, and Joseph Mull to prosecute claims against Defendants for violation of the VPPA on behalf of themselves and others similarly situated, and shortly thereafter prepared and filed the Class Action Complaint on behalf of the proposed classes.

13.     Since the very outset, my firm has vigorously litigated this action on behalf of Plaintiffs and the putative classes, including by serving comprehensive written discovery requests to Defendants, serving notices of deposition to Defendants' corporate representatives, serving third-party subpoenas for documents and deposition testimony to relevant third parties, consulting with potential experts, and preparing motions and other filings.  The parties' Rule 26 conference occurred on August 30, 2024, the Rule 26 conference report was field on September 9, 2024, and the Court entered its first Order Setting Jury Trial on September 10, 2024.  On September 12, 2024, Plaintiffs' counsel served Plaintiffs' first sets of requests for production of documents and interrogatories on Defendant, seeking razor-focused categories of information, documents, communications, and electronically-stored information concerning each of the factual and legal issues relevant to their claim for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23.  On September 13, 2024, Plaintiffs' counsel served notices of deposition of Defendants' corporate representatives for November 15, 2024.

14.     On September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore early class-wide resolution of this action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago), formerly a district judge in the Northern District of Illinois, on the condition (negotiated by Hedin LLP) that Defendants would agree to provide various information and

materials to them in advance of the mediation that were necessary for us to intelligently negotiate on behalf of members of the putative classes. This information and material included the precise sizes of the two classes, the form and contents of the personally identifying and video purchase-related information pertaining to Plaintiffs and class members that Defendants transmitted to the various third-party recipients of the information during the applicable statutory period, and all applicable or potentially applicable policies of insurance.

15.    Ahead of the parties' mediation scheduled for October 10 before Judge Holderman, my firm prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on various legal and factual issues relevant to the merits of the claims and defenses and issues of class certification. My firm and Defendants' counsel also participated in a lengthy pre-mediation conference with Judge Holderman. During that conference, Defendants' counsel informed Plaintiffs' counsel that no settlement discussions had occurred between Defendants and the plaintiff in the second-filed *Hoang To* action pending in the Northern District of California.

16.    On October 10, 2024, following our receipt of information and materials from Defendants bearing, *inter alia*, on issues of class size and insurance, the parties participated in a full day of mediation before Judge Holderman. Although we mediated for nearly a full day, we were unable to reach a proposed class-wide settlement at the mediation and Judge Holderman declared an impasse.

17.    For over more than a week following the mediation, the parties, with the continued assistance of Judge Holderman, continued to engage in what my colleagues and I (and Judge Holderman) believed at the time to be good-faith settlement negotiations. Specifically, on October 16, 2024, six days after the parties' mediation, I exchanged e-mail correspondence and

then spoke by telephone with Judge Holderman, during which I asked Judge Holderman to convey a settlement demand to Defendants' counsel, which I believed would meaningfully advance the parties' progress towards a proposed resolution on behalf of the classes. Later that same day, after presenting Plaintiffs' demand to Defendants' counsel by phone, Judge Holderman telephoned me to convey a counter settlement offer that Defendants had authorized him to convey. Over the next two days, I spoke by phone and exchanged e-mail correspondence with Judge Holderman on multiple occasions concerning Defendants' latest settlement offer, and on October 18, 2024, I conveyed another counter settlement demand to Judge Holderman and asked that he present it to the Defendants' counsel. Later that same day, Judge Holderman sent me an e-mail confirming that he had presented Plaintiffs' latest demand to Defendants' counsel by phone. I followed up with Judge Holderman on October 22, 2024, and yet again on October 23, 2024, to see whether he had received any response from Defendants' counsel, and on both occasions Judge Holderman advised me that he had telephoned Defendants' counsel but had received no answer, that he had left voicemails for them but had still not heard back from them, and that he would try to contact Defendants' counsel yet again on October 24, 2024.

18.    At the same time as these settlement discussions overseen by Judge Holderman were occurring, my colleagues and I also continued to push this case forward on multiple fronts. Immediately following the conclusion of the mediation on October 10, 2024, Arun G. Ravindran of my firm confirmed with Defendant that the agreed-upon discovery stay (which had been in effect since the date the parties agreed to mediate) had ended. On October 14, 2024, Mr. Ravindran counsel served a third-party subpoena for documents and deposition testimony to Meta on Defendants' counsel by e-mail, and then promptly arranged for the subpoena to be formally served on Meta. On October 16, 2024, Meta served its initial responses and objections to the

subpoena and, later that same day, I initiated a meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena. On October 19, 2024, I conferred further with Meta's counsel concerning the timing of its deposition in this matter. On October 17, 2024, I served a third-party subpoena for documents to Data-Axle Inc. (a data company that, as our investigation had revealed, served as one of Defendant's list managers and/or brokers during the relevant statutory period) on Defendants' counsel by e-mail, and then promptly arranged for formal service of the subpoena on Data-Axle, setting a deadline for Data-Axle to respond of November 18, 2024. On October 25, 2024, Mr. Ravindran exchanged correspondence with counsel for Data Axle regarding Data Axle's response to the subpoena and production of documents.

19.    Additionally, over the course of a 10-day period beginning on October 14, 2024, continuing through October 24, 2024, my colleagues and I repeatedly attempted to schedule a meet and confer conference with Defendants' counsel concerning, inter alia: (1) Defendants' position on a motion for appointment of interim counsel that Plaintiffs' counsel had advised Defendants' counsel it intended to file; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in that case and whether it would seek to dismiss, stay, or transfer the case on the grounds that it had previously articulated (namely, that it was duplicative of this earlier-filed case); and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that Plaintiffs' counsel had indicated it would file to protect the interests of class members in the event DirectToU, LLC, the defendant in that case, did not intend to seek such relief in response to the plaintiff's complaint.

20.    First, on October 14, 2024, Mr. Ravindran of my firm **made the first of several requests to confer** on Defendants' position regarding the *Hoang To* case. **Exhibit 2** hereto, at 9;

**Exhibit 3** hereto, at 1. Having received no response, on October 14, 2024, Mr. Ravindran again requested to confer on the *Hoang To* case with Defendants' counsel. Still having received no response, on October 15, 2024, Mr. Ravindran **again requested** to meet and confer with Defendants' counsel that week (e.g., the week ending October 18, 2024), both with respect to Defendants' intentions with respect to the duplicative *Hoang-To* matter and on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel in this case. Ex. 2 at 5. Plaintiffs' counsel followed up that same day seeking to meet and confer on Defendants' position on Plaintiffs' forthcoming motion to be appointed interim class counsel. **Exhibit 4** hereto, at 1. Later on October 15, 2024, Defendants' counsel inexplicably responded to Plaintiffs' counsel by asking for "a description of the substance" of the conference being requested. Ex. 2 at 4–5. Plaintiffs' counsel immediately responded, stating:

1. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.

2. Defendants' intent with respect to the *Hoang* matter. Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL. Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

Ex. 2 at 4.

21. On October 16, 2024, Defendants' counsel responded to our e-mail correspondence by stating that she would confer with her client. Ex. 2 at 3. Later that day, Plaintiffs' counsel followed up with Defendants' counsel once more – again, simply to propose a date to have a meet and confer conference on these issues. **Exhibit 6** hereto, at 1. Again, Defendants' counsel responded that she would reply with her clients' position at some unspecified future date.

22. On October 21, 2024, having still not received Defendants' positions on these

issues or their availability for a meet and confer call, Plaintiffs' counsel advised Defendants' counsel that Plaintiffs would file a motion seeking interim appointment as class counsel without waiting any further, likely on Wednesday October 23, 2024, and that they would also file a motion to intervene in the *Hoang To* matter and move to dismiss that case under the first filed doctrine. Ex. 2 at 3.

23.     Defendants' counsel did not respond to that communication and, later that day, Plaintiffs' counsel sent another e-mail to Defendants' counsel regarding Defendants' incomplete initial disclosures, and **again sought to confer telephonically on October 22, 2024**.  **Exhibit 5** hereto, at 2.  Once more, Defendants' counsel refused to schedule a conferral and punted, stating again they would need to discuss with their clients.

24.     On October 23, 2024, Plaintiffs' counsel sent Defendants' counsel a summary of their attempts to meet and confer by email.  Ex. 5 at 1-2.  Plaintiffs' counsel also left voicemails to each of Defendants' counsel of record, all of which went unreturned.

25.     The next day, Defendants' counsel responded by stating: "Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you." Ex. 5 at 1. I then sent an e-mail to Defendants' counsel, stating as follows:

> Bonnie: We will be filing our motion for interim appointment today. And in the motion we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

Ex. 2 at 2.

26.     In response to my e-mail – which, again, came after 10 days of Defendants' counsel ignoring Plaintiffs' counsel's repeated efforts to communicate with them concerning each

of these important issues, and after five days of also ignoring Judge Holderman's repeated efforts to communicate with them as well (as recounted above) – Defendants' counsel finally agreed to meet and confer on these issues with Plaintiffs' counsel by phone later that afternoon. During this October 24, 2024, phone call, Defendants' counsel informed Plaintiffs' counsel that Defendants had executed a class-wide settlement agreement with the counsel for the *Hoang To* plaintiff the day before (October 23, 2024), that the proposed settlement memorialized in that signed agreement purports to release the claims of all putative class members in the instant action (even though only the proposed classes in the *Hoang To* action are only a small subset of the proposed classes here), that those releases will cover both of the Defendants in this action (even though only one of the Defendants here is named in the *Hoang To* action), that the plaintiff in the *Hoang To* action would be filing a motion for preliminary approval on or about Monday, October 28, 2024, and that Defendants would be filing a motion to stay the instant action pending resolution of the motion for preliminary approval in the *Hoang To* action. At no time on the call or otherwise did Defendants' counsel ever request Plaintiffs' position on Defendants' forthcoming motion to stay this action. And when Plaintiffs' counsel asked Defendants' counsel to provide them with a copy of, or to at least disclose the terms of, the class-wide settlement agreement that had been signed between Defendants and the *Hoang To* plaintiff and his counsel – information obviously necessary for Plaintiffs and their counsel to assess whether the settlement agreement provides fair, reasonable, and adequate relief to class members, and thus to determine whether they would oppose Defendants' forthcoming motion to stay this matter or not – Defendants' counsel flatly refused without explanation. Plaintiffs' counsel also indicated that they would nonetheless be filing the instant motion for appointment of interim counsel as well as a motion to intervene and to stay or dismiss the *Hoang To* action on first-filed doctrine grounds,

and Defendants' counsel stated that Defendants would oppose both motions. Later in the day following this call with Defendants' counsel, I spoke with Judge Holderman by phone, who indicated he had just finally gotten ahold of Defendants' counsel and they had just then advised him of the settlement agreement they had signed with the *Hoang To* plaintiff's counsel.

27.     Almost immediately after our call with Defendants' counsel ended on October 24, 2024, Defendants filed their motion to stay this action pending resolution of the motion for preliminary approval of a class-wide settlement agreement that the plaintiffs would be filing in the *Hoang To* action pending in the Northern District of California. The motion to stay states, in pertinent part, that the parties in the *Hoang To* action signed a class-wide settlement agreement "on October 23, 2024" (ECF No. 36 at 2), that the "[t]he settlement reached in the *Hoang To* action would, if approved by the Court, cover all claims asserted in this [*Feller*] case" (*id.* at 1), that "the *Hoang To* settlement is expected the release the claims of all putative class members in this [*Feller*] case" (*id.* at 4), and that "a motion for preliminary approval of the proposed settlement will be filed early next week" in the *Hoang To* case (*id.* at 2).

28.     Later in the day on October 24, 2024, I telephoned (but received no answer) and then emailed all counsel of record for the plaintiff in the *Hoang To* action in an effort to meet and confer on their position on this motion. *See* **Exhibit 7** hereto. Counsel of record for the plaintiff in the *Hoang To* action, Adrian Barnes, responded that he was not familiar enough with the litigation to provide his client's position on these issues, and that the other counsel of record for his client were unavailable until Monday October 28, 2024, because of the observation of a religious holiday. *See id.*

29.     The reverse auction that Defendants and their counsel have transparently orchestrated of the classes' claims in this litigation, and the willingness with which the plaintiff

and his counsel in the *Hoang To* action appear to have gone along with it, as described above, is easily the most underhanded conduct that Plaintiffs' counsel has witnessed in his 10-year career as a lawyer practicing in this area of law.

30.     In addition to the work my firm has already performed in this matter, as noted above, a significant amount of litigation, including discovery, ***must*** occur prior to class certification and trial in this case. Discovery in this matter will be complex, nuanced, and require substantial specialized knowledge and experience to perform effectively and efficiently. My firm's thorough investigation into the claims in this case, as well as its experience prosecuting numerous other similar data-privacy matters, will enable it to effectively build and prosecute this case on behalf of the classes, including in discovery, motion practice, at class certification, and through trial and any appeals if necessary.  Appointing Hedin LLP as interim class counsel at this juncture will enable the litigation and any settlement negotiations to continue in an arm's-length, non-collusive manner, with experienced counsel devoted to protecting the interests of the putative classes at the helm.

31.     Notably, a significant amount of the discovery critical to the classes' claims in this case is in the possession of third parties, including Meta and Data Axle, both of which my firm recently subpoenaed.  It is critically important that these third parties, and any others with materials relevant to this litigation, continue to preserve all such materials in their possession, custody, or control, and that Defendants' filing of a motion to stay this action and the *Hoang To* plaintiff's filing of motions in support of approval of his proposed class-wide settlement in the Northern District of California does not result in these third parties disregarding their preservation obligations with respect to such materials.

32.     Hedin LLP draws from a team of highly experienced attorneys dedicated to representing plaintiffs in complex class action litigation with extensive experience in the Southern District of Florida and nationally, as well as non-lawyer professionals and support staff. My colleagues Julie Holt and Arun Ravindran, both of whom are based in the firm's Miami, Florida and are members in good standing of the Florida Bar, have worked and will continue to work with me on the prosecution of this matter. *See* Ex. 1 (biographies for Ms. Holt and Mr. Ravindran).    Mr. Ravindran and Ms. Holt also have extensive trial experience and are well-equipped to present this case to a jury at trial on behalf of the classes if necessary.  My firm has ample resources to devote to this litigation to ensure it is effectively prosecuted on behalf of the proposed Class. These resources are not merely financial, but also include the substantial expertise and work-product that my firm has developed in the course of prosecuting other similar matters over the past several years, as well as our long-standing relationships with industry experts, regulatory personnel, and reputable settlement administration experts. If appointed to represent the putative classes in this matter, my firm will continue to commit all of the necessary resources – monetary and otherwise – to most efficiently and effectively prosecute this case on behalf of members of the proposed classes. Finally, everyone at my firm recognizes the importance of having a diverse group of attorneys work on behalf of our clients and the classes of persons we represent. More than half of the attorneys at Hedin LLP are members of underrepresented groups and we remain committed to employing a diverse group of attorneys to work on behalf of the members of the classes in this litigation going forward.

33.     My firm is well suited to continue representing the Plaintiffs and members of the proposed classes, and we remain committed to protecting their interests in this litigation.

    I declare under penalty of perjury pursuant to the laws of the United States of America

that the foregoing is true and correct. Executed this 27th day of October 2024, in Miami, Florida.

Frank S. Hedin

EXHIBIT 1



## FIRM RÉSUMÉ

Based in Miami, Florida, and with offices in San Francisco, California and Washington, D.C., Hedin LLP represents consumers and investors in class actions in state and federal courts nationwide. Our firm prosecutes difficult cases aimed at redressing injuries suffered by large, diverse groups of people. Over the past six years alone, we have recovered hundreds of millions of dollars and other meaningful relief for the consumers and investors we have had the privilege to represent.

---

### Representative Matters

**Notable examples of our work on behalf of consumers include:**

- *Rivera, et al. v. Google LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty.) (class counsel in action alleging unauthorized collection of consumers' biometric data in violation of state statute, negotiated $100 million all-cash non-reversionary settlement for class)

- *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of state statute, negotiated $52.5 million all-cash non-reversionary settlement for class)

- *Olsen, et al. v. ContextLogic Inc.,* No. 2019CH06737 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in action alleging nonconsensual transmission of text messages to consumers' telephones in violation of federal law, negotiated $16 million all-cash non-reversionary settlement for class)

- *In re Everi Holdings, Inc. FACTA Litigation*, No. 18CH15419 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in action alleging unauthorized printing of excess digits of consumer card numbers on transaction receipts in violation of federal law, negotiated $14 million all-cash non-reversionary settlement for class)

# HEDIN LLP

- *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, negotiated $4.95 million settlement for class)

- *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (class counsel in action alleging improper overdraft fees in violation of state law, negotiated $2.7 million settlement for class)

- *Kokoszki v. Playboy Enterpises, Inc.*, No. 19-cv-10302 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of state statute, negotiated $3.8 million all-cash non-reversionary settlement for class)

- *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of state statute, negotiated $9.5 million all-cash non-reversionary settlement for class)

- *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (class counsel in action alleging nonconsensual transmission of text messages to consumers' telephones in violation of federal law, negotiated $10 million all-cash non-reversionary settlement for class)

- *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (class counsel in action alleging nonconsensual transmission of text messages to consumers' telephones in violation of federal law, negotiated $8.5 million all-cash non-reversionary settlement for class)

- *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of state statute, negotiated $9.5 million all-cash non-reversionary settlement for class)

- *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of state statute, negotiated $6.8 million all-cash non-reversionary settlement for class)

- *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of state statute, negotiated $5 million all-cash non-reversionary settlement for class)

# HEDIN LLP

- *Benbow v. SmileDirectClub, Inc.*, No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (class counsel in action alleging nonconsensual transmission of text messages to consumers' telephones in violation of federal law, negotiated $11.5 million all-cash settlement for class)

**Notable examples of our work on behalf of investors include:**

- *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, negotiated $36.5 million all-cash non-reversionary settlement for class)

- *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (counsel in action alleging false and misleading statements to investors in violation of federal securities laws, negotiated $20 million all-cash non-reversionary settlement for class)

- *In re Altice USA, Inc. Sec. Litig.*, No. 711788 (N.Y. Sup. Ct., Queens Cnty.) (counsel in action alleging false and misleading statements to investors in violation of federal securities laws, negotiated $4.75 million all-cash non-reversionary settlement for class)

- *Plutte v. Sea Ltd.*, No. 655436/2018 (N.Y. Sup. Ct., N.Y. Cnty.) (counsel in action alleging false and misleading statements to investors in violation of federal securities laws, negotiated $10.75 million all-cash non-reversionary settlement for class)

- *In re Menlo Therapeutics Inc. Sec. Litig.*, No. 18CIV06049 (Cal. Sup. Ct., San Mateo Cnty.) (counsel in action alleging false and misleading statements to investors in violation of federal securities laws, negotiated $9.5 million all-cash non-reversionary settlement for class)

---



**Attorney Biographies**

**Frank S. Hedin**

Frank S. Hedin, founder of the firm, is a member in good standing of the Florida Bar and the State Bar of California. Mr. Hedin received his Bachelor of Arts from University of Michigan and Juris Doctor, *magna cum laude*, from Syracuse University College of Law. After graduating from law school, he served for fifteen months as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California. Prior to establishing the firm, Mr. Hedin was a partner at a litigation boutique in Miami, Florida, where he represented both plaintiffs and defendants in consumer and data-privacy class actions, employment-related collective actions, and patent and trademark litigation, and served as head of the firm's class action practice.

**Arun G. Ravindran**

Arun G. Ravindran, a member in good standing of the Florida Bar and the New York State Bar, is an accomplished trial lawyer who has tried more than twenty federal cases to jury verdict.  Mr. Ravindran received his Bachelor of Arts from Emory University, an Msc. from the London School of Economics, and his Juris Doctor from Emory University School of Law.  After graduating from law school, he served as Captain and Judge Advocate in the United States Marine Corps, after which he served for one year as law clerk to the Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida. Following his clerkship, Mr. Ravindran served for nearly five years as an Assistant Federal Public Defender in the Southern District of Florida.  Prior to joining Hedin LLP, Mr. Ravindran litigated commercial matters at a prominent Florida law firm.

**Elliot O. Jackson**

Elliot O. Jackson, a member in good standing of the Florida Bar and the New York State Bar, received his Bachelor of Science, *cum laude*, from Fayetteville State University, his Juris Doctor, *cum laude*, from Florida A&M University College of Law, and an L.L.M in fashion law from Fordham University, where he graduated first in his class and received the Judy and Dennis Kenny Award. Prior to joining the firm, Mr. Jackson served for two years as law clerk to the Honorable Mary S. Scriven, United States District Judge for the Middle District of Florida.

# HEDIN LLP

**Tyler K. Somes**

Tyler K. Somes, a member in good standing of the State Bar of Texas and the District of Columbia Bar, received his Bachelor of Arts from The George Washington University and Juris Doctor, *with honors*, from The University of Texas School of Law. After graduating from law school, Mr. Somes worked at a prominent national law firm for several years, where he litigated complex antitrust, whistleblower, securities, and trade secrets matters. During a one-year hiatus from his prior firm, Mr. Somes served as law clerk to the Honorable Richard Wesley of the United States Court of Appeals for the Second Circuit.

**Julie E. Holt**

Julie E. Holt, a member in good standing of the Florida Bar, received her Bachelor of Arts in Economics, *summa cum laude*, from Columbia University and her Juris Doctor from Yale Law School. Prior to joining Hedin LLP, Julie Holt served as an Assistant Federal Public Defender in the Southern District of Florida for eight years. She is an experienced trial lawyer, having tried approximately 30 jury trials and numerous bench trials. In addition to her trial practice, she also represented clients on direct appeal, filing numerous petitions for writ of certiorari to the Supreme Court and arguing in the Eleventh Circuit Court of Appeals.

**Paula S. Buzzi**

Paula S. Buzzi, a member in good standing of the Florida Bar, received her Bachelor of Arts from The University of North Carolina and her Juris Doctor from Syracuse University College of Law. Prior to joining Hedin LLP, Ms. Buzzi was an attorney at a prominent national law firm where she represented commercial clients in transactional matters. At Hedin LLP, Ms. Buzzi's extensive transactional experience offers clients valuable, unique perspectives on case analysis, negotiation and strategy. Ms. Buzzi is a co-founder of the Argentinian-American Bar Association, and she has received a number of honors and distinctions throughout her career as an attorney, including numerous recognitions in leading legal publications.

---

**HEDIN** LLP

**Firm Offices**

| Miami, Florida | San Francisco, California | Washington, D.C. |
|---|---|---|
| 1395 Brickell Avenue | 535 Mission Street | 1100 15th Street NW |
| Suite 610 | 14th Floor | Suite 04-108 |
| Miami, FL 33131 | San Francisco, CA 94105 | Washington, D.C. 20005 |

EXHIBIT 2

**Friday, October 25, 2024 at 12:42:05 Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management |
| **Date:** | Thursday, October 24, 2024 at 10:38:35 AM Eastern Daylight Time |
| **From:** | Frank Hedin |
| **To:** | DelGobbo, Bonnie Keane, Arun Ravindran, Griswold, Joel C. |
| **CC:** | jholt@hedinllp.com, Elliot Jackson, earribas@hedinllp.com |
| **Attachments:** | image001.png, image002.png, image003.png, image004.png, image005.png, image006.png |

Yes. We will circulate a dial-in.

Frank S. Hedin
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 357-2107
Fax: + 1 (305) 200-8801

**From:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Date:** Thursday, October 24, 2024 at 10:34 AM
**To:** Frank Hedin <fhedin@hedinllp.com>, Arun Ravindran <aravindran@hedinllp.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Ok, we can call you this afternoon around 2:30pm CT. Does that work?

**From:** Frank Hedin <fhedin@hedinllp.com>
**Sent:** Thursday, October 24, 2024 9:12 AM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Arun Ravindran <aravindran@hedinllp.com>; Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

No, we're not waiting until Tuesday of next week to meet and confer with you on this. We've been asking you to meet and confer on this for the past 2 weeks, and you have repeatedly ignored us. We will advise the court of your refusal to meet and confer in the motion we file today. Thanks.

Frank S. Hedin
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131

Tel: + 1 (305) 357-2107
Fax: + 1 (305) 200-8801

---

**From:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Date:** Thursday, October 24, 2024 at 10:09 AM
**To:** Frank Hedin <fhedin@hedinllp.com>, Arun Ravindran <aravindran@hedinllp.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Hi Frank,

We just responded to Arun separately. We're happy to set up a call for Tuesday of next week and are pretty flexible on timing that day if you want to let us know what works for you.

Best,
Bonnie

---

**From:** Frank Hedin <fhedin@hedinllp.com>
**Sent:** Thursday, October 24, 2024 9:07 AM
**To:** Arun Ravindran <aravindran@hedinllp.com>; DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Bonnie: We will be filing our motion for interim appointment today. And in the motion we will advise the court that you have refused to meet and confer with us or provide us with your position on our request for interim appointment after numerous e-mails and attempted phone calls over the past week+. If your client is willing to meet and confer with us today before we file, please let us know immediately. Thank you.

Frank S. Hedin
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 357-2107
Fax: + 1 (305) 200-8801

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Date:** Monday, October 21, 2024 at 3:13 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>

**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>,
Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case
Management

Good Afternoon Bonnie,

Following up on the items below.  We will be filing motions regarding items 2 and 3 on
Wednesday and if we are unable to confer before then we will advise the Court that
Defendant's position could not be ascertained.

Thanks,

Arun G. Ravindran
**HEDIN**LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Date:** Wednesday, October 16, 2024 at 12:36 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, Griswold, Joel C.
<jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>,
Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case
Management

Hi Arun,

We are conferring with the client on these issues and will get back to you.

Please confirm we may file Judge Holderman's email as our required mediation report. If you want him
to draft something else as the report, you will need to let him know as soon as possible since it is due
tomorrow.

Thanks,
Bonnie

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Tuesday, October 15, 2024 3:56 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Griswold, Joel C.
<jcgriswold@bakerlaw.com>

**Cc:** Frank Hedin <[fhedin@hedinllp.com](mailto:fhedin@hedinllp.com)>; [jholt@hedinllp.com](mailto:jholt@hedinllp.com); Elliot Jackson <[ejackson@hedinllp.com](mailto:ejackson@hedinllp.com)>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Hi Bonnie,

We disagree that the second week of January works.  As we noted in the motion you referenced – our pleadings amendment deadline of 12.22 contemplates deposing Defendants' corporate rep. before the pleading amendment deadline.  If moving the deposition forward towards the originally noticed 11/15 date helps, we are willing to discuss.

At any rate, here are topics for a meet and confer:

1. Deposition scheduling (as described above and in my prior email)
2. Defendants' position on Plaintiffs' forthcoming motion seeking interim appointment as class counsel.
3. Defendants' intent with respect to the *Hoang* matter.  Specifically, Plaintiff wants to discuss whether Defendant intends to dismiss *Hoang* under the first-filed doctrine or to move to transfer *Hoang* to the SDFL.  Alternatively, we'd like to discuss Defendants' position on a motion by Plaintiffs to intervene in the *Hoang* matter and a potential motion by Plaintiffs to dismiss the *Hoang* case on first filed grounds.

I agree, that the issue of initial disclosures is resolved by Defendants' production of initial disclosures, as represented, on October 21, 2024.

Please let me know when we can confer this week.

Thanks,

Arun G. Ravindran
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** DelGobbo, Bonnie Keane <[bdelgobbo@bakerlaw.com](mailto:bdelgobbo@bakerlaw.com)>
**Date:** Tuesday, October 15, 2024 at 2:59 PM
**To:** Arun Ravindran <[aravindran@hedinllp.com](mailto:aravindran@hedinllp.com)>, Griswold, Joel C. <[jcgriswold@bakerlaw.com](mailto:jcgriswold@bakerlaw.com)>
**Cc:** Frank Hedin <[fhedin@hedinllp.com](mailto:fhedin@hedinllp.com)>, [jholt@hedinllp.com](mailto:jholt@hedinllp.com) <[jholt@hedinllp.com](mailto:jholt@hedinllp.com)>, Elliot Jackson <[ejackson@hedinllp.com](mailto:ejackson@hedinllp.com)>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Hi Arun,

Your motion asks that the class cert discovery deadline be moved to Feb. 7, so the second week of January would still work with that date if your motion is granted.

We've also agreed to make our Rule 26(a) disclosures by 10/21, so I think that issue is resolved.

To the extent you have other issue you wanted to discuss, will you please send us a description of the substance of what you are requesting?

Best,
Bonnie

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Tuesday, October 15, 2024 12:10 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>; jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Good Afternoon Bonnie,

We cannot take the deposition of the Defendants corporate representatives in the second week of January. This is after the deadline for class certification discovery of 1/7. We would be willing to add deposition scheduling to the meet and confer which we requested yesterday, October 14, 2024 and to work with you on nailing down a date in early December. Please let us know your availability to discuss that and the Hoang-To case this week.

Thanks,

Arun G. Ravindran
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Date:** Tuesday, October 15, 2024 at 12:01 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case

Management

Good morning Arun,

The client is not available for deposition in the December timeframe but could be available the second week of January.

Best,
Bonnie

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Monday, October 14, 2024 3:22 PM
**To:** Griswold, Joel C. <jcgriswold@bakerlaw.com>; DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>; jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Great.  Will mark this motion as unopposed and get on file.

Arun G. Ravindran
HEDIN LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Date:** Monday, October 14, 2024 at 4:21 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Thanks, Arun – yes, we agree to these proposed deadlines.

Thanks,

Joel

**Joel Griswold**
Partner

BakerHostetler
One North Wacker Drive | Suite 3700

Chicago, IL 60606-2859
T +1.312.416.6238

jcgriswold@bakerlaw.com
bakerlaw.com



---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Monday, October 14, 2024 3:08 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>; jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Good Afternoon Bonnie and Joel,

Please see attached the proposed order on the Motion to Extend Deadlines.  We are under time pressure to file this motion because the pleading amendment deadline falls one week from tomorrow.  As such, we will be filing this this COB today.  Unless we are able to obtain Defendant's position, we note in our Rule 7.3 conference statement that we were unable to ascertain Defendant's position at the time of filing.

Thanks,

Arun G. Ravindran
HEDIN LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Date:** Monday, October 14, 2024 at 9:34 AM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Thank you.  Please advise on Defendant's position regarding the extension.

Arun G. Ravindran
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Date:** Friday, October 11, 2024 at 4:47 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Hi Arun,

The dates you're proposing below for Plaintiffs' and Defendants' written discovery responses are fine. We'd like until 10/21 for initial disclosures.

We're checking with the client on the other items and will circle back next week.

Best,
Bonnie

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Thursday, October 10, 2024 5:34 PM
**To:** Griswold, Joel C. <jcgriswold@bakerlaw.com>; DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>; jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

[External Email: Use caution when clicking on links or opening attachments.]

Good Evening Bonnie and Joel,

Plaintiffs served initial discovery requests on September 12, 2024.  Plaintiff also provided its Rule 26(a) initial disclosures on September 12, 2024.  Plaintiff agreed to Defendants' request to pause its obligation to respond to discovery on September 17, 2024 pending the mediation.  As such, I calculate the date for Defendants' discovery responses as

**November 4, 2024**.

Defendants served discovery on October 4, 2024 during the agreed discovery pause.  As set forth in my email of October 5, 2024, Plaintiffs understand their discovery response date to **November 11, 2024**, the Monday after November 9, 2024.

Plaintiff requested on September 12, 2024 that Defendant make its Rule 26 initial disclosures by September 19, 2024.  Defendants did not respond to that request.  Plaintiffs request that Defendant make its initial disclosures by **Monday October 14, 2024**.  If Defendant will not produce its initial disclosures by then, Plaintiffs seek to confer.  I am available all day tomorrow.

With respect to the other dates please advise if Defendants have a different view.

Plaintiff will be seeking to modify the deadline to file an amended complaint by 60 days and all other court ordered deadlines by 30 days to account for the roughly one-month period pending mediation.  Please advise Defendants' position.

Further, Plaintiff will be seeking to re-notice Defendants' corporate representative deposition to occur two weeks from November 15, 2024, on or about December 2, 2024. Please let us know availability so we can coordinate the exact date and time.

Thanks very much,
Arun G. Ravindran
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

EXHIBIT 3

**From:** Arun Ravindran aravindran@hedinllp.com
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management
**Date:** October 14, 2024 at 16:34
**To:** Griswold, Joel C. jcgriswold@bakerlaw.com, DelGobbo, Bonnie Keane bdelgobbo@bakerlaw.com
**Cc:** Frank Hedin fhedin@hedinllp.com, jholt@hedinllp.com, Elliot Jackson ejackson@hedinllp.com

AR

HI Joel,

What status hearing are you referencing?

Also, are you or Bonnie available to confer on the Hoang To matter pending in NDCA this week? We're generally available. Wednesday works well if that works on your side?


Thanks,

Arun G. Ravindran

**HEDIN LLP**
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Date:** Monday, October 14, 2024 at 4:27 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Thanks, Arun. Do you have any objection to us requesting that we be allowed to attend the Court status hearing remotely?

Thanks,

Joel

**Joel Griswold**
Partner
**BakerHostetler**
One North Wacker Drive | Suite 3700
Chicago, IL 60606-2859
T +1.312.416.6238

jcgriswold@bakerlaw.com
bakerlaw.com



**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Monday, October 14, 2024 3:22 PM
**To:** Griswold, Joel C. <jcgriswold@bakerlaw.com>; DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>; jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Great.  Will mark this motion as unopposed and get on file.

Arun G. Ravindran
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Date:** Monday, October 14, 2024 at 4:21 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Thanks, Arun – yes, we agree to these proposed deadlines.

Thanks,

Joel

**Joel Griswold**
Partner
_____
<span style="color:red">BakerHostetler</span>
One North Wacker Drive | Suite 3700
Chicago, IL 60606-2859
T +1.312.416.6238

jcgriswold@bakerlaw.com
bakerlaw.com



EXHIBIT 4



**From:** **Arun Ravindran** aravindran@hedinllp.com
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management
**Date:** October 15, 2024 at 14:09
**To:** DelGobbo, Bonnie Keane bdelgobbo@bakerlaw.com, Griswold, Joel C. jcgriswold@bakerlaw.com
**Cc:** Frank Hedin fhedin@hedinllp.com, jholt@hedinllp.com, Elliot Jackson ejackson@hedinllp.com

Hello Bonnie and Joel,

Further, can we discuss on the meet and confer call the mediators report as well as Defendant's position on our firm seeking interim appointment as class counsel? Thanks,

Arun G. Ravindran
HEDIN LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Date:** Tuesday, October 15, 2024 at 1:10 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Good Afternoon Bonnie,

We cannot take the deposition of the Defendants corporate representatives in the second week of January. This is after the deadline for class certification discovery of 1/7. We would be willing to add deposition scheduling to the meet and confer which we requested yesterday, October 14, 2024 and to work with you on nailing down a date in early December. Please let us know your availability to discuss that and the Hoang-To case this week.

Thanks,

Arun G. Ravindran
HEDIN LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** DelGobbo, Bonnie Keane bdelgobbo@bakerlaw.com

EXHIBIT 5

**From:** DelGobbo, Bonnie Keane bdelgobbo@bakerlaw.com  📎
**Subject:** RE: Defendants' Initial Disclosures - Feller et. al., v. Alliance Entertrainment, et. al.
**Date:** October 24, 2024 at 10:04 AM
**To:** Arun Ravindran aravindran@hedinllp.com, Griswold, Joel C. jcgriswold@bakerlaw.com
**Cc:** jholt@hedinllp.com, Frank Hedin fhedin@hedinllp.com, Elliot Jackson ejackson@hedinllp.com

BD

Hi Arun,

Let's get a call on the calendar early next week to discuss the issues you've laid out. We are pretty open on Tuesday, 10/29, so let us know a time that works for you.

Best,
Bonnie

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Wednesday, October 23, 2024 2:57 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** jholt@hedinllp.com; Frank Hedin <fhedin@hedinllp.com>; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Defendants' Initial Disclosures - Feller et. al., v. Alliance Entertrainment, et. al.

Hello Bonnie,
This email is sent pursuant to L.R. 7.1(a) and sets forth Plaintiffs' efforts to meet and confer on two unresolved discovery issues - setting a date certain for Defendants' corporate representatives' depositions and the substance of Defendants' initial disclosures.

10.10.24 – Plaintiffs' counsel seeks proposed availability for Defendants' 30(b)(6) witnesses and offers December 2, 2024.
10.11.24 – Defendants' counsel advises they were checking with client representatives and would be back in touch
10.15.24 – Defendants' counsel advises Defendants' representatives are unavailable in December and proposes the second week of January
10.15.24 – Plaintiffs' counsel requests to discuss by telephone deposition scheduling, filing the mediators report, and Defendants' position on Plaintiffs' counsels' interim appointment motion
10.15.24 – Defendants counsel requests a summary of topics for a meet and confer telephone call
10.15.24 – Plaintiffs' counsel provides a summary and again asks to set a meet and confer call
10.16.24 – Defendants' counsel advises that counsel is speaking with client representatives and would get back to Plaintiffs' counsel
10.16.24 – Plaintiffs' counsel again asks to speak on the telephone to discuss deposition scheduling and proposes the parties discuss on Friday October 18, 2024 at 3:00 p.m.
10.16.24 -  Defendants' counsel advises that counsel is speaking with client representatives and would get back to Plaintiffs' counsel
10.21.24 – Plaintiffs' counsel writes to follow up on Defendants' positions regarding interim appointment and Plaintiffs' intervention in the later-filed *Hoang To* matter in NDCA and advises that Plaintiffs will be filing motions regarding interim appointment and for intervention on Wednesday 10/23 noting Defendants' position could not be ascertained.
10.21.24 – Plaintiffs' counsel requests to meet and confer telephonically at any time on 10.22.24 regarding Defendants' deficient Rule 26(a) disclosures served on 10.21.24.
10.22.24 – Defendants' counsel advises that counsel is speaking with client representatives and would get back to Plaintiffs' counsel regarding the Rule 26(a) disclosures.

As the above summary shows, Plaintiffs had made repeated attempts to confer on these issues before filing motions.  The judge presiding over this case have made clear that conferral is not a "single email exchange between opposing counsel" (ECF No. 27 at 3) and that discovery disputes should not be brought to the Court until the parties "actually speak to one another (in person or via

telephone or videoconference)[.]". With that in mind, Plaintiffs have made repeated attempts to discuss these matters but have been unsuccessful in trying to get Defendants' counsel on the phone to discuss these outstanding issues. We are making a final attempt to discuss Defendant's Rule 26(a) disclosures and deposition scheduling. Please provide a date and time by which Defendants' will be prepared to have a telephone conversation to resolve these matters. **Please note that if these matters are not resolved by COB October 25, 2024, Plaintiffs will be filing any required motions on Monday October 28, 2024**.

Thanks,

Arun G. Ravindran

**HEDIN LLP**
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

**From:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Date:** Tuesday, October 22, 2024 at 2:33 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** jholt@hedinllp.com <jholt@hedinllp.com>, Frank Hedin <fhedin@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Defendants' Initial Disclosures - Feller et. al., v. Alliance Entertrainment, et. al.

Hi Arun,

We will discuss with the clients and circle back.

Best,
Bonnie

---

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Monday, October 21, 2024 10:38 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** jholt@hedinllp.com; Frank Hedin <fhedin@hedinllp.com>; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Defendants' Initial Disclosures - Feller et. al., v. Alliance Entertrainment, et. al.

[External Email: Use caution when clicking on links or opening attachments.]

Good Evening Bonnie and Joel,

Plaintiffs write concerning Defendants' initial disclosures served earlier today, October 21, 2024.

Under Fed. R. Civ. P. 26(a)(i) Defendants are obligated to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use

to support its claims or defenses, unless the use would be solely for impeachment[."

Apart from Plaintiffs and certain third-parties listed in Plaintiffs' initial disclosures, Defendants identified "Corporate Representative of Alliance Entertainment, LLC" and "Corporate Representative, of DirectToU, LLC" as the only persons disclosed under R. 26(a)(i).

Defendant did not identify specific individuals, including individuals involved in their websites' functionality (ECF 26 at 4), party or non-party individuals with knowledge of Defendants' disclosures of customers' PII to third parties, or, indeed, any specific individual at all upon whom Defendants will rely to support its defenses.

Defendants' merely naming "corporate representatives" does not satisfy their Rule 26(a) obligations.  *See e.g., Rogers v. Bank of Am., N.A.*, No. CIV.A. 13-1333-CM-TJ, 2014 WL 4681031, at *6 (D. Kan. Sept. 19, 2014) ("Accordingly, the Court finds that Defendant's mere identification of individuals not by name but by a generic label that could apply to a number of its employees, such as Defendant's "corporate representative" or "records custodian," is not sufficient to satisfy its initial disclosure obligations under Rule 26(a)(1)(A)(i)."); *Hoffman v. MJC Am., Ltd*, No. 4:18-CV-04169-LLP, 2019 WL 4933526, at *6 (D.S.D. Oct. 7, 2019) ("identification of "agents, employees and representatives of the parties" is wholly insufficient to comply with their obligation under Fed. R. Civ. P. 26(a)(1)(A)(i) to identify individuals likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.").

Fed. R. Civ. P. 37(a) applies to non-compliant Rule 26(a) disclosures and provides as follows:
**(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**
**(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
**(B)** may inform the jury of the party's failure; and
**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Plaintiffs request to immediately meet and confer on Defendants' deficient Rule 26(a)(i) initial disclosure.  Plaintiffs made their initial disclosures on September 12, 2024 and requested on September 12, 2024 that Defendant make its Rule 26 initial disclosures by September 19, 2024.  In the interim the parties agreed to mediate.  Immediately upon the mediation reaching an impasse, Plaintiffs requested that Defendant make
its initial disclosures by Monday October 14, 2024 and agreed to  Defendants' request to make their initial disclosures on October 21, 2024.  However, Defendants' disclosures do not comply with Rule 26(a) and Plaintiffs are incapable of determining the specific individuals that have knowledge concerning Defendants' defenses.

Plaintiffs' counsel are generally available all day Tuesday October 22, 2024 to confer.

Regards,
Arun G. Ravindran

HEDIN LLP

1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

---

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

EXHIBIT 6

**From:** DelGobbo, Bonnie Keane  bdelgobbo@bakerlaw.com  📎
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management
**Date:** October 16, 2024 at 13:34
**To:** Arun Ravindran  aravindran@hedinllp.com, Griswold, Joel C.  jcgriswold@bakerlaw.com
**Cc:** Frank Hedin  fhedin@hedinllp.com, jholt@hedinllp.com, Elliot Jackson  ejackson@hedinllp.com

BD

Here is the draft joint mediation report required by the court's order, which will attach the mediator's report required by local rules. Please add your signature block and then send back for us to file, or you can file after adding your signature block.

We will get back to you on the other issues after we've confirmed our clients' position.

**From:** Arun Ravindran <aravindran@hedinllp.com>
**Sent:** Wednesday, October 16, 2024 12:15 PM
**To:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>; Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>; jholt@hedinllp.com; Elliot Jackson <ejackson@hedinllp.com>
**Subject:** Re: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Hello Bonnie,

No objection to Defendant filing the email.

With respect to deposition timing, can we set a time for a telephonic meet and confer regarding deposition scheduling. Plaintiffs intention is to resolve deposition scheduling this week so that if we need to involve the court we can do so as fast as practicable given the deadlines we are up against. Additionally, there is still the issue of Plaintiffs motion for interim appointment and the *Hoang To* case. I propose Friday at 3:00 p.m. Please let me know if that works and I will circulate a dial in.

Thanks,

Arun G. Ravindran
**HEDIN** LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 203-4573
Mob: +1 (321) 537-0029
Fax: + 1 (305) 200-8801

**From:** DelGobbo, Bonnie Keane <bdelgobbo@bakerlaw.com>
**Date:** Wednesday, October 16, 2024 at 12:36 PM
**To:** Arun Ravindran <aravindran@hedinllp.com>, Griswold, Joel C. <jcgriswold@bakerlaw.com>
**Cc:** Frank Hedin <fhedin@hedinllp.com>, jholt@hedinllp.com <jholt@hedinllp.com>, Elliot Jackson <ejackson@hedinllp.com>
**Subject:** RE: Feller, et. al. v. Alliance Entertainment, et. al. - Discovery and Case Management

Hi Arun,

EXHIBIT 7

Friday, October 25, 2024 at 13:14:34 Eastern Daylight Time

| | |
|---|---|
| **Subject:** | Re: Alliance VPPA litigation - meet and confer |
| **Date:** | Thursday, October 24, 2024 at 6:01:13 PM Eastern Daylight Time |
| **From:** | Frank Hedin |
| **To:** | Adrian Barnes |
| **CC:** | jhammond@hammondlawpc.com, pblandler@hammondlawpc.com, acherniak@hammondlawpc.com, Elliot Jackson, Arun Ravindran, jholt@hedinllp.com, Tyler Somes, pbrandler@hammondlawpc.com |
| **Attachments:** | image001.png, image001.png |

Adrian: We will advise the courts that we exchanged correspondence with you, one of the plaintiff's counsel of record in the *Hoang To* action, to confer on our upcoming motions, and that you advised us that you were not familiar enough with the case to provide a position. Normally we would wait to file these motions until after receiving a substantive response from one of the other counsel of record for your client who knows what's going on in the case, but given recent developments that we recently learned about, we will be filing our motions tomorrow to protect the interests of class members in this litigation.

Incidentally, the email address I used for Ms. Brandler in my e-mails below, which you have now advised me is incorrect, is an e-mail address I copied and pasted from the signature block at the heading of the operative complaint in the *Hoang To* action -- so you may want to consider correcting that. I have added Ms. Brandler's correct e-mail address, provided by you below, to this thread.

Thanks.

Frank

Frank S. Hedin

**HEDIN LLP**
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 357-2107
Fax: + 1 (305) 200-8801

**From:** Adrian Barnes <abarnes@hammondlawpc.com>
**Date:** Thursday, October 24, 2024 at 5:38 PM
**To:** Frank Hedin <fhedin@hedinllp.com>
**Cc:** jhammond@hammondlawpc.com <jhammond@hammondlawpc.com>,
pblandler@hammondlawpc.com <pblandler@hammondlawpc.com>,
acherniak@hammondlawpc.com <acherniak@hammondlawpc.com>, Elliot Jackson
<ejackson@hedinllp.com>, Arun Ravindran <aravindran@hedinllp.com>,
jholt@hedinllp.com <jholt@hedinllp.com>, Tyler Somes <tsomes@hedinllp.com>
**Subject:** Re: Alliance VPPA litigation - meet and confer

Frank,

I am, unfortunately, not familiar enough with this case to answer your questions. I cannot consult with my colleagues who are familiar with this case given that they are observing Jewish holidays. If you would like to discuss these issues with my colleagues and to understand my firm's position you will have to wait until Monday.

Adrian

NB. Ms. Brandler's correct email address is pbrandler@hammondlawpc.com

Adrian Barnes
Counsel
HammondLaw, PC
1201 Pacific Avenue
Suite 600
Tacoma, WA 98402
Main: 206-707-9366, 310-807-1666
Direct: 510-316-9926
Facsimile: 310-295-2385

This email message, including any attachments, is from an attorney with HammondLaw, P.C.  It is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.

If you are not the intended recipient, please contact the sender by reply email and immediately destroy all copies of the original message.  Thank you.


On Thu, Oct 24, 2024 at 1:55 PM Frank Hedin <fhedin@hedinllp.com> wrote:

> Adrian: since you are also counsel of record on the case, perhaps you could tell me your client's position. Although you neglected to disclose our first-filed *Feller* case as a related matter to the court presiding over your case – in either the civil cover sheet, a notice of related case, or otherwise -- defendants' counsel advised us several weeks ago that they made you aware of our case shortly after you filed your case, that they asked you to dismiss your case in light of our earlier-filed case, and that you refused to do so.  You have thus had significant time to consider the issues of whether your case should be dismissed and of which attorneys are best suited to represent the interests of the putative classes.  Given this background, and your status as one of plaintiff's counsel of record, we intend to file our papers in both cases at noon tomorrow.  If we do not have a response from you by then, we will advise the courts that we were unable to obtain your position. Thanks.
>
>
> Frank S. Hedin
>
> 1395 Brickell Avenue, Suite 610
> Miami, Florida 33131
> Tel: + 1 (305) 357-2107

Fax: + 1 (305) 200-8801

---

**From:** Adrian Barnes <abarnes@hammondlawpc.com>
**Date:** Thursday, October 24, 2024 at 4:34 PM
**To:** Frank Hedin <fhedin@hedinllp.com>
**Cc:** jhammond@hammondlawpc.com <jhammond@hammondlawpc.com>,
pblandler@hammondlawpc.com <pblandler@hammondlawpc.com>,
acherniak@hammondlawpc.com <acherniak@hammondlawpc.com>, Elliot Jackson
<ejackson@hedinllp.com>, Arun Ravindran <aravindran@hedinllp.com>,
jholt@hedinllp.com <jholt@hedinllp.com>
**Subject:** Re: Alliance VPPA litigation - meet and confer

Mr. Hedin,

My colleagues are unavailable today and tomorrow, and cannot be reached, due to
their observance of religious holidays. The first opportunity they will have to respond
to your email will be on Monday,

Best,

Adrian Barnes
Counsel
HammondLaw, PC
1201 Pacific Avenue
Suite 600
Tacoma, WA 98402
Main: 206-707-9366, 310-807-1666
Direct: 510-316-9926
Facsimile: 310-295-2385

This email message, including any attachments, is from an attorney with HammondLaw, P.C.  It is for
the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any
unauthorized review, use, disclosure or distribution is prohibited.

If you are not the intended recipient, please contact the sender by reply email and immediately destroy
all copies of the original message.  Thank you.

On Thu, Oct 24, 2024 at 12:58 PM Frank Hedin <fhedin@hedinllp.com> wrote:

> Counsel:
> We represent the plaintiffs and putative classes in *Feller et al. v. Alliance*
> *Entertainment, LLC et al.*, case no. Case No. 0:24-cv-61444, pending in the Southern
> District of Florida; a copy of the complaint in the *Feller* case is attached. We

understand you represent a plaintiff in a duplicative, later-filed VPPA case in N.D. Cal., against one of the two defendants named in our case.  We intend to file a motion for interim appointment of class counsel in our first-filed case, as well as a motion to intervene and to stay or dismiss your case in N.D. Cal.  I tried reaching you by phone earlier today but was unable to reach you.  Please let us know by noon tomorrow if you will consent to the relief sought in these motions or if you will oppose.  Happy to answer any questions you may have about our forthcoming motions.
Thanks.

Frank S. Hedin

**HEDIN** LLP

1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Tel: + 1 (305) 357-2107
Fax: + 1 (305) 200-8801

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

JONATHAN HOANG TO, individually and
on behalf of all others similarly situated,

        Plaintiff,

  v.

DIRECTTOU, LLC,

        Defendant,

  and,

DOUGLAS FELLER; JEFFRY HEISE;
JOSEPH MULL, individually and on behalf of
all others similarly situated,

        Plaintiff-Intervenors.

Case No. 24-cv-06447-WHO

**[PROPOSED] ORDER GRANTING TIME-SENSITIVE MOTION TO INTERVENE AND TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER OR STAY**

This Matter, having come before the Court on Plaintiff-Intervenors' Time-Sensitive Motion to Intervene and Dismiss, or in the Alternative, to Transfer or Stay (the "Motion"), it is hereby ORDERED, ADJUDGED AND DECREED that the Motion is granted and the Plaintiff's First Amended Complaint is dismissed without prejudice.

ENTERED this ___ day of _____, 2024

_____
William H. Orrick III
Senior United States District Judge